IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

FILED
APR 21 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

BRANDON C. SAMPLE, #33949-037 §
Federal Satellite Law §
and  2680 Highway 301 South §
Jesup, GA 31599 §
BERNARD SHAW, #5E 59469-004 §
FCI - Beaumont (Low) §
v.  POB 26020 §
Beaumont, TX 77720-6020 §
FEDERAL BUREAU OF PRISONS. §

CASE NUMBER  1:06CV00715

JUDGE: Unassigned

DECK TYPE: Pro se General Civil

DATE STAMP: 04/21/2006

CASE RE-ASSIGNED

JUN 27 2006

TO

FRIEDMAN, J. PLF

## ORIGINAL COMPLAINT

### Preliminary Statement

1. This case raises numerous issues of first impression for this court arising under the U.S. Constitution, the Administrative Procedures Act ("APA"), the Freedom of Information Act ("FOIA"), and the Paperwork Reduction Act ("PRA"). The plaintiffs are not lawyers and the issues presented are complex. For that reason, plaintiffs respectfully request the court consider appointment of counsel under Local Civil Rule 83.11 in order to ensure the proper presentment of their claims.

### Jurisdiction

2. This court has jurisdiction over this action under 28 U.S.C. § 1331.

### Venue

3. Venue is appropriate in the District Court for the District of Columbia. See 28 U.S.C. § 1391(e).

### Parties

4. Plaintiff Brandon Sample's mailing address is: Brandon

RECEIVED
MAR 22 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Sample # 33949-037, Federal Satellite Low, 2680 Highway 301 South, Jesup, GA 31599.

5. Plaintiff Bernard Shaw's mailing address is: Bernard Shaw #59469-004, P.O. BOX 26020 Beaumont, TX 77720-6020.

6. Defendant Federal Bureau of Prison's ("BOP") mailing address is: 320 First St. N.W. Washington, DC 20534.

**Exhaustion of Administrative Remedies**

7. Both plaintiffs have exhausted all of their available administrative remedies using the BOP's administrative remedy program.

**Count One**[1]

8. The BOP allows inmates to make domestic and international telephone calls to approved numbers over its Inmate Telephone System II ("ITS II"). All calls over the ITS II system are subject to monitoring and are recorded. With the exception of 1-900 and 1-800 numbers, there are normally no restrictions on what numbers may be placed on an inmate's approved telephone list. Calls over the ITS II system are limited to 15 minutes in duration and may be prepaid by the inmate.

9. When a prepaid domestic U.S. call is placed by an inmate, the following voice prompt is announced once the called party answers:

[T]his call is from a federal prison. This is a prepaid call. You will not be charged for this call. This call is from (<u>insert name of inmate calling</u>). Hang up to decline the call or to accept the call dial "5" now. To block future prepaid calls from this person, dial "77."

---

[1] Plaintiff Shaw joins Mr. Sample in only Counts One - Four of the complaint.

The inmate and the called party will not be connected unless the called party pushes "5." Once a call is accepted, a voice prompt stating "this call is from a federal prison" is intermittently announced during the call.

10. International calls over the ITS II system are treated differently than prepaid domestic U.S. calls. For example, all international calls are direct dial. "Direct dial" means the call rings straight through to the called party without any voice prompt announcing that the call is from a federal prison or requirement that the called party push "5" before the call is connected. With the exception of different calling rates, all other aspects of international calling are identical to domestic U.S. prepaid calls over the ITS II system.

11. The plaintiffs in this case have both attempted to make domestic U.S. prepaid calls over the ITS II system to Clerks of Court, businesses, and other called parties who utilize an automated telephone answering system ("ATAS"). Ordinarily, an ATAS requires the calling party to navigate through various voice prompts (e.g., asking the caller to say or press "one" to speak with a customer service representative) before being connected with a live person. ATAS's are, however, incapable of pushing "5" to accept calls from the plaintiffs. As a result, the plaintiffs have been deprived of the opportunity to communicate telephonically with domestic U.S. prepaid called parties who utilize an ATAS.

12. The push "5" requirement for domestic U.S. prepaid calls violates the plaintiff's First Amendment rights. There is no

legitimate penological interest in requiring prepaid domestic U.S. called parties to push "5" before their calls are connected since there is no push "5" requirement for international calls.

13. The first and "foremost" factor of <u>Turner v. Safley</u>, 482 U.S. 78 (1987), is that "there must be a valid, rational connection between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." <u>Shaw v. Murphy</u>, 532 U.S. 223, 229-30 (2001). Here, the connection between the push "5" requirement and any asserted goal is "arbitrary and irrational" in light of the disparity between the push "5" requirement for domestic U.S. prepaid calls and the lack thereof, for international calls. Thus, the "regulation fails, irrespective of whether the other [<u>Turner</u>] factors [may] tilt in its favor." <u>Id.</u> at 229-30 (alterations added).

14. The plaintiffs request a declaratory judgment stating that the push "5" requirement for domestic U.S. prepaid calls violates their First Amendment rights. Further, plaintiffs request appropriate injunctive relief.

15. In addition, the domestic U.S. prepaid call push "5" requirement violates the APA. Upon implementation of the ITS system, there was no push "5" requirement for domestic U.S. prepaid calls. The subsequent creation and implementation of the push "5" requirement represents a significant departure from established and consistent BOP practice that substantially affects the plaintiffs, and other inmates, such that the new policy is a new substantive rule that the BOP was obliged, under the APA, to submit for notice and comment rulemaking before its

adoption. <u>Shell Offshore Inc. v. Babbit</u>, 238 F.3d 622, 630 (5th Cir. 2001) (citing with approval <u>Alaska Professional Hunter's Ass'n v. FAA</u>, 177 F.3d 1030 (D.C. Cir. 1999)).

16. Because the push "5" requirement was not published with notice and comment, it is invalid. Plaintiffs request a declaratory judgment stating same and appropriate injunctive relief.

**Count Two**

17. Over the past few years, the BOP has raised the cost per minute for long distance U.S. domestic prepaid calls over the ITS II system from .15¢ per minute, to .17¢ per minute, to .20¢ per minute, and to .23¢ per minute, the now current rate. The initial rate of .15¢ per minute was, however, a substantive rule under the APA first requiring notice and comment before its adoption. Because the initial rate of .15¢ was invalid for failing to comply with the APA, it follows, for the same reason, that all of the subsequent rate changes are also invalid.

18. Alternatively, assuming that the .15¢ rate was properly promulgated, the subsequent changes to that rate are invalid because they represent a significant departure from an established and consistent BOP practice that substantially affects the plaintiff's purse, such that the new rates are new substantive rules that the BOP was required, under the APA, to submit for notice and comment before their adoption. <u>Shell</u>, 238 F.3d at 630.

19. Plaintiffs request a declaratory judgment stating that the .15¢ rate, including all subsequent changes to that rate, are

5

invalid for failing to comply with the APA's notice and comment rulemaking requirements. Plaintiffs further request appropriate injunctive relief.

20. Should the court agree that all subsequent changes to the .15¢ rate are invalid for violating the APA, plaintiffs further request equitable relief in the form of return of all overpayment, above and beyond the .15¢ rate, for each prepaid long distance call made over the ITS II system. Plaintiffs contend that this requested relief does not implicate the Court of Federal Claims jurisdiction because the return of overpayment does not constitute "money damages" consistent with <u>Bowen v. Massachusetts</u>, 487 U.S. 879 (1988). However, if the court concludes otherwise, plaintiffs expressly disclaim damages over $10,000, including all damages that may accrue beyond this amount after filing of the complaint and before final judgment. This waiver is intended to preserve this court's jurisdiction to entertain the requested relief under the Little Tucker Act, 28 U.S.C. 1346(a)(2), if necessary. <u>Waters v. Rumsfeld</u>, 320 F.3d 265, 270-71 (D.C. Cir. 2003) (party may waive damages over $10,000 to preserve a district court's concurrent jurisdiction under the Little Tucker Act).

**Count Three**

21. Upon installation of the ITS II system, and for many years thereafter, inmates were allowed to make unlimited prepaid calls. Recently, though, the BOP has restricted all inmates to 300 prepaid calling minutes per month. Generally, the only exception to this rule is during the months of November and

December when inmates are given 400, instead of 300, calling minutes.

22. The 300 and 400 minute per month calling restrictions are invalid because they are substantive rules not promulgated with notice and comment in accordance with the APA.

23. Alternatively, the 300 and 400 minute per month calling restrictions are invalid because they represent a significant departure from the BOP's established and consistent practice of permitting unlimited prepaid calling. Said departure substantially affects the plaintiffs, their family, friends, and other members of the public such that the calling restrictions are new substantive rules that the BOP was required, under the APA, to submit for notice and comment before their adoption. Shell, 238 F.3d at 630.

24. Plaintiffs request a declaratory judgment stating that the 300 and 400 minute per month calling restrictions are invalid because they were not promulgated with notice and comment in accordance with the APA. Plaintiffs further request appropriate injunctive relief.

**Count Four**

25. For over 20 years, the selling price for items at BOP commissaries was determined by taking the cost price of an item, dividing it by .08, then rounding up to the next nickel. (e.g., 5 / .08 = 6.25 - rounded up to the next nickel, the selling price is $6.30). Recently, the BOP changed its markup formula for items sold at its commissaries. Now, the selling price for items is determined by multiplying the cost price of an item by

7

1.3 or 1.4 for tobacco products, respectively. (e.g., 5 x 1.3 = $6.50). The requirement to round up to the next highest nickel continues under the new markup formula.

26. The BOP's change in markup formula has caused the selling price to increase approximately 5% for all general items sold in the commissary, excluding stamps, religious items, and Special Purpose Orders. The selling price for tobacco products has increased approximately 15% under the new formula.

27. The BOP's new markup formula is invalid because it is a significant departure from an established and long standing consistent BOP practice that substantially affects the plaintiff's purse, such that the new formula is a new substantive rule that the BOP was required, under the APA, to submit for notice and comment before its adoption. Shell, 238 F.3d at 630.

28. Plaintiffs request a declaratory judgment stating that the new markup formula is invalid for failing to comply with the APA's notice and comment rulemaking requirements. Plaintiff's further request appropriate injunctive relief.

29. Should the court agree that the new markup formula is invalid for violating the APA, plaintiffs further request equitable relief in the form of return of all overpayment above and beyond the prior markup formula for each qualifying item purchased from the commissary. As with Count Two, plaintiffs contend that this requested relief does not implicate the Court of Federal Claims jurisdiction. Should the court disagree, however, plaintiffs expressly disclaim damages over $10,000 in

order to preserve this court's jurisdiction to entertain the requested relief under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), if necessary.

**Count Five**

30. For over 20 years, the BOP permitted inmates to apply for, and receive, "educational" transfers to other BOP institutions in order to participate in educational programs that may further an inmate's rehabilitation, (e.g., culinary school, college courses, etc ...) but that are otherwise not available at the inmate's current place of incarceration. Unfortunately, "educational" transfers are no longer permitted.

31. The BOP's prohibition on "educational" transfers is invalid because it is a significant departure from an established and longstanding consistent BOP practice that substantially affects plaintiff Sample, such that the prohibition is a new substantive rule that the BOP was required, under the APA, to submit for notice and comment before its adoption. Shell, 238 F.3d at 630.

**Count Six**

32. Plaintiff Sample previously requested a copy of his Pre-Sentence Investigation Report ("PSI") from the BOP under the FOIA. The BOP denied Sample's request, invoking Program Statement 1351.05 which prohibits inmate possession/retention of PSIs. Sample's appeal to the Department of Justice Office of Information and Policy was denied on the ground that FOIA's disclosure mandate is satisfied by the BOP's policy of allowing inmates to review, but not possess, a copy of their PSI.

33. In accordance with <u>United States Deparment of Justice v. Julian</u>, 486 U.S. 1 (1988), Sample is entitled to a copy of his PSI under FOIA. <u>See</u> <u>United States v. Pugh</u>, No. 03-6166 (4th Cir. 2003) (unpublished) (appended to the complaint). Accordingly, Sample respectfully requests an order directing the BOP to provide him with a copy of his PSI.

**Count Seven**

34. On March 8, 2004, plaintiff Sample, with the express written consent of inmate Richard Painter, requested under FOIA that he be permitted to inspect, but not possess, a copy of Mr. Painter's PSI. The BOP has never acknowledged or responded to Sample's request.

35. Because the statutory time period for responding to Sample's request has expired, Sample is deemed to have exhausted all of his administrative remedies under FOIA. <u>See</u> 5 U.S.C. § (a)(6)(C).

36. Sample respectfully requests an order directing the BOP to respond to his FOIA request. Further, Sample requests an order directing the BOP to allow him to inspect a copy of Mr. Painter's PSI.

**Count Eight**

37. The PRA, 44 U.S.C. §§ 3501 et. seq., requires, among other things, that agencies subject to the Act shall not conduct or sponsor the "collection of information" unless in advance of the adoption or revision of the collection of information, the agency complies with the procedures outlined in 44 U.S.C. § 3507(a)(1).

38. The BOP, although subject to the PRA, does not comply with any of its provisions. For example, the BOP, on a daily basis, engages in various "collections of information" without regard to the PRA. Furthermore, there are no Office of Management and Budget ("OMB") control numbers on any BOP forms.

39. Plaintiff Sample respectfully requests a declaratory judgment stating that the BOP is subject to the PRA and that it is in noncompliance with all its provisions. Sample further requests appropriate injunctive relief.

**Relief Requested**

40. In addition to the relief already requested, plaintiffs respectfully request costs, attorney's fees, and such other relief as the Court may see fit.

Respectfully submitted,

Brandon Sample #33949-037
Federal Satellite Low
2680 Highway 301 South
Jesup, GA 31599


Bernard Shaw #59469-004
FCI Beaumont (Low)
P.O. BOX 26020
Beaumont, TX 77720-6020

## CERTIFICATE OF MAILING

I certify that a true and correct copy of the foregoing was provided to prison officials for mailing, first class postage affixed, this 1st day of March, 2006.

_____
BRANDON SAMPLE

UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

DARRYLL ARTHUR PUGH, a/k/a Howie,
        *Defendant-Appellant.*

No. 03-6166

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CR-02-3)

Submitted: April 18, 2003

Decided: July 14, 2003

Before WILKINSON, WILLIAMS, and KING, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded with instructions by unpublished per curiam opinion.

---

COUNSEL

Darryll Arthur Pugh, Appellant Pro Se. Samuel Gerald Nazzaro, Jr., Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

06 0715

FILED

APR 21 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

    Darryll Arthur Pugh appeals the district court's order denying his motion requesting that his presentence report ("PSR") be unsealed and a complete copy be forwarded to him. For the reasons that follow, we affirm the district court's order in part, vacate it in part, and remand the case for further consideration consistent with this opinion.

    First, Pugh argues that Bureau of Prisons ("BOP") Program Statement No. 1351.05, which prohibits federal inmates from possessing copies of their PSR, denies him his constitutional rights to a fair trial and access to the courts. Pugh's trial, however, has already occurred, and his PSR, which relates to his sentencing, would have no bearing on the fairness of his trial in any event. Moreover, Pugh cannot claim denial of access where he has not yet attempted to initiate any collateral attack of his conviction. Thus, we affirm the district court's implicit rejection of Pugh's constitutional claims.

    The district court also addressed Pugh's claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), citing to *United States Dep't of Justice v. Julian*, 486 U.S. 1 (1988). The district court cited *Julian* for the proposition that an inmate may view his or her own PSR and take handwritten notes, but is not entitled to a copy thereof. However, we find that *Julian* stands for the opposite proposition: that under FOIA, an inmate is entitled to a copy of his or her own PSR from the Department of Justice ("DOJ"), the BOP, or the Parole Commission. In *Julian*, the Supreme Court noted the courts' reluctance to give a third party access to a PSR prepared for another individual in the absence of a showing of special need. However, the Court held that a similar restriction on discovery is not applicable when the individual requesting discovery is the subject of the PSR. The Court stated, "there simply is *no* privilege preventing disclosure in the latter situation." *Julian*, 486 U.S. at 14 (emphasis in original).



| UNITED STATES v. PUGH | 3 |
|---|---|

Therefore, we vacate the district court's order to the extent it finds that Pugh has no right to a copy of his PSR under *Julian*, and remand for further consideration.

We note that, pursuant to § 552(a)(4)(B), a FOIA action may be brought either: (1) where the complainant resides; (2) where the agency records are situated; or (3) the District of Columbia. We cannot determine from the available record, however, whether venue is appropriate in the Northern District of West Virginia. The record casts no light on the physical location of the PSR and, while Pugh is apparently incarcerated in Pennsylvania, we express no opinion as to where he "resides" within the meaning of § 552. Accordingly, on remand the district court should address whether Pugh's FOIA claim is in the proper court.

Accordingly, we affirm the district court's implicit rejection of Pugh's constitutional claims, vacate the district court's order to the extent it rejects Pugh's FOIA claim based on *Julian*, and remand the case to the district court for further consideration consistent with this opinion. We also deny Pugh's motion to expedite the appeal as moot, deny his motion to appoint counsel, and deny his motion for summary judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART; VACATED IN PART;*

*AND REMANDED WITH INSTRUCTIONS*