IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRANDON C. SAMPLE, | § | |
| and | § | |
| BERNARD SHAW, | § | |
| v. | § | No. 06-715 (PLF) |
| FEDERAL BUREAU OF PRISONS, | § | |
| and | § | |
| U.S. DEPARTMENT OF STATE. | § | |

AMENDED COMPLAINT

## Introduction

1.   This case raises numerous issues of first impression for the Court under the U.S. Constitution, the Administrative Procedures Act ("APA"), the Freedom of Information Act ("FOIA"), the Privacy Acy ("PA"), and the Paperwork Reduction Act ("PRA").  Plaintiffs seek various forms of declaratory and injunctive relief.[1]

## Jurisdiction and Venue

2.   Jurisdiction is proper under 28 U.S.C. § 1331.  Venue is appropriate in the District Court for the District of Columbia.  See 28 U.S.C. § 1391(e).

## Parties

3.   Plaintiff Brandon Sample's mailing address is Brandon

---

[1]  Prior to the filing of the amended complaint, the plaintiffs attempted to informally resolve the matters that now form the basis of Counts 10-13.  Opposing counsel, however, refused to respond to any of the plaintiff's letters.

Sample #33949-037, Federal Satellite Low, 2680 Highway 301 South, Jesup, GA 31599. Mr. Sample's telephone number is 912-427-0870.

4. Plaintiff Bernard Shaw's mailing address is Bernard Shaw #59469-004, P.O. BOX 26020, Beaumont, TX 77720-6020. Mr. Shaw's telephone number is 409-727-8172.

5. Defendant Federal Bureau of Prison's ("BOP") mailing address is 320 First St. N.W., Washington, DC 20534.

6. Defendant U.S. Department of State's ("State Department") mailing address is 2201 C Street, N.W., Washington, DC 20520.

### Exhaustion of Administrative Remedies

7. The plaintiffs have exhausted all of their available administrative remedies using the BOP's administrative remedy program.

### Count One[2]

8. The BOP allows inmates to make domestic and international telephone calls to approved numbers over its Inmate Telephone System II ("ITS II"). All calls over the ITS II are subject to monitoring and recorded. With the exception of 1-900 and 1-800 numbers, there are, ordinarily, no restrictions on what numbers may be placed on an inmate's approved telephone list. Calls over the ITS II system are limited to 15 minutes in duration and may be prepaid by the inmate.

---

[2] Plaintiff Shaw joins Mr. Sample in only Counts One – Four of the amended complaint.

9. When a prepaid domestic U.S. call is placed by an inmate, the following voice prompt is announced once the called party answers:

This call is from a federal prison. This is a prepaid call. You will not be charged for this call. This call is from (insert name of inmate calling). Hang up to decline the call or to accept the call dial "5" now. To block future prepaid calls from this person, dial "77."

The inmate and the called party will not be connected unless the called party pushes "5." Once a call is accepted, a voice prompt stating "this call is from a federal prison" is intermittently announced during the call.

10. International calls over the ITS II system are treated differently than prepaid domestic U.S. calls. For instance, all international calls are direct dial. "Direct dial" means the call rings straight through to the called party without any voice prompt announcing that the call is from a federal prison or requirement that the called party push "5" before the call is connected. With the exception of different calling rates, all other aspects of international calling are identical to domestic U.S. prepaid calls over the ITS II system.

11. The plaintiffs have attempted to make domestic U.S. prepaid calls over the ITS II system to Clerks of Court, businesses, and other called parties who utilize an automated telephone answering system ("ATAS"). ATAS's are, however, incapable of pushing "5" to accept calls from the plaintiffs. As a result, the plaintiffs have been deprived of the opportunity to communicate telephonically with domestic U.S. prepaid called parties who utilize an ATAS.

3

12. The push "5" requirement for domestic U.S. prepaid calls violates the plaintiff's First Amendment rights. There is no legitimate penological interest in requiring prepaid domestic U.S. called parties to push "5" before their calls are connected since there is no push "5" requirement for international calls.

13. The first and "foremost" factor of Turner v. Safley, 482 U.S. 78 (1987), is that "there must be a valid, rational connection between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." Shaw v. Murphy, 532 U.S. 223, 229-30 (2001). Here, the connection between the push "5" requirement and any asserted goal is "arbitrary and irrational" in light of the disparity between the push "5" requirement for domestic U.S. prepaid calls, and the lack thereof for international calls. Thus, the "regulation fails, irrespective of whether the other [Turner] factors [may] tilt in its favor. Id. at 229-30 (alterations added).

14. The plaintiffs request a declaratory judgment stating that the push "5" requirement for domestic U.S. prepaid calls violates their First Amendment rights. Plaintiffs further request appropriate injunctive relief.

15. In addition, the push "5" requirement for domestic U.S. prepaid calls violates the APA. Upon implementation of the ITS system, there was no push "5" requirement for domestic U.S. prepaid calls. The subsequent creation and implementation of the push "5" requirement represents a significant departure from established and consistent BOP

4

practice. Said change substantially affects the plaintiffs and other inmates such that the new policy is a new substantive rule that the BOP was obliged, under the APA, to submit for notice and comment rulemaking before its adoption. <u>Shell Offshore Inc. v. Babbit</u>, 238 F.3d 622, 630 (5th Cir. 2001) (citing with approval <u>Alaska Professional Hunter's Ass'n v. FAA</u>, 177 F.3d 1030 (D.C. Cir. 1999)).

16. Plaintiffs request a declaratory judgment stating that the push "5" requirement is invalid because it was not published with notice and comment. Further, plaintiffs request appropriate injunctive relief.

**Count Two**

17. Over the past few years, the BOP has increased the cost per minute for long distance U.S. domestic prepaid calls over the ITS II system from 15¢ a minute, to .17¢ a minute, to 20¢ a minute, and to 23¢ a minute, the now current rate. The initial rate of .15¢ a minute was, however, a substantive rule under the APA first requiring notice and comment before its adoption. Since the initial rate of .15¢ a minute was invalidly adopted, it follows that all subsequent changes to that rate are also invalid.

18. Alternatively, assuming the .15¢ rate was properly promulgated, the subsequent changes to that rate are invalid because they represent a significant departure from an established and consistent BOP practice. Said changes substantially affect the plaintiff's purse such that the new rates are new substantive rules that the BOP was required to submit for notice and comment before their adoption. <u>Shell</u>,

5

238 F.3d at 630.

19. Plaintiffs request a declaratory judgment stating that the .15¢ rate, including all subsequent changes to that rate, are invalid for failing to comply with the APA's notice and comment rulemaking requirements. Plaintiffs further request appropriate injunctive relief.

20. Should the Court agree that the subsequent changes to the .15¢ rate are invalid, plaintiffs further request equitable relief in the form of return of all payment above .15¢ rate for each prepaid long distance call made over the ITS II system. Plaintiffs contend that this requested relief does not implicate the Court of Federal Claims jurisdiction because the return of overpayment does not constitute "money damages" consistent with Bowen v. Massachusetts, 487 U.S. 879 (1988). However, if the Court concludes otherwise, plaintiffs expressly disclaim damages over $10,000 including all damages that may accrue beyond this amount after filing of the amended complaint and before final judgment. This waiver is intended to preserve this Court's jurisdiction to entertain the requested relief under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), is necessary. Waters v. Rumsfeld, 320 F.3d 265, 270-71 (D.C. Cir. 2003) (party may waive damages over $10,000 to preserve a district court's concurrent jurisdiction under the Little Tucker's Act).

### Count Three

21. Upon installation of the ITS II system, and for several years thereafter, inmates were allowed to make unlimited prepaid calls. Recently, though, the BOP has restricted all

inmates to 300 prepaid calling minutes per month. Generally, the only exception to this rule is during the months of November and December when inmates are given 400, instead of 300, calling minutes.

22. The 300 and 400 minute per month calling restrictions are invalid because they are substantive rules not promulgated with notice and comment in accordance with the APA.

23. Alternatively, the 300 and 400 minute per month calling restrictions are invalid because they represent a significant departure from the BOP's established practice of permitting unlimited prepaid calling. Said departure substantially affects the plaintiffs, their family, friends, and other members of the public such that the calling restrictions are new substantive rules requiring notice and comment rulemaking before their adoption. Shell, 238 F.3d at 630.

24. Plaintiffs request a declaratory judgment stating that the 300 and 400 minute per month calling restriction are invalid because they were not promulgated with notice and comment in accordance with the APA. Plaintiffs further request appropriate injunctive relief.

### Count Four

25. For over 20 years, the selling price of items at BOP commissaries was determined by taking the cost price of an item, dividing it by .08, then rounding up to the next nickel. (e.g., 5 / .08 = 6.25 - rounded up to the next nickel, the selling price is $6.30). Recently, though, the BOP changed its markup formula for items sold at its

7

commissaries. Now, the selling price for items is determined by multiplying the cost price of an item by 1.3 (e.g., 5 x 1.3 = $6.50). The requirement to round up to the next highest nickel continues under the new markup formula.

26. The BOP's change in markup formula has caused the selling price to increase approximately 5% for all general items sold in the BOP's commissaries, excluding stamps, religious items, and Special Purpose Orders.

27. The BOP's new markup formula is invalid because it is a significant departure from an established and long standing consistent BOP practice. Said change substantially affects the plaintiff's purse such that the new formula is a new substantive rule requiring notice and comment before its adoption. Shell, 238 F.3d at 630.

28. Plaintiffs request a declaratory judgment stating that the new markup formula is invalid because it was not promulgated with notice and comment. Plaintiffs further request appropriate injunctive relief.

29. Should the Court agree that the new markup formula is invalid because it was not promulgated with notice and comment, plaintiffs further request equitable relief in the form of return of all payment above the prior markup formula for each qualifying item purchased from the commissary. As with Count Two, the plaintiffs contend that this requested relief does not implicate the Court of Federal Claims jurisdiction. Should the Court disagree, however, plaintiffs expressly disclaim damages over $10,000 in order to preserve this Court's jurisdiction to entertain the requested relief

under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), if necessary.

### Count Five

30. For over 20 years, the BOP permitted inmates to apply for and receive "educational" transfers to other BOP institutions in order to participate in educational programs that may further their rehabilitation (e.g., culinary school, college courses, etc...) but that are otherwise not available at their current place of incarceration. Unfortunately, "educational" transfers are no longer permitted.

31. The BOP's prohibition on "educational" transfers is invalid because it is a significant departure from the BOP's established and longstanding practice or permitting such transfers. Said change substantially affects plaintiff Sample such that the prohibition is a new substantive rule requiring notice and comment rulemaking before its adoption. Shell, 238 F.3d at 630.

### Count Six

32. Plaintiff Sample previously requested a copy of his Pre-Sentence Investigation Report ("PSI") from the BOP under FOIA. The BOP denied Sample's request, invoking Program Statement 1351.05 which prohibits inmate possession/retention of PSIs. Sample's appeal to the Department of Justice Office of Information and Privacy ("OIP") was denied on the ground that FOIA's disclosure mandate is satisfied by the BOP's policy of allowing inmates to review, but not possess, a copy of their PSI.

33. In accordance with 5 U.S.C. § 552(a)(3)(B), Sample is entitled to a copy of his PSI. Accordingly, Sample respectfully requests an order directing the BOP to provide him with a copy of his PSI.

**Count Seven**

34. On March 8, 2004, Sample, with the express written consent of inmate Richard Painter, requested under FOIA that he be permitted to inspect, but not possess, a copy of Mr. Painter's PSI. The BOP has never acknowledged or responded to Sample's request.

35. Because the statutory time period for responding to Sample's request has expired, Sample is deemed to have exhausted all of his available administrative remedies under FOIA. See 5 U.S.C. § 552(a)(6)(C).

36. Sample respectfully requests an order directing the BOP to allow him to inspect a copy of Mr. Painter's PSI.

**Count Eight**

37. The PRA, 44 U.S.C. §§ 3501 et seq., requires, among other things, that agencies subject to the Act shall not conduct or sponsor the "collection of information" unless in advance of the adoption or revision of the collection of information, the agency complies with the procedures outlined in 44 U.S.C. § 3507(a)(1).

38. The BOP, although subject to the PRA, does not comply with any of its provisions. For example, the BOP on a daily basis engages in various "collections of information" without regard to the PRA. Furthermore, there are no Office of Management and Budget ("OMB") control numbers on any BOP

forms.

39. Plaintiff Sample respectfully requests a declaratory judgment stating that the BOP is subject to the PRA and that it is in noncompliance with all of its provisions. Sample further requests appropriate injunctive relief.

**Count Nine**

40. On November 23, 2004, Sample submitted a FOIA request to the BOP for a copy of the BOP's "most recent BOPDOCS cd-rom disc," excluding any information "deemed by the BOP as Limited Official Use Only." BOP denied Sample's request. On July 31, 2006, the OIP affirmed the BOP's denial.

41. The BOP's refusal to provide Sample with the BOPDOCS disc violates 5 U.S.C. § 552(a)(3)(B) which provides, in relevant part, that: "In making any record available to a person under this paragraph, an agency <u>shall</u> <u>provide</u> the record in <u>any</u> form or format requested by the person <u>if</u> the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B) (emphasis added). Accordingly, Sample respectfully requests an order directing the BOP to provide him with a copy of the BOPDOCS disc.

**Count Ten**

42. On September 6, 2005, Sample submitted a FOIA/PA request to the State Department for copies of all documents concerning his repatriation from Dublin, Ireland to the United States in 1997. On December 7, 2005, the State Department acknowledged Sample request. To date, however, no documents have been provided.

43. Sample respectfully requests an order directing the State Department to provide him with the documents requested above.

**Count Eleven**

44. On March 20, 2006, Sample submitted a FOIA request to the BOP for copies of "all invoices, purchase orders, menus, and other related materials concerning the purchase of Passover meals for years 2004-2006 at FCI Beaumont (Low)." In his request, Sample specified that this must include "all documents pertaining to ... provisions for the Passover ceremonial meal and the eight days worth of meals." Yet, when responding to Sample's request, the BOP failed to provide records concerning: (1) the provisions for the Passover ceremonial meal during 2004; and (2) the purchase of the "eight days worth of meals" by the Food Service department at FCI Beaumont (Low).

45. Also included in Sample's March 20, 2006, FOIA request was a request for "all invoices, purchase orders, and other related materials concerning the purchase of a sukkah by the religious services department at FCI Beaumont (Low) in 2004 or 2005." Nevertheless, the BOP failed to provide any documents responsive to this request. Sample has appealed the BOP's actions to the OIP; however, a response has yet to be received.

46. Sample respectfully requests the Court order production the records mentioned above.

12

Count Twelve

47. On August 9, 2006, Sample submitted a FOIA request to the BOP for copies of several administrative remedy responses "in the form or format of read-only electronic media (e.g., cd-rom, disc, etc...)." To date, the BOP has yet to respond to Sample's request.

48. Sample respectfully requests an order directing the BOP to provide him with the requested administrative remedy responses "in the form or format of read-only electronic media."

Count Thirteen

49. On August 10, 2006, Sample submitted a FOIA request to the BOP for "sanitized administrative remedy indexes from each Regional Office and the Central Office for the past three years." Further, in order to prevent the production of unnecessary materials, Sample specifically limited the search for records to indexes with grievances that have been granted. To date, however, the BOP has yet to respond to Sample's request.

50. Sample respectfully requests the Court order production of the requested administrative remedy indexes.

Relief Requested

51. In addition to the relief already specially requested, plaintiffs respectfully request costs, attorney's fees, and such other relief as the Court may see fit.

Respectfully submitted,

*[signature]*
BRANDON SAMPLE #33949-037
Federal Satellite Low
2680 Highway 301 South
Jesup, Georgia 31599
(912) 427-0870

*[signature]*
BERNARD SHAW # 59469-004
FCI Beaumont (Low)
P.O. BOX 26020
Beaumont, TX 77720-6020
(409) 727-8172

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served this 17th day of November, 2006, via first-class mail, on the following:

W. Mark Nebeker
Assistant U.S. Attorney
Civil Division
555 4th Street, N.W.
Washington, DC 20530

*[signature]*
BRANDON SAMPLE

14