# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRANDON SAMPLE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0715 (PLF) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Federal Defendants, the Federal Bureau of Prisons ("BOP") and the United States Department of State (the "Department" or the "Department of State"), respectfully move this Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Counts 1-11 and Count 14 of the Complaint for failure to state a claim.[1] Alternatively, Defendants respectfully request summary judgment in their favor, pursuant to Federal Rule of Civil Procedure 56, on the ground that no genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law.[2]

---

[1]     BOP is currently processing, on an expedited basis, Plaintiff Sample's FOIA requests described in Counts 12 and 13 of the Second Amended Complaint.

[2]  Plaintiffs should take notice that any factual assertions contained in the documents in support of this motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents. *See Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), Local Rule 7.1 and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to

In support of this motion, defendant submits the accompanying Memorandum of Points and

Authorities, Declarations, and attached Exhibits.

<div style="margin-left:40%;">

Respectfully submitted,

_____Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Sherease Louis_____
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-307-0895/ FAX 202-514-8780
sherease.louis@usdoj.gov

</div>

**OF COUNSEL:**
Oliver M. Lewis, Esq.
U.S. Department of State
Washington, D.C.

Wanda Hunt, Esq.
Delaine Martin Hill, Esq.
Bureau of Prisons
Washington, D.C.

---

be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRANDON SAMPLE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0715 (PLF) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' STATEMENT OF MATERIAL
FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), defendant respectfully submits the following statement of material facts as to which there is no genuine issue:

1.      The Inmate Telephone System(ITS-II) mandates that telephone calls by federal inmates shall ordinarily be made to a number identified on the inmate's official telephone list. *See* BOP Program Statement 5264.07, Telephone Regulations for Inmates (January 31, 2002).

2.      Parties receiving phones calls from federal inmates using the ITS-II have the capability to deny and/or block further telephone calls from the inmate as a voice prompt directs the called party through the process. *Id*.

3.      The BOP has raised the per-minute cost of domestic prepaid telephone calls for inmates using the ITS-II. *Id.*

4.      Inmates using the ITS-II are limited to 300 minutes per calendar month.

5.      Plaintiff Brandon Sample (Inmate Number: 33949-037) submitted a Freedom of

Information Act request ("FOIA") assigned request number 2004-06254 alleging he had written authorization to review the Pre Sentence Report of another inmate. *See* Declaration of Wilson Moorer.

6.      Plaintiff Sample submitted a FOIA request for a copy of the BOPDOCS CD-ROM. *See* Complaint ¶¶ 40, 41. *Id.*

7.      Plaintiff Sample filed a FOIA request seeking records concerning the "provision of Passover ceremonial meal during 2004 and the purchase of the eight days worth of meals by the Food Service Department at FCI Beaumont (Low)". *See* Complaint ¶¶ 44-46, Declaration of Christine Greene. BOP released a partial response in April, July and October of 2006. *Id.*

8.      Plaintiff Sample's request for "all invoices, purchase order, and the other related materials concerning the purchase of a sukkah" had not been responded to at the time the amended complaint was filed in this matter. *Id.*

9.      Plaintiff Sample made a FOIA request, dated August 10, 2006, seeking sanitized administrative remedy indexes from each BOP Regional Office and the Central Office for the past three years. *See* Exhibit 1 to R. Hill Decl. The request did not specify electronic format but did specify his agreement to pay up to $25.00 in fees. *Id.* Plaintiff also submitted a request for copies of several administrative remedy responses in read-only electronic format. *Id.* This request was received in the BOP FOIA Office on August 16, 2006, and assigned request number 2006-9274. *See* Exhibit 2 to R. Hill Decl. The request specifically requested that the response be provided in electronic format. *See See* Exhibit 1 to R. Hill Decl. On November 27, 2006, the BOP responded with an aggregated response to request number 2006-09273 and request number

2

2006-09274.  *See* Exhibit 2 to R. Hill Decl.  The response advised Plaintiff that the documents

could not be saved and reproduced in electronic format.  *Id.*

       10.     Plaintiff Sample filed a FOIA request that was received in the BOP FOIA Office

on December 18, 2006.

       11.     Plaintiffs filed their Complaint on April 21, 2006.

                    Respectfully submitted,

                      Jeffery A. Taylor
                    JEFFREY A. TAYLOR, D.C. Bar # 498610
                    United States Attorney

                      Rudolph Contreras
                    RUDOLPH CONTRERAS, D.C. Bar # 434122
                    Assistant United States Attorney

                     /s/Sherease Louis
                    SHEREASE LOUIS
                    Special Assistant United States Attorney
                    555 Fourth Street, N.W., Civil Division
                    Washington, D.C. 20530
                    (202) 307-0895
                    Counsel for Defendants

**OF COUNSEL:**
Oliver M. Lewis, Esq.
U.S. Department of State
Washington, D.C.

Wanda Hunt, Esq.
Delaine Martin Hill, Esq.
Bureau of Prisons
Washington, D.C.

<div align="center">3</div>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRANDON SAMPLE, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0715 (PLF) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT
OR, IN THE ALTERATIVE, FOR SUMMARY JUDGMENT**

Federal Defendants Federal Bureau of Prisons ("BOP") and the United States Department

of State ("Department of State" or "Department") respectfully move to dismiss Counts 1-11 and

Count 14 of the Second Amended Complaint,[3] pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and failure to state a

claim upon which relief can be granted.  Plaintiffs Brandon Sample and Bernard Shaw[4] are

federal inmates incarcerated at United States Penitentiaries located, respectively, in Jesup,

Georgia and Beaumont, Texas.  Plaintiffs bring this suit pursuant to the First Amendment of the

Constitution, the Freedom of Information Act ("FOIA"),[5] and the Privacy Act,[6] seeking

---

[3]    BOP is currently processing, on an expedited basis, Plaintiff Sample's FOIA
requests described in Counts 12 and 13 of the Second Amended Complaint.

[4] Plaintiff Shaw only joins in the first four counts of the Complaint.  *See* Complaint at 2,
fn.1.

[5] *See* 5 U.S.C. § 552.

[6] *See* 5 U.S.C. § 552a.

injunctive and mandamus relief.[7]  Second Amended Complaint ¶¶ 1, 57.  As is evident from the

attached Exhibits, and as set forth in the accompanying Declarations, Plaintiffs have failed to

exhaust their administrative remedies with respect to Counts 1 through 4 for Plaintiff Shaw and

with respect to Count 5 for Plaintiff Sample.  Further, because Defendants have produced all

responsive records, this Complaint must be dismissed.  Alternatively, to the extent Plaintiffs

challenge the adequacy of the search for documents, the Defendants move for summary judgment

as a matter of law, as no genuine issue of material fact remains regarding the reasonable

adequacy of the agency search and all responsive documents have been released.

## BACKGROUND

Plaintiffs filed their original Complaint on April 21, 2006.  On November 15, 2006,

Plaintiffs filed an amended Complaint.  On January 18, 2007, Plaintiffs filed their Second

Amended Complaint, incorporating the allegations of their amended Complaint.  The Second

Amended Complaint contains the following fourteen counts:

| | |
|---|---|
| Count One | The BOP's Inmate Telephone System II ("ITS II") Requirement to Push 5 Before Inmate's Domestic Telephone Calls are Connected Violates the First Amendment and the APA. |
| Count Two | The BOP's Long Distance Prepaid Call Rates Are Invalid because the BOP Failed to Comply with the APA's Notice and Comment Rulemaking Requirements. |
| Count Three | The BOP's 300 and 400 Minutes of Calling Time Limits Per Month Are Invalid because the BOP Failed to Comply with the APA's Notice and Comment Rulemaking Requirements. |
| Count Four | The BOP's Selling Price Formula for Items Sold at BOP Commissaries Is Invalid because the BOP Failed to Comply with the APA's Notice and Comment Rulemaking Requirements. |

---

[7] *See* 28 U.S.C. § 1361.

2

Count Five       The BOP's Discontinuance of Its Educational Transfers Program Is
                 Invalid because the BOP Failed to Comply with the APA's Notice
                 and Comment Rulemaking Requirements.

Count Six        5 U.S.C. § 552a(3)(B) of the FOIA Requires Defendant to Provide
                 Plaintiff With a Copy of Plaintiff's Pre-Sentence Investigation Report.

Count Seven      FOIA Request for Permission to Inspect Inmate Richard Painter's Pre-
                 Sentence Investigation Report.

Count Eight      The BOP Is Not in Compliance With the PRA.

Count Nine       5 U.S.C. § 552a(3)(B) of the FOIA Requires Defendant to Provide
                 Plaintiff With the Most Recent BOP-DOCS CD-Rom Disc.

Count Ten        FOIA/PA Request for Plaintiff's Repatriation Documents From
                 Ireland.

Count Eleven     FOIA Request for Copies of "all invoices, purchase orders, menus,
                 and other related materials concerning the purchase of Passover
                 meals for years 2004-2006 at FCI Beaumont (Low)" and "all
                 invoices, purchase orders, and other related materials concerning
                 the purchase of a sukkah by the religious services department at
                 FCI Beaumont(Low) in 2004 or 2005."

Count Twelve     FOIA Request for Records of Administrative Remedy Responses
                 "in the form or format of read-only electronic media (e.g., cd-rom,
                 disc, etc. . . )."

Count Thirteen   FOIA Request for "Sanitized Administrative
                 Remedy Indexes From Each Regional Office
                 and the Central Office for the Past Three Years"
                 (Limited to Indexes for Grievances That Were
                 Granted).

Count Fourteen   FOIA Request that BOP Make Available,
                 Through Computer Telecommunications, the
                 Following Records Created On or After
                 November 1, 1996: Final Opinions, Orders,
                 Statements of Policy and Interpretations Which
                 Have Been Adopted By the Agency and Are Not
                 Published in the Federal Register, and
                 Administrative Staff Manuals and Instructions
                 to Staff That Affect a Member of the Public."

Second Amended Complaint, ¶¶ 8-57.

These fourteen counts fall within four categories: (I) Violation of First Amendment Rights (Count 1); (II) Failure to Comply With the APA (Counts 1-5); (III) Failure to Comply With the FOIA (Counts 6-7, 9-14); and (IV) Failure to Comply With the PRA (Count 8). As set forth below, Plaintiffs fail to state a claim for relief, in part because Plaintiff Sample has failed to exhaust administrative remedies as to Count V, and Plaintiff Shaw has failed to exhaust administrative remedies as to Counts I though IV, the only counts Plaintiff Shaw seeks to pursue in the Complaint. For the following reasons, Defendants submit that dismissal of all claims is warranted in this action.

## STANDARD OF REVIEW

### I.    Dismissal Under 12(b)(1)

Defendants move for dismissal of Plaintiffs' original and amended complaints pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. "A motion under 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'" *Gardner v. U.S.*, No. CIV. A. 96-1467EGS, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), *aff'd,* 213 F.3d 735 (D.C. Cir. 2000) and *cert. denied*, 531 U.S. 1153 (2001), *quoting, Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir.1987); *see also* 4 Wright & Miller: Federal Prac. & Proc. § 1350 (R12)(2002 Supplement)("...subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.")

A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. *Herbert v. National Academy of Science*, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. *See id.; see also Cureton v. United States Marshal Service*, 322 F. Supp. 2d 23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004).

## II.      Dismissal Under 12(b)(6)

In making determinations on a motion to dismiss under Rule 12(b)(6), the Court must view facts alleged in the complaint in the light most favorable to the plaintiffs. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Nix v. Hoke*, 139 F. Supp. 2d 125 (D.D.C. April 2001), *citing Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001); *see also Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 27 (D.D.C. 1998). A complaint should be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 46. Applying these standards demonstrates that Plaintiffs' Complaints should be dismissed in their entirety.

## III.      Dismissal Under 56

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting*

*Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, the Plaintiffs (as the non-moving party) must present some objective evidence that would enable the Court to find it is entitled to relief. In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In *Anderson* the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).

In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. *See Cappabianca v. Commissioner, U.S. Customs Serv.*, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing *Miscavige*

*v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary

judgment once it demonstrates that no material facts are in dispute and that each document that

falls within the class requested either has been produced, not withheld, is unidentifiable, or is

exempt from disclosure.  *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C.

Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

      An agency satisfies the summary judgment requirements in a FOIA case by providing the

Court and the Plaintiff with affidavits or declarations and other evidence which show that the

documents in question were produced or are exempt from disclosure.  *Hayden v. NSA*, 608 F.2d

1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v.

U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp.

2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis

of agency affidavits "when the affidavits describe 'the documents and the justifications for non-

disclosure with reasonably specific detail, demonstrate that the information withheld logically

falls within the claimed exemption, and are not controverted by either contrary evidence in the

record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d

724, 738 (D.C. Cir. 1981)).  *See also Public Citizen, Inc. v. Dept. of State*, 100 F. Supp. 2d 10, 16

(D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

**ARGUMENT**

I.    **PLAINTIFF SHAWS' FOUR CLAIMS AND COUNT V OF PLAINTIFF SAMPLE'S COMPLAINT SHOULD BE DISMISSED IN THEIR ENTIRETY FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES UNDER THE PRISON LITIGATION REFORM ACT**

A.    **The Prison Litigation Reform Act**

Plaintiffs have failed to exhaust their administrative remedies with regard to all of Shaw's claims, and with respect to Count V of Plaintiff Sample's claims.  Under the Prison Litigation Reform Act, a prisoner must exhaust "such administrative remedies as are available" before bringing a civil action in federal court.  42 U.S.C. §1997e(a).  *Jackson v. District of Columbia*, 254 F.3d 262 (D.C. Cir. 2001).  In *Booth v. Churner*, 121 S.Ct. 1819 (2001), a unanimous Supreme Court held that Congress mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, "regardless of the relief offered through administrative procedures."  *Id.* at 1825.  The remedy system at issue in *Booth* was nearly identical to the three-level system used in the federal prison system.

> "The Pennsylvania Department of Corrections provided an administrative grievance system at the time. It called for a written charge within 15 days of an event prompting an inmate's complaint, which was referred to a grievance officer for investigation and resolution. If any action taken or recommended was unsatisfactory to the inmate, he could appeal to an intermediate reviewing authority, with the possibility of a further and final appeal to a central review committee. App. 46-50. While the grievance system addressed complaints of the abuse and excessive force Booth alleged, it had no provision for recovery of money damages.  Before resorting to federal court, Booth filed an administrative grievance charging at least some of the acts of abuse he later alleged in his action. Id., at 10-14. He did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief."

8

121 S.Ct. at 1821-1822.

The Supreme Court affirmed dismissal of the case for failure to complete exhaustion of the inmate's administrative remedy appeals. The Court also closed the door on any futility arguments made by inmates, stating, "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. at 1825. Exhaustion of *all stages* of the administrative remedy system is therefore mandatory before a federal action may be commenced by a prisoner.

The BOP's administrative remedy procedure involves a three-tiered grievance process, which is set out at 28 C.F.R. §542.10 et seq., "Administrative Remedy Procedure for Inmates." The process provides for formal review of any complaint which relates to any aspect of the inmate's confinement. 28 C.F.R. §542.10 et seq. Under this process, inmates are encouraged to first attempt to resolve their complaints informally by discussing the matter with a member of the institution staff. If not resolved at that level, then the inmates can raise the matter through a form commonly known as a "BP-9." If dissatisfied with the response at the institution level, an inmate may appeal his concerns to the Regional Director, commonly known as a "BP-10". If dissatisfied with the Regional Director's response, the inmate may finally appeal to the General Counsel's office in the Central Office of the Bureau of Prisons, commonly known as a "BP-11". Appeal to the Office of General Counsel is the final administrative appeal within the BOP. These grievance procedures allow the BOP to accurately and thoroughly investigate inmates allegations.

### B.     Plaintiff Shaw

As demonstrated by the attached Declaration of Delaine Hill, BOP records indicate that Plaintiff Shaw has not filed administrative remedies for Counts 1 through 4 of this Complaint.

See D. Hill Decl.,  ¶ 6. Thus, because Plaintiff Shaw has failed to exhaust any of his claims, his

claims should be dismissed for lack of subject matter jurisdiction.

       **C.**    **Plaintiff Sample**

      As demonstrated by the attached D. Hill, BOP records indicate that Plaintiff Shaw has not

filed administrative remedies and, thus, has not exhausted his administrative remedies for his

claim in Count V, that the BOP's Discontinuance of Its Educational Transfers Program Is

Invalid.  *See* D. Hill Decl.  ¶ 5.  Because the Plaintiffs did not pursue their complaints through all

three levels of the BOP's administrative remedy procedures, Counts 1-4, as against Plaintiff

Shaw, and Count 5, as against Plaintiff Sample, are not justiciable by the Court and should be

dismissed.

**II.**    **THE  REQUIREMENT TO PUSH 5 BEFORE INMATES' DOMESTIC
TELEPHONE CALLS ARE CONNECTED DOES NOT VIOLATE THE FIRST
AMENDMENT**.

      Plaintiffs allege that Federal Defendant BOP has violated Plaintiffs' First Amendment

Rights because, before an inmate's telephone call is connected domestically, the called party

hears an announcement that says:

> "this call is from a federal prison.  This is a prepaid call.  You will
> not be charged for this call.  This call is from (insert name of
> inmate calling).  Hang up to decline the call or to accept the call
> dial "5" now.  To block future prepaid calls from this person, dial
> "77."

Second Amended Complaint ¶ 9.   Plaintiffs allege they "have been deprived of the opportunity

to communicate telephonically with domestic U.S. prepaid called parties who utilize an ATAS,"

including Clerks of the Court.  Complaint  ¶ 11.  However, merely stating that Plaintiffs suffer

harm is insufficient.  In *Lewis v. Casey*, 518 U.S. 343, 349, 356, (1996), the Court held that an

inmate alleging a violation of his right to access the courts must show "actual injury,"such as a lost or rejected claim, or other inability to bring his claim as a result of the harm suffered. *See also Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir.2002) (the use of a telephone is merely one way to exercise the First Amendment right to communicate beyond the prison); *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir.1996) ( the "right to communicate with family and friends" is the issue in a challenge to telephone restrictions).

Plaintiffs cannot show any actual injury as a result of the "Push 5" requirement. If Plaintiffs' calls to Courts are disconnected because of the Courts' use of an automated telephone answering system, Plaintiffs may use another means to communicate with the Courts, such as writing a letter. Without a showing of actual injury to the Plaintiffs, Plaintiffs' First Amendment claims must be dismissed.

## III.    THE BOP'S POLICIES DO NOT VIOLATE THE APA

Plaintiffs allege that the following five BOP policies are invalid and violate the APA's notice and comment requirements because they were implemented without compliance with the notice and comment provisions of the APA, 5 U.S.C. §§ 551-53:

| Count I | A. | The BOP's Inmate Telephone System II ("ITS II") Requirement to Push 5 Before An Inmate's Domestic Telephone Calls are Connected |
| Count II | B. | The BOP's Long Distance Prepaid Call Rates |
| Count III | C. | The BOP's 300 and 400 Minutes of Calling Time Limits Per Month |
| Count IV | D. | The BOP's Selling Price Formula for Items Sold at BOP Commissaries |
| Count V | E. | The BOP's Discontinuance of Its Educational Transfers Program. |

### A.    The Administrative Procedure Act

Under the APA, before an agency may promulgate "legislative rules or regulations," it must first provide all interested parties with notice of the proposed rule, the legal authority under which the rule is proposed, and it must allow the interested parties to comment and participate in

11

the rulemaking process. See 5 U.S.C. §§ 553(b) and (c)). The subsection of the APA requiring

notice and comment prior to promulgation of "legislative rules or regulations," however, does not

apply to "interpretative rules, general statements of policy, or rules of agency organization,

procedure or practice[.]" 5 U.S.C. § 553(b)(A).  More generally, an "internal agency guideline,"

is "not subject to the rigors of the [APA], including public notice and comment.'" *Phillips v.*

*Hawk*, No. 98-5513 (D.C. Cir, April 14, 1999), 1999 WL 325487 (*citing Jacks v. Crabtree*, 114

F.3d 983, 985 n.1 (9th Cir. 1997), *cert. denied*, 523 U.S. 1009 (1998)).

### B.        The BOP's Telephone and Commissary Policies Do Not Violate the APA

Plaintiffs complain about the policies as set forth in, respectively, the Program Statements

on Telephone Regulations for Inmates, attached as Exhibit 6, and the Trust Fund/Deposit Fund

Manual. *See www.bop.gov*.  Each of the Counts that Plaintiffs complain of, as violating the APA,

is an example of an "internal agency guideline."[8]  *Jacks v. Crabtree,* 114 F.3d 983, 985 n. 1 (9th

Cir.1997), cert. denied, 118 S.Ct. 1196 (1998); *see Parson v. Pitzer*, 149 F.3d 734, 738 (7th

Cir.1998).  These guidelines are merely "interpretive" in that they do not "carr[y] the force and

effect of law." *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 588 (D.C. Cir.1997),

*cert. denied,* 118 S. Ct. 1184 (1998); *see also  American Mining Congress v. Mine Safety &*

*Health Admin.*, 995 F.2d 1106, 1108-12 (D .C. Cir.1993) (discussing criteria for ascertaining

whether purported interpretive rule has "legal effect).  As such, they are not "subject to the rigors

of the [APA], including public notice and comment. *Jacks*, 114 F.3d at 985 n. 1.

Courts have consistently held that Bureau Program Statements are internal agency

---

[8]  Policies involving prices and rate charges are frequently left ambiguous in the CFR due
to fluctuations in various markets, the BOP's access to goods, and inmate product demands.

guidelines not subject to the notice and comment requirements of the APA. *See, e.g., Reno v. Koray,* 515 U.S. 50, 61 (1995) (describing Bureau Program Statements as "internal agency guideline . . . akin to an 'interpretive rule' that 'does not require notice and comment'" in case involving Program Statement 5880.28 concerning BOP's crediting of detention time). *See also Gunderson v. Hood*, 268 F.3d 1149, 1151 (9th Cir. 2001) (same for Program Statement 5162.02 authorizing up to one year early release for successful completion of drug abuse treatment program); *Cunningham v. Scibana*, 259 F.3d 303, 306 (4th Cir. 2001) (Program Statement 5162.04 regarding crimes of violence and early release for successful substance abuse treatment); *Hendrickson v. Guzik*, 249 F.3d 395 (5th Cir. 2001) (Program Statement concerning notice to local law enforcement of release of criminals convicted of firearms offenses); *Downey v. Crabtree*, 100 F.3d 662, 666 (9th Cir. 1996) (Program Statement concerning drug abuse treatment programs containing early release provisions); *Cook v. Wiley*, 208 F.3d 1314, 1317 (11th Cir. 2000) (BOP Program Statement is analogous to an interpretative rule, and thus does not require notice and comment)). Each of these cases involved Bureau Program Statements with far more potential to affect substantive rights of prison inmates than the telephone guidelines and commissary rates challenged here.

Even if this Court were to ignore the precedents above specifically addressing Bureau Program Statements and rely instead on this Court's precedents defining "internal" agency guidance generally, it is equally clear that only "if an agency, 'by its action . . . intends to create new law, rights or duties, the rule is properly considered to be a legislative rule,' and thereby subject to the APA's notice and comment requirements." *Fertilizer Institute v. United States Environmental Protection Agency*, 935 F.2d 1303, 1308 (D.C. Cir. 1991)).

13

As previous Courts have held, any challenges regarding the constitutional validity of the BOP's mark up of commissary items must fail, as there are no limitations upon the manner in which the BOP prices goods in the commissaries.  *See  Prows v, U.S. Dept. of Justice*, 1991 WL 111459 (D.D.C. 1991); *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir.1980); *Bagwell v. Brewington-Carr*, 2000 WL 1239960,2- 3 (D.Del.2000) ("an inmate has no constitutionally protected right to purchase food or other items as cheaply as possible through the prison commissary" ).

Thus, because the telephone and commissary guidelines are merely interpretive, they are not subject to the notice and comment requirements of the APA.

     **C.**    **The BOP's Discontinuance of Its Educational Transfers Program Does Not Violate the APA.**

"Because decisions regarding the designation of inmates to a particular prison program or facility are discretionary, these agency actions are not subject to review under the APA." *Palomino v. Federal Bureau of Prisons*, 408 F. Supp. 2d 282, 290-291 (S.D.Tex.,2005); *citing Lincoln v. Vigil*, 508 U.S. 182, 193 (1993); *Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir.1992) (indicating BOP has authority to decide where to confine inmates prior to release), *cert. denied*, 510 U.S. 830, (1993)).  Thus, the BOP's discontinuance of its educational transfers program does not violate the APA.

**IV.**    **THE BOP HAS FULFILLED ITS FOIA OBLIGATIONS WITH RESPECT TO THE DISCLOSURE OF INMATES' PRE-SENTENCE REPORTS (COUNTS 6-7)**

     **A.**    **5 U.S.C. § 552a(3)(B) of the FOIA Does Not Require Defendant to Provide Plaintiff Sample With a Copy of His Pre-Sentence Investigation Report**

Pursuant to Program Statement 1351.05, the BOP no longer permits federal inmates to personally possess (keep with them in their cells) copies of their PSRs and SORs (Statement of

Reasons).  Baumgartel Decl, ¶ 3, and attached Exhibit 7, Program Statement 1351.05, at 15-17.

Instead, the documents are kept secure by BOP staff in the inmate's record, and inmates may

view their own PSRs and SORs through a member of their unit team[9].  *Id.*, ¶ 5.  Further, there is

a procedure in place in the event inmates need a copy of these documents to be provided to a

third party, including a court.  The BOP explained the reason for this policy change in Program

Statement 1351.05:

> Many PSRs and SORs contain information regarding the inmates' government assistance,
> financial resources, community affiliations, etc.  The Bureau has documented an
> emerging problem where inmates pressure other inmates for a copy of their PSRs and
> SORs to learn if they are informants, gang members, have financial resources, etc.
> Inmates who refuse to provide the documents are threatened, assaulted, and/or seek
> protective custody.  Likewise, inmates providing PSRs and SORs containing harmful
> information are faced with the same risks of harm.

Program Statement 1351.05 at 15-16.

The record shows that Plaintiff was afforded a meaningful opportunity to review his PSRs

and to take notes on them. *Id.* ¶ 6.  Indeed, he does not dispute this. Under the FOIA Plaintiff is

not entitled to have copies of his PSR's, he is only entitled to review them.  As set forth in the

BOP Program Statement, BOP has legitimate reasons, based on concerns about inmate safety, for

prohibiting inmates from keeping copies of their PSRs in their cells.  *See Bell v. Wolfish*, 441

---

[9]  Plaintiff is entitled to review the document, albeit under staff supervision.  Although
prohibited from obtaining or possessing photocopies, federal inmates are entitled under the FOIA
to access their own PSRs (*see United States Department of Justice v. Julian*, 486 U.S. 1 (1988))
and SORs.  Inmates must be provided reasonable opportunities to access and review their PSRs,
SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign,
military, etc.).  Inmates are responsible for requesting an opportunity to access and review these
records with unit staff in accordance with the Program Statement on Inmate Central File, Privacy
Folder, and Parole Mini-Files.  *See* Program Statement 1351.05, "Release of Information"
(September 19, 2002).

U.S. 520, 531, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see Martinez v. Bureau of Prisons,* 444 F.3d 620, 624-25 (D.C. Cir. 2006).

### B.    Plaintiff Lacks Standing Because He Has Not Suffered an Actual Injury

It is unclear whether Plaintiff has standing regarding his PSR claims. All parties trying to invoke the jurisdiction of a federal court must satisfy Article III's requirements of constitutional standing. *See City of Waukesha v. E.P.A.*, 320 F.3d 228, 233 (D.C. Cir. 2003); *Sierra Club v. E.P.A.*, 292 F.3d 895, 898 (D.C. Cir. 2002); *Interstate Natural Gas Ass'n of America v. F.E.R.C.*, 285 F.3d 18, 45 (D.C. Cir. 2002). To achieve standing, a plaintiff must meet three requirements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). First, the plaintiff must have suffered an injury in fact, an invasion of a legally protected interest, which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *See id.* Second, the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *See id.* Third, it must be likely that the injury will be redressed by a favorable decision. *See id.* "When a plaintiff seeks to avoid injuries that are merely speculative or to require a court to infer what events might transpire to cause plaintiff harm in the future, the injury in fact requirement is not met." *LPA, Inc. v. Chao*, 211 F. Supp. 2d 160, 164 (D.D.C. 2002).

In the present case, Plaintiff has not suffered an injury in fact. Plaintiff fails to allege that his inability to possess his PSR, except through his unit staff, has actually injured him in any way. Therefore, Plaintiff lacks standing to bring this suit and the Court should dismiss Counts 6 and 7 of the Complaint for lack of jurisdiction.

16

**C.    Plaintiff Failed to Properly File a Request, Under 5 U.S.C. § 552a(3)(A), to Inspect Inmate Richard Painter's Pre-Sentence Investigation Report**

FOIA has two requirements for an access request.  First, the request must reasonably describe the records and the request must be made in accordance with the agency's published FOIA regulations. 5 U.S.C. § 552(a)(3)(A).  Second, the United States Department of Justice regulations mandate that any request for information about an individual requires written authorization or proof of death in relation to that individual.  28 C.F.R. §16.3(a).

On May 12, 2004, Plaintiff submitted FOIA request number 2004-06254, to inspect the PSI of inmate Richard Painter. Baumgartel Decl. ¶ 6; Moorer Decl. ¶ 2.  The BOP rejected the request on May 12, 2004.  *Id.*  All requests made under the FOIA are returned to the requester if they are received with missing documentation or otherwise incomplete to the extent that they cannot be processed.  Moorer Decl. at ¶ 3.  When a request is incomplete or cannot otherwise be processed all documents submitted by the requester are returned to the requester, with a letter explaining the reason for the return.  They are specifically advised that until the necessary information is received, the request is considered closed.  *Id.* at ¶ 3.

Because all documents submitted pursuant to this FOIA request were returned to the requester, the BOP is unable to determine with specificity which requirement the Plaintiff failed to satisfy. *Id.*  However, had Plaintiff submitted a proper authorization, as he alleges, the request would have been processed, and any applicable exemptions or exclusions would have been applied.  *Id*. at ¶ 4; Baumgartel Decl. ¶ 6.

A review of the FOIA Database indicates that the FOIA request was never resubmitted to the FOIA Office, nor does Plaintiff allege that it was. Baumgartel Decl. ¶ 7.  Therefore, because Plaintiff failed to make his request in accordance with BOP's published FOIA regulations, and

17

was notified of such, there is no basis for his claim that the BOP failed to respond to his FOIA request within the statutory time limits.

Further, a review of the entries in the docket in *United States v. Richard Painter*, Case No. 2:01-cr-00190-1 (S.D. Tex., Corpus Christi Division), indicates that Mr. Painter's pre-sentence report and related materials have been placed under seal and "shall not" be disclosed to other parties, other than Painter and the U.S. Marshalls, "without written permission of this Court." Nebeker Decl. ¶ 2, 6. Thus, because Sample did not have written permission from the Texas court, he was not entitled to a copy of Mr. Painter's pre-sentence report.

## V.     THE BOP PROPERLY DENIED THE PLAINTIFF'S REQUESTS FOR A COPY OF BOP-DOCS, AS IT IS NOT AN AGENCY RECORD

Pursuant to the FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). This includes electronic records "if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B); *Electronic Freedom of Information Act Amendments of 1996*, Pub.L. 104-231, 110 Stat. 3048, 3049 (codified *as amended* at 5 U.S.C. § 552(f)(2)). The standard for determining what constitutes and agency records is set forth in *United States Department of Tax Analysts*, 492 U.S. 136, 144-145(1989). The two part test requires that the record be either created or obtained by an agency, and under agency control at the time of the request. *Id.*

On December 24, 2003, BOP received Plaintiff Sample's request, pursuant to the FOIA, for a copy of the BOPDOCS CD-ROM, and assigned the request number 2004-02310. The BOP has no record of a request filed on or about November 23, 2004.

18

BOPDOCS is a document management CD-ROM system produced by BOP using commercially licensed software along with BOP documents in WordPerfect, Adobe PDF, HTML, among other electronic format.  It is a means of searching, reviewing and maintaining BOP documents and is not a record in itself.  The BOP commissioned BOPDOCS in an effort to allow the BOP staff to search BOP documents electronically.  *See* Declaration of Omar Herran at ¶ 2, and Exhibit 8 attached thereto.   The documents are indexed and searchable using a commercial search engine product called ISYS by Odyssey Development.  *Id.*  ¶ 3.  BOPDOCS contains essentially every policy, form and directive used by the BOP, however every document that is available in BOPDOCS is also available in either hard copy or another electronic format. *Id.*  Presently, BOPDOCS contains approximately 3500 files, not including software-related files.  *Id.*  ¶ 5.   Absent the ISYS search engine, BOPDOCS is just one of the places where copies of BOP Policies are stored.

Plaintiff was initially informed by the BOP's FOIA office that a copy of BOPDOCS could be released.  This determination was made in error, as the BOP cannot release the BOPDOCS cd-rom without violating its licensing agreement.  *See* Exhibit 8, *Odyssey Development Pty Ltd Software License Agreement Terms and Conditions*.  Because the BOPDOCS contains proprietary software licensed to the BOP it does not qualify as an agency record and is thereby not subject to FOIA.  *Id.*  The Information Management Office (previously called Documents Control Systems and Document Systems), maintains control over distribution of the CDs.  *See* Declaration of Omar Herran, ¶ 4.

Because BOP has no ownership right or control of the software, BOPDOCS is not an agency record that can be requested through FOIA.  While any of the BOP records contained in

19

BOPDOCS can be requested through FOIA, the CD itself cannot. *Id.* Therefore, it is clear that

BOPDOCS, as an entity, does not qualify as an agency record under FOIA. *See Gilmore v. U.S.*

*Dept. of Energy*, 4 F.Supp. 2d 912, N.D.Cal.(1998)( mere license to use for government

purposes, rather than ownership, is insufficient to qualify as an agency record).

**VI.    THE STATE DEPARTMENT HAS SATISFIED ITS OBLIGATIONS UNDER
THE FOIA BY PROVIDING PLAINTIFF WITH *ALL* RESPONSIVE
REPATRIATION DOCUMENTS FROM IRELAND WITHOUT REDACTION.**

By letter dated September 6, 2005, plaintiff requested "[a]ll documents concerning [his]

repatriation from Dublin, Ireland to the United States in 1997." By letters dated January 23,

2006, December 20, 2006, and March 2, 2007, the State Department produced a total of seven (7)

unredacted records responsive to plaintiff's request. Thus, the State Department has satisfied its

obligations under the FOIA by providing appellant with *all* responsive documents without

redaction. *See* Declaration of Margaret P. Grafeld, ¶¶ 9, 11, 13.

The only potential issue before this Court, therefore, is whether the Department of State

conducted a reasonable search, an issue that Plaintiff has not challenged. *See Oglesby v. U.S.*

*Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Cleary, Gottlieb, Steen & Hamilton v. Dept. of*

*Health, et al.*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d

1344, 1352 (D.C. Cir. 1983). Moreover, even if Plaintiff had raised this issue, the record reflects

that the Department's search was not only reasonable but also particularly thorough. Declaration

of Margaret P. Grafeld, ¶ 6. An agency is not required to search every record system, but need

only search those systems in which it believes responsive records are likely to be located.

*Oglesby*, 920 F.2d at 68. Here, in response to plaintiff's request for records relating to his

20

repatriation loan[10], the Department searched five Departmental records systems. *Id.* Specifically, the Department searched the records of the Central Foreign Policy File (the Department's principal records system, containing millions of departmental documents); the records of the office responsible for administering repatriation loans (the Office of Overseas Citizen Services); an office whose operations are frequently affected by repatriation loan status (the Office of Passport Services); the bureau that would have had records of the alleged "State Department special agent" mentioned in plaintiff's request (the Bureau of Diplomatic Security); manifests of retired files for the American Embassy in Dublin and the Office of Overseas Citizens Services; and the office maintaining accounts receivable records for repatriation loans. *Id.* ¶¶ 6-8. These searches were conducted in good faith by agency personnel familiar with both the records systems searched and the subject matter of plaintiff's FOIA request. *Id.* Furthermore, the fact that the Department reopened the case to conduct an additional search, *see id.* ¶ 13, constitutes a "'stronger, rather than weaker, basis' for accepting the integrity of the search." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (*quoting Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981)). The Department has accordingly met its burden of making "'a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (*quoting Oglesby*, 920 F.2d at 68); *see also Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (noting that the fundamental question is not "'whether there might exist any other documents possibly responsive to the request, but

---

[10]    A repatriation loan is a loan given to a destitute American abroad in order to facilitate the American's direct return to the United States. Grafeld Decl. ¶ 8.

rather whether the search for those documents was adequate.'") *(quoting Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

## VII.   PLAINTIFF'S REQUEST THAT BOP PRODUCE RECORDS CONCERNING THE PURCHASE OF PASSOVER MEALS AND THE PURCHASE OF A SUKKAH MUST BE DISMISSED AS MOOT

In a FOIA action, the courts have jurisdiction only when an agency has improperly withheld agency records.  5 U.S.C. § 552(a)(4)(B).  "[I]t is well established that under the FOIA, 'once the records are produced the substance of the controversy disappears and becomes moot, since disclosure which the suit seeks has already been made.'"  *Trueblood v. U.S. Dept. of the Treasury*, 943 F. Supp. 64, 67 (D.D.C. 1996) (*quoting Crooker v. United States State Dept.,* 628 F.2d 9, 10 (D.C. Cir. 1980)); *see also Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

Plaintiff's FOIA request was received in the BOP FOIA Office on March 23, 2006, and assigned request number 2006-04671.  The BOP provided three responses to Plaintiff's request on April 28, 2006, May 25, 2006, and July 25, 2006.   All requested documents in relation to the provision of the Passover ceremonial meal during 2004, and the purchase of the eight days worth of meals by the Food Service Department at FCI Beaumont (Low) were released, but names and phone numbers of staff were redacted.  Greene Decl. ¶ 3.  Upon review of documents in preparation for filing this dispositive motion, BOP became aware that the request for information related to a sukkah was overlooked.  *Id*. ¶ 4.  Two responsive documents were located.  Greene Decl. ¶ 4.  These records were mailed to the Plaintiff on May 10, 2007.  *Id.*

Because all responsive records concerning the purchase of Passover meals and the purchase of a sukkah have been released to Plaintiff, there is no justiciable case or controversy

with respect to these two issues. *See Lepelletier v. FDIC*, 23 Fed. Appx. 4, 6 (D.C. Cir. 2001) (refusing to consider case further because plaintiff "received all — indeed more than — the relief he initially sought . . . [c]onsequently, his appeal is moot ..."); *Matter of Wade*, 969 F.2d 241, 248 (7th Cir. 1992) ("In FOIA cases, mootness occurs when requested documents have already been produced."). Therefore, Count Eleven of the Complaint is moot and should be dismissed.

## VIII.   THE BOP IS NOT REQUIRED TO CREATE NEW ELECTRONIC RECORDS IN RESPONSE TO A FOIA REQUEST

By letter dated August 16, 2006, the BOP's FOIA office received a request from Plaintiff for Records of Administrative Remedy Indexes ("Indexes"), dated August 10, 2006. R. Hill Decl.¶ 3, and attached Exhibit 1. This request was assigned number 2006-09273. Though the request indicated Plaintiff's willingness to pay up to $25.00 in fees, it did not specify whether the documents should be produced in paper or electronic format. *Id.* On the same day, BOP's FOIA office received a second request from Plaintiff for copies of several Administrative Remedy Responses. *Id.* This request specifically requested that the response be provided in read-only electronic format. BOP's FOIA office assigned this request number 2006-9274, and aggregated it with request number 2006-9273. *Id.*

Inmate Administrative Remedy information is maintained in SENTRY, an automated management system. *Id.* ¶ 5. The FOIA processor who initially processed Plaintiff's request interpreted Plaintiff's request as a request that the records be electronically downloaded from SENTRY and saved in an electronic format. *Id.* ¶ 2. Because the information contained in SENTRY cannot be read or interpreted without the SENTRY software, the FOIA processor believed that the records could not reasonably be saved or copied electronically. *Id.* ¶ 2, 5. This determination was based on the fact the indexes are maintained on the Bureau's SENTRY

23

database, which, if copied without the SENTRY software, cannot be read, and cannot be

electronically converted to another format using a simple save-as feature. *Id.* In order to convert

the data to another electronic format, the data would have to be electronically highlighted and

copied from each individual page, transferred to another computer format, and pasted into a

document in the second computer format. *Id.* Considering the scope of time and work involved

in converting the document from SENTRY to another electronic format, and the fact that

Plaintiff had not requested the records in an electronic format, the FOIA processor did not

consider it to be reasonable to convert the records from SENTRY into another electronic format.

*Id.*

On November 27, 2006, the BOP responded with an aggregated[11] response to request

---

[11]The BOP aggregated the two requests pursuant to 28 C.F.R. § 16.11(h), which provides
as follows:

> (h) *Aggregating requests.* Where a component reasonably believes that a requester
> or a group of requesters acting together is attempting to divide a request into a
> series of requests for the purpose of avoiding fees, the component may aggregate
> those requests and charge accordingly. Components may presume that multiple
> requests of this type made within a 30-day period have been made in order to
> avoid fees. Where requests are separated by a longer period, components will
> aggregate them only where there exists a solid basis for determining that
> aggregation is warranted under all the circumstances involved. Multiple requests
> involving unrelated matters will not be aggregated.

28 C.F.R. § 16.11(h). Further, when the BOP receives a properly formatted FOIA request
and determines that compliance fees exceed $ 25.00, the BOP's regulations
provide that:

> When a component determines or estimates that the fees to be charged under this
> section will amount to more than $25.00, the component shall notify the requester
> of the actual or estimated amount of the fees, unless the requester has indicated a
> willingness to pay fees as high as those anticipated. . . . **In cases in which a
> requester has been notified that actual or estimated fees amount to more than
> $25.00, the request shall not be considered received and further work shall
> not be done on it until the requester agrees to pay the anticipated total fee. . .**

number 2006-09273 and request number 2006-09274. *Id.* ¶ 4. Plaintiff has not challenged the aggregation of his request.

### A.    Request 2006-9273

Plaintiff was advised that 166 pages of documents had been identified as responsive to his request for the Index. *Id.* ¶ 5. Although Plaintiff had not requested the records in an electronic format, the response explained that they could not be reasonably saved and reproduced in an electronic format. *Id.*

### B.    Request 2006-9274

Plaintiff was advised that the Administrative Remedy Responses (2006-9274) that he had requested be produced in read-only electronic format, were not maintained or stored in electronic format. R.Hill Decl. ¶ 6. As a result, a response would require the search, retrieval and duplication of hard copies. *Id.* Plaintiff was further advised that 98 responsive pages were estimated as responsive requiring search and duplication fees. *Id.* Finally, Plaintiff was advised that he must agree to pay an anticipated total fee of $198.40 before the aggregated FOIA requests would be processed and that, unless he agreed to pay, the requests would be considered not received and no further action would be taken. *Id.*

Plaintiff responded to this correspondence on December 1, 2006, rejecting production of the records in paper format for both requests, although, as noted, Plaintiff's original request for

---

.  A notice under this paragraph will offer the requester an opportunity to discuss
the matter with Department personnel in order to reformulate the request to meet
the requester's needs at a lower cost.

28 C.F.R. § 16.11(e) (emphasis added).

the Administrative Remedy Index did not specify that they be produced in electronic format. *See* R. Hill Decl., Exhibit 5.

It is clear that an agency need not proceed to fulfill a FOIA request if the request will exceed $ 25, unless the requester agrees to pay. *See Pollack v. Dept. of Justice*, 49 F.3d 115, 120 (4th 1995). Before any action is taken on his FOIA request, "plaintiff has an obligation to pay for the reasonable copying and search fees assessed by the defendant." *Trueblood v. U.S. Dep't of the Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996). An agency is permitted to require that a requester pre-pay fees before the agency will release documents pursuant to a FOIA request. *See id.*; *see also Putnam v. United States Dep't Justice*, 880 F.Supp. 40, 42 (D.D.C. 1995); *Maydak v. United States Dep't of Justice*, 254 F. Supp.2d 23, 50 (D.D.C. 2003) (dismissing without prejudice because "plaintiff is obligated . . . to pay the fee or to seek from the agency either a fee waiver or a fee reduction.") (citing *Trueblood*, 943 F. Supp. at 68).

Because there is no evidence to demonstrate that Plaintiff agreed to pay the fee, or that Plaintiff challenged the amount or propriety of the fee, the BOP deemed Plaintiff's FOIA requests not received.

### C.    Count 12 and 13 of Plaintiff's Complaint

Plaintiff alleges that BOP has failed to respond to his request for the Index (Request 2006-09273), and has also failed to respond to his request for the Remedy Responses (Request 2006-09274). Second Amended Compl., ¶¶ 47-50. As discussed above, Plaintiff's Request 2006-9273 did not request that the Index be provided in electronic format.

Thus, the only issue that is properly before the Court at this time with respect to Counts 12 and 13, is whether the BOP properly responded to Plaintiff's Request 2006-9274 for Remedy

Responses in an electronic read-only format. Because the records regarding Remedy Responses are not maintained in electronic format in the ordinary course of business, the BOP maintains that it is not normally required to convert them into electronic format to respond to Plaintiff's FOIA request. *Id.* ¶¶ 7, 8. However, because the BOP FOIA Office does routinely scan and save certain documents to PDF format in order to redact them prior to release, in response to FOIA requests, the Remedy Responses requested by Plaintiff could be scanned and saved in an electronic PDF format.[12] *Id.* ¶ 5. The search fees for Request 2006-9274 are estimated at $182.00. Recognizing that Plaintiff was not provided the option of reformulating his request, the BOP is in the process of processing, on an expedited basis, Plaintiff's aggregated requests, in an electronic format, and is waiving all associated fees. *Id.* ¶¶ 7, 8.

BOP's production of the records in an electronic format does not guarantee that the Plaintiff will be allowed to access or retain the electronic media while incarcerated. *See Sample v. Bureau of Prisons,* 466 F.3d 1086, 1089 (D.C. Cir. 2006). In *Sample*, the Court ruled that the BOP FOIA Office should have produced records in an electronic format as requested by the inmate, but the Court did not address the situation where an inmate may not have been able to receive the electronic records after they were mailed to him, due to prison restrictions concerning what inmates may possess in their cells. *Id.*

---

[12] The fact that hard copies of SENTRY records are capable of being scanned and thereby produced in an electronic PDF format is not an indication that the BOP has the ability to produce *any* record in an electronic format.

27

IX.    **THE BOP PROPERLY ADVISED PLAINTIFF THAT A REQUEST THAT BOP POST DOCUMENTS ON THE DEPARTMENT OF JUSTICE WEBSITE IS NOT A PROPER REQUEST UNDER THE FOIA**

Subsection (a)(2) of the FOIA requires that certain basic agency records be routinely made available for public inspection and copying in agency reading rooms.  5 U.S.C. 552(a)(2).  This requirement extends to the maintenance of electronic reading rooms.  5 U.S.C. 552(a)(2)(E).

The BOP's FOIA office received a request on December 18, 2006, and assigned the request number 2007-02061.  *See* R. Hill Decl., ¶ 2.  The two-part request initially sought a copy of the current subject matter index of the public reading room ("Subject Matter Index").  The request also demanded that eleven types of documents be made available electronically on the Department of Justice website,  including "administrative remedy responses from the BOP's various institutions . . . disciplinary hearing officer reports . . .written decisions made by a Hearing Administrator regarding an inmate's placement in a control unit . . . decisions to accept, reject, compromise or settle a claim under the Federal Tort Claims Act . . . decisions to either grant or deny a request for information under the Freedom of Information Act . . . all memorandums and other internal documents that either interpret or implement Bureau policy . . . ."  Second Amended Complaint ¶ 51.

The BOP identified 312  responsive records in response to the Plaintiff's request for the Subject Matter Index.  R. Hill Decl ¶ 10.  By letter, dated March 29, 2006, the BOP informed Plaintiff that the processing of this request required the duplication of 312 pages and that, in order to process the request, he would need to submit payment in the amount of $21.20 for the duplication cost.  *Id.*  This fee was assessed in accordance with 28 C.F.R. §16.11, which requires payment of 10 cents per page, after the first 100 pages, which are provided free of charge.

*Id.* Plaintiff has not raised BOP's response to this portion of his FOIA request as an issue in this litigation.

In the same letter, BOP informed Plaintiff that the request that BOP post the specified documents on an agency's website was not a proper request under the FOIA. *Id.* ¶ 11. Additionally, Plaintiff was informed that it was the BOP's position that the documents noted in his correspondence did not meet the standards for posting on the website. *Id.*

Count Fourteen of the Complaint now seeks an order under 5 U.S.C. § 706(1), or a writ of mandamus, directing the BOP to make these records available certain records "through telecommunications means." Second Amended Compl. ¶ 53.

The statutory language of 5 U.S.C. § 552(a)(4)(B) has been held to be limited to relief under the FOIA to disclosure of records to a particular requester. In *U.S. Dept. of Justice v. Tax Analysts*, the Supreme Court reiterated the standard that:

> "Federal jurisdiction under Freedom of Information Act is dependent upon showing that agency has improperly withheld agency records; unless these criteria are met, district court lacks jurisdiction to devise remedies to force agency to comply with Act's disclosure requirements."

492 U.S. 136, 142 (1989); *quoting Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980)("federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.' ").

Because Plaintiff did not request that the eleven records be released to Plaintiff, there was no request for documents under the FOIA, and consequently no withholding of documents under the FOIA. Therefore, there is no viable issue properly before the Court in relation to Count Fourteen. Plaintiff does not argue that Defendant is withholding documents; instead, Plaintiff argues that the BOP should be forced to maintain these records on a public web page. Second

29

Amended Compl. ¶ 51-57.  Since no documents have been withheld from Plaintiff, Count

Fourteen of the Second Amended Complaint fails to state a claim upon which relief can be

granted and should be dismissed.

## X.    THE BOP IS IN COMPLIANCE WITH THE PRA

The Paperwork Reduction Act prohibits any federal agency from adopting regulations

which impose paperwork requirements on the public unless the information is not available to

the agency from a source within the Federal Government.  *Dole v. United Steelworkers of

America*,  494 U.S. 26, 32 (1990).  Plaintiff has failed to allege with specificity how the BOP has

failed to comply with the PRA.

## XI.    PLAINTIFFS HAVE NOT SHOWN THAT THEY ARE ENTITLED TO INJUNCTIVE OR MANDAMUS RELIEF.

### I.    Injunctive Relief

It is well established that an injunction is an extraordinary and drastic remedy and should

not be granted unless the movant, by a clear showing, carries its burden of persuasion.  See

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Varicon Int'l. v. OPM*, 934 F. Supp 440, 442

(D.D.C. 1996).  To obtain a preliminary injunction, a movant must show, (1) a substantial

likelihood of success on the merits, (2) that it would be irreparably harmed if the injunction is not

granted, (3) that the injunction would not substantially injure other interested parties, and (4) that

the public interest would be furthered by the injunction.  *See Davenport v. Int'l Brotherhood of

Teamsters, AFL-CIO*, 166 F.3d 356, 360 (D.C. Cir. 1999); *World Duty Free Americas, Inc. v.

Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  These four factors interrelate on a sliding scale,

*Davenport*, 166 F.3d at 360-361, however, a significant failure of proof with respect to any one

factor may warrant the refusal of *pendente lite* relief and require the movant to await the

30

conclusion of the case, *Time Warner Entertainment Co. v. FCC*, 810 F. Supp. 1302, 1304

(D.D.C. 1992). In particular, a failure to show a substantial likelihood of success on the merits

requires a very strong showing on the other three factors to warrant injunctive relief. *See*

*Davenport*, 166 F.3d at 166. Furthermore, some showing of irreparable injury is always required

since "the basis for injunctive relief in the federal courts has always been irreparable harm." *See*

*CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995);

*Varicon*, 934 F. Supp. at 444 (quoting *Kentron-Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169

(D.C. Cir. 1973).

### II.    Mandamus Relief

Issuance of a writ of mandamus is a drastic remedy to be invoked only in extraordinary

situations. *See Chatman-Bey v. Thornburgh*, 864 F.2d 804, 806 n. 2 (D.C. Cir. 1988). It is

granted only when essential to the interests of justice. *See Starnes v. McGuire*, 512 F.2d 918,

929 (D.C. Cir. 1974)(en banc); *Haneke v. Secretary of HEW*, 535 F.2d 1291, 1296 (D.C. Cir.

1976); *In Re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988). While a federal district court has

authority to issue a writ of mandamus pursuant to 28 U.S.C. § 1361, its issuance is not required;

rather, mandamus is issued at the discretion of the Court. *National Wildlife Federation v.*

*United States*, 626 F.2d 917, 923 (D.C. Cir. 1980).

Mandamus generally will not issue unless there is a clear right in the plaintiff to the relief

sought, a plainly defined and nondiscretionary duty on the part of the defendant to honor that

right, and no other adequate remedy, either judicial or administrative, available. *Northern States*

*Power Co. V. U.S. Dep't of* Energy, 128 F.3d 754, 758 (D.C.Cir. 1997); *Ganem v. Heckler*, 746

F.2d 844, 852 (D.C. Cir. 1984); *accord In Re Lane*, 801 F.2d 1040, 1042 (8th Cir. 1986);

31

*Homewood Professional Care Center, Ltd. v. Heckler*, 764 F.2d 1242, 1251 (7th Cir. 1985);

*Jones v. Alexander*, 609 F.2d 778 (5th Cir. 1980); *Billiteri v. U.S. Board of Parole*, 541 F.2d 938

(2nd Cir. 1976).

The requirement of a clear duty to act has been interpreted to mean that the duty of the

federal officer sued must be "ministerial, plainly defined and peremptory." *Jeno's Inc. v.*

*Commissioner of Patents and Trademarks*, 498 F. Supp. 472, 476 (D. Minn. 1980).  The act

sought to be compelled must be "a clear nondiscretionary duty."  *Pittston Coal Group v. Sebben*,

109 S. Ct. 414, 424 (1988).  *Accord, Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179 (9th Cir. 1983);

*Welch v. Donovan*, 551 F. Supp. 809 (D.D.C. 1982).  "It is well settled that a writ of mandamus

is not available to compel discretionary acts."  *Cox v. Secretary of Labor*, 739 F. Supp. 28, 30

(D.D.C. 1990)(citations omitted).

Plaintiffs make no factual allegations and provide no evidence that would permit the

Court to assess how any of the BOP's policies complained of will impact them individually.

Speculation does not satisfy Plaintiffs' burden. *See Wisconsin Gas Co.*, 758 F.2d at 674.  Even

taken at face value, however, the alleged harm is insufficient as a matter of law to justify a

preliminary injunction or mandamus relief. Mandamus relief is inappropriate as Plaintiffs have

adequate remedies (*e.g.* FOIA, APA).  Hence, Plaintiffs are not entitled to Mandamus relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs have failed to state a claim for relief.

Respectfully submitted,

_Jeffery A. Taylor_
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_Rudolph Contreras_
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_/s/Sherease Louis_
SHEREASE LOUIS
Special Assistant United States Attorney
555 Fourth Street, N.W., Civil Division
Washington, D.C. 20530
Counsel for Defendants

**OF COUNSEL:**
Oliver M. Lewis, Esq.
U.S. Department of State
Washington, D.C.

Wanda Hunt, Esq.
Delaine Martin Hill, Esq.
Bureau of Prisons
Washington, D.C.

33

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRANDON SAMPLE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0715 (PLF) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Defendant's Motion To Dismiss Or, In The

Alternative, For Summary Judgment, Supporting Memorandum, Statement of Material Facts,

Exhibits, Declarations, and Proposed Order, has been made by mailing copies thereof, first class

postage prepaid, addressed to:

BRANDON C. SAMPLE, # R33949-037
FEDERAL PRISON CAMP
2680 Highway 301 South
Jesup, GA 31599

BERNARD SHAW, # R59469-004
FCI- Beaumont (Low)
P O Box 26020
Beaumont, TX  77720-6020

on this 16th  day of May, 2007.

/s/Sherease Louis
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 307-0895