UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, et al.,            )

v.                                 )          No. 06-715 (PLF)

FEDERAL BUREAU OF PRISONS, et al.  )

## MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

In accordance with Fed.R.Civ.P.56, the undersigned Plaintiffs, Brandon Sample ("Sample") and Bernard Shaw ("Shaw"), respectfully request summary judgment on Counts 1-8, 11, and 14 of the Plaintiff's Second Amended Complaint. Further, Plaintiffs respectfully request that Defendant Department of State's motion for summary judgment on Count 10 be granted, and that Counts 12-13 be dismissed as moot contingent upon the Bureau of Prison's ("BOP") release of the requested records. Count Nine requires no further Court action due to its settlement by the parties. Finally, to the extent the Court finds that the Plaintiffs are not entitled to summary judgment, this filing serves as the Plaintiff's response to the Defendant's motion to dismiss or for summary judgment.

## Background

The Plaintiffs are federal prisoners currently incarcerated in Jesup, Georgia. Plaintiffs bring this suit pursuant to the First Amendment of the Constitution, the Administrative Procedures Act ("APA"), the Paperwork Reduction Act ("PRA"), the Freedom of Information Act ("FOIA"), and the mandamus provisions of 28 U.S.C. § 1361.

## Standard of Review

Summary judgment is appropriate for the moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or other declarations, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Sample v. Lappin, 424 F.Supp.2d 187, 191 (D.D.C. 2006). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Id. A material fact is one "that might affect the outcome of the suit under the governing law." Id. When evaluating a summary judgment motion, the Court does not make credibility determinations, weigh the evidence, or draw inferences from the facts found; those are jury determinations, not those of a judge. Id. Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or documentary evidence to the contrary. Id. at 191. The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Id.

## Argument

(a)  Count One

Count One of the Plaintiff's Second Amended Complaint alleges that the BOP's so-called push "5" requirement for domestic prepaid calls over its Inmate Telephone System ("ITS") violates the First Amendment and the APA. Docket Entry 26-2 at ¶¶ 8-16. In response, BOP argues that the Plaintiffs fail to

2

state a cognizable constitutional claim, citing Lewis v. Casey, 518 U.S. 343 (1993), because they show no actual injury caused by the push "5" requirement. See Docket Entry 39 at pg. 15-16. Futher, BOP contends that the Plaintiffs fail to state an APA claim because the push "5" requirement is an interpretive rule not subject to notice and comment rulemaking. Id. at 16-19. Plaintiffs address each of these contentions in turn.

**First Amendment Challenge To Push "5" Requirement**

When a domestic prepaid call is placed over the ITS II, the called party must push "5" before the call is connected. Second Amended Compl. at ¶ 9; Decl. of Brandon Sample at ¶ 3. Amazingly, the push "5" requirement does not exist for international calls. Second Amended Compl. at ¶ 10; Decl. of Sample at ¶ 4. Rather, international calls over the ITS II ring straight through. Id. The Plaintiffs have unsuccessfully attempted to place calls to clerks of court, businesses, family members, friends, and other called parties who utilize an automated telephone answering system ("ATAS"). See Decl. of Sample at ¶ 5; Decl. of Bernard Shaw. These calls have been unsuccessful because called parties who use an ATAS are incapable of pushing "5." Id. As a result, the Plaintiffs have been deprived of the opportunity to communicate telephonically with called parties who use an ATAS. Id.

The BOP argues that the Plaintiffs fail to state a First Amendment claim because they show no "actual injury" as required by Lewis, and that in any event, they can communicate through other means with called parties who cannot push "5." Docket Entry 39 at 15-16. However, the "actual injury"

requirement of Lewis does not apply to the Plaintiff's First
Amendment claim because the Plaintiffs do not allege a denial
of access to the courts.  Rather, Plaintiffs challenge the push
"5" requirement as an impermissible restriction on their means
of communicating with persons outside prison walls.  Valdez v.
Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002)(Defining First
Amendment right in challenge to telephone restrictions as "the
right to communicate with persons outside prison walls").  Such
challenges are governed by Turner v. Safley, 482 U.S. 78
(1996).  Valdez, at 1048.

Under Turner a prison regulation that impinges on an
inmate's constitutional right "is valid if it is reasonably
related to a legitimate penological interest."  Id. at 89.  In
making the "reasonableness" inquiry, four factors are
considered: (1) whether there is a valid, rational connection
between the restriction and the legitimate governmental
interest put forward to justify it; (2) whether there are
alternative means of exercising the right; (3) whether
accommodating the asserted constitutional right will have a
significant negative impact on prison guards and other inmates,
and on the allocation of prison resources generally; and (4)
whether there are obvious, easy alternatives to the restriction
showing that it is an exaggerated response to prison concerns.
Turner, at 89-90.  The first factor is a threshhold
requirement, for if the restriction is shown to be arbitrary
and irrational, "the regulation fails, irrespective of whether
the other [Turner] factors [may] tilt in its favor."  Shaw v.
Murphy, 532 U.S. 223, 229-30 (2001).  Plaintiffs respectfully

submit that the push "5" requirement cannot survive this threshold determination.

First of all, the BOP has yet to advance a justification for the push "5" requirement. However, assuming a reason were provided, the relationship between the interest and the push "5" requirement would not be rational because there is no comparable requirement for international calls. Levitan v. Ashcroft, 281 F.3d 1313, 1323 (D.C. Cir. 2002)("The relationship between the interest and the rule must be rational, so that if the interest were the prevention of drunkenness among inmates, the prison would have to explain how that interest is implicated by the negligible amount of wine ingested through intinction"). Upon installation of the ITS II, the push "5" requirement applied to both domestic and international calls. Decl. of Sample at ¶ 8. However, after it was determined that the push "5" requirement was causing problems with the connection of international calls -- the same kind of complaint Plaintiffs make about the domestic push "5" requirement -- the BOP, in either 2000 or 2001, eliminated the push "5" requirement for international calls. Decl. of Sample ¶ 8 (emphasis added). With the removal of the push "5" requirement for international calls, the Plaintiffs can make direct dial calls to countries that are a part of the "Axis of Evil," and/or are centers of terrorist activity, but cannot make similar calls domestically. Decl. of Sample ¶ 9; Decl. of Shaw. There is nothing rational about that.

Moreover, the BOP, through its failure to respond to a Rule 36 request for admissions, has conclusively admitted that,

"there is no legitimate penological reason in requiring prepaid domestic U.S. called parties to push "5" before their calls are connected." <u>See</u> Exhibit 1 ¶ 1(h). This admission alone demonstrates the absence of a genuine issue of material fact as to the unconstitutionality of the push "5" requirement for domestic prepaid calls. Accordingly, Plaintiffs respectfully request summary judgment on Count One of their First Amendment challenge to the push "5" requirement.

**The Push "5" Requirement Violates The APA**

In the alternative to their First Amendment challenge, Plaintiffs submit that the push "5" requirement is invalid because it was not promulgated with notice and comment. Docket Entry 26-2 ¶¶ 15-16. Plaintiffs offer two bases to support this contention: (1) the push "5" requirement is a susbstantive rule, or (2) the push "5" requirement is a new interpretation inconsistent with prior BOP interpretation and practice. 5 U.S.C. § 553(b)-(c); <u>Paralyzed Veterans of America v. D.C. Arena L.P.</u>, 117 F.3d 579, 586 (D.C. Cir. 1997) ("Once an agency has given its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking). In response, BOP asserts that the push "5" requirement is an interpretive rule. Docket Entry 39 at pg. 16-19. This label, however, is not dispositive. <u>U.S. Telecom Ass'n v. F.C.C.</u>, 400 F.3d 29, 35 (D.C. Cir. 2005)(stating that "fidelity to the rulemaking requirements of the APA bars courts from permitting agencies to avoid those requirements by calling a substantive regulatory change an interpretative rule")(citing <u>Appalachian</u>

Power Co. v. E.P.A., 208 F.3d 1015, 1024 (D.C. Cir. 2000)("An agency may not escape ... notice and comment requirements ... by labeling a major substantive legal addition to a rule a mere interpretation") and C.F. Communications Corp. v. FCC, 128 F.3d 735, 739 (D.C. Cir. 1997)(holding that FCC "may not bypass [the APA's notice-and-comment] procedure by rewriting its rules under the rubric of 'interpretation'")). Instead, "[t]o fall within that category, the rule must be interpreting something. It must 'derive a proposition from an existing document whose meaning compels or logically justifies the proposition. The substance of the derived proposition must flow fairly from the substance of the existing document.'" Central Texas Telephone Co-Op., Inc. v. F.C.C., 402 F.3d 205, 212 (D.C. Cir. 2005). If "despite an agency's claim, a rule cannot fairly be viewed as interpreting -- even incorrectly -- a statute or a regulation, the rule is not an interpretive rule exempt from notice-and-comment rulemaking." Id.

The push "5" requirement is a substantive rule. To begin with, the BOP has yet to identify what rule the push "5" requirement interprets. Accordingly, under Central Texas, the push "5" requirement is not an interpretive rule exempt from notice-and-comment. Id. at 212.

However, assuming the push "5" requirement were interpretative, the interpretation it provides is inconsistent with prior interpretations and practice, triggering notice-and-comment requirements. Paralyzed Veterans, at 586; Shell Offshore Inc. v. Babbitt, 238 F.3d 622, 630 (5th Cir. 2001)("If a new agency policy represents a significant departure from

long established and consistent _practice_ that substantially affects the regulated industry, the new policy is a new substantive rule and the agency is obliged, under the APA, to submit the change for notice and comment")(emphasis added). Prior to installation of the ITS II, there was no push "5" requirement for domestic or international calls over the ITS. Decl. of Sample ¶ 8. Instead, this restriction was implemented with the installation of ITS II. _Id._ This change in interpretation and practice substantially affects the Plaintiffs because they are no longer able to communicate telephonically with called parties who use an ATAS. Decl. of Sample ¶ 5; Decl. of Shaw. Additionally, the lack of telephone communication further strains already strained relationships. Decl. of Sample ¶ 14; Decl. of Shaw. Accordingly, the imposition of the push "5" requirement constitutes a change in interpretation and practice that should have been submitted for notice and comment before its adoption. _Alaska Professional Hunters Ass'n, Inc. v. F.A.A._, 177 F.3d 1030, 1034-36 (D.C. Cir. 1999)

(b) _Count Two_

Count Two of the Plaintiffs' complaint alleges that the cost per minute increases for long distance calls over the ITS II from .15¢ to $.23 are invalid because they were not promulgated in accordance with the APA. Docket Entry 26-2 at ¶ 17-18. For relief, Plaintiffs request that the increases be set-aside, and that BOP return all overpayment above and beyond the .15¢ rate. _Id._ at ¶ 20. In response, BOP contends that the changes to the telephone rates are interpretive rules not

8

subject to notice and comment rulemaking. Docket Entry 39 at 16-19.

First, like with the push "5" requirement, BOP does not point to a rule the cost per minute increases interpret. Accordingly, under Central Texas, the per minute increases are not exempt from notice and comment. Id. at 212.

However, even assuming the per minute increases were interpretative, they were still required to be submitted for notice and comment because they represent a significant departure from past agency interpretation and practice of only charging .15¢ a minute. Alaska Professional, at 1034. See Exhibit 1 ¶ (k) (admitting that the cost per minute increases have cost Plaintiffs $10,000 in overcharges); Decl. of Sample ¶ 11 (discussing costs associated with telephone rate increases); Decl. of Shaw. (same). Accordingly, the Court should set-aside the per minute increases above .15¢ a minute and order the return of all overpayment above the .15¢ rate to the Plaintiffs.

(c)   Count Three

Count Three of the Plaintiff's Second Amended Complaint alleges that the BOP's 300 and 400 minute per month calling restrictions should have been submitted for notice and comment before their adoption. Docket Entry 26-2 ¶¶ 21-24. Once again, BOP asserts that its minute allotments are interpretive rules not subject to notice and comment. Docket Entry 39 at 17-19.

First of all, the BOP does not identify which rule the 300 and 400 minute restriction interprets. Accordingly, under

Central Texas, the 300 and 400 minute restrictions are not interpretive rules exempt from notice and comment. Id. at 212.

However, assuming the 300 and 400 minute restrictions were interpretive, they should have still been submitted for notice and comment before their adoption because they represent a significant departure from the BOP's established interpretation and practice of permitting unlimited prepaid calling. Alaska Professional, at 1034-1036; Decl. of Sample ¶ 13 ("there was no minute restriction upon installation of ITS I and II (which covers about a seven year period). Rather, it was not until 2002 did the BOP implement its minute restriction."). This departure substantially affects the Plaintiffs, their family, friends, and other members of the public. See Decl. of Sample ¶ 14; Decl. of Shaw; Decl. of Orlando. Accordingly, Plaintiffs respectfully request the Court set-aside the 300 and 400 minute restrictions as violative of the APA.

(d) Count Four

Count Four of the Plaintiff's Second Amended Complaint alleges that the BOP's new commisary markup formula was promulgated without notice and comment in violation of the APA. Docket Entry 26-2 ¶¶ 25-29. In response, BOP again argues that its commissary markup formula is an interpretive rule not subject to notice and comment rulemaking. Docket Entry 39 at 17-19.

For over 20 years, the selling price for items at BOP commissaries was determined by taking the cost price of an item, dividing it by .08, then rounding up to the next nickel. (e.g., 5 / .08 = 6.25 - rounded up to the next nickel, the

selling price is $6.30). Decl. of Sample ¶ 15. Recently,
though, the BOP changed its markup formula. Id. Now, the
selling price for items is determined by multiplying the cost
price of an item by 1.3 (e.g., 5 x 1.3 = $6.50). Id. The
BOP's change in markup formula has caused the selling price to
increase approximately 5% for all general items sold in the
BOP's commissaries, excluding stamps, relgious items, and
Special Purpose Orders. Id. at ¶ 26.

This change is a significant departure from 20 years of
past agency practice and interpretation. Moreover, said change
substantially affects the Plaintiff's pocket book in that it
costs them hundreds, if not thousands, of extra dollars
annually. Decl. of Sample ¶ 16; Exhibit 1 ¶ (n) (admitting
that the change in markup formula has cost the Plaintiffs
$10,000). Accordingly, the new markup formula should be set-
aside as violative of the APA, and the Plaintiffs reimbursed
all monies payed above the prior markup formula.

(e)    Count Five

Count Five of the Plaintiff's complaint alleges that the
elimination of the BOP's educational transfers program violates
the APA's notice and comment requirements. Docket Entry 26-2 ¶
30-31. In response, BOP argues that the APA does not apply to
the discontinuation of its educational transfers program.
Docket Entry 39 at 19.

For over 20 years the BOP permitted educational transfers
to other institutions. Decl. of Sample ¶ 17. Such transfers
were permitted in order to give inmates an opportunity to
participate in educational programs that are not available at

11

their current place of incarceration.  Id.  The elimination of
this program is a significant departure from the BOP's
established and longstanding interpretation/practice of
permitting such transfers.  Said change substantially affects
Plaintiff Sample because he is unable to take a culinary class
that would provide him with additional job skills upon release
from prison.  Decl. of Sample ¶ 18.

Plaintiff Sample recognizes BOP's argument that decisions
regarding transfers are not subject to the APA.  See Docket
Entry 39 at 19 citing Palomino v. Federal Bureau of Prisons,
408 F.Supp.2d 282, 290-291 (S.D.Tex. 2005).  However,
rulemaking challenges are cognizable regardless of the amount
of discretion afforded the BOP.  See Martin v. Gerlinski, 133
F.3d 1076, 1079 (8th Cir. 1998).  Furthermore, unlike the
discontinuation of the boot camp program in Palomino, the BOP
does not contend in this case that the elimination of the
educational transfers program was the result of a
discontinuation of a discretionary allocation of unrestricted
funds from a lump-sum appropriation.  Palomino, at 292.
Accordingly, the change should have been submitted for notice
and comment before its adoption.  Alaska Professional, at 1034-
36.

(f)    Count Six

Count Six of the Plaintiff's Second Amended Complaint
alleges that the BOP failed to comply with FOIA, 5 U.S.C. §
552(a)(3)(B), when it refused to provide Sample with a paper
copy of his Pre-Sentence Investigation Report ("PSI").  Docket
Entry 26-2 at ¶ 32.  In response, BOP argues that (1) Sample

lacks standing to challenge the refusal and (2) BOP is not required to provide copies of PSI's to inmates due to security concerns. Docket Entry 39 at 19-22.

The outcome of this count is controlled by the D.C. Circuit's recent decision in Sample v. Bureau of Prisons, 466 F.3d 1086 (D.C. Cir. 2006). In Sample, the undersigned sought various records from the BOP in electronic format. Id. at 1087. The BOP refused, however, to provide the records in electronic form based on various security concerns. Id. The D.C. Circuit reversed. In reversing, the D.C. Circuit rejected the BOP's contention that the requested records were not "readily reproducible" in electronic form because Sample could not receive them in that format due to BOP security regulations. Id. at 1088 (emphasis in original). According to the Court, the "readily reproducible" inquiry under 5 U.S.C. § 552(a)(3)(B) "simply refers to an agency's technical capability to create the records in electronic format. No case construing the language focuses on the characteristics of the requester." Id. Further, the Court held that its decision in Martinez v. Bureau of Prisons, 444 F.3d 620 (D.C. Cir. 2006) did not affect FOIA's requirement that agencies honor a requesters' specified form or format. Id. at 1088-89. Instead, "Martinez was limited to whether FOIA required BOP to permit an inmate to possess records in his cell." Id.

In the instant case, Sample does not seek to possess a copy of his PSI in his cell. Rather, he wants BOP to honor his FOIA request for a paper copy of his PSI. That means, BOP, as FOIA respondent, must produce his PSI in paper form. Sample,

13

at 1089. It does not mean, however, that BOP, as custodian of inmates, must also provide him with access or possession. Id. Instead, "questions of access or possession are not before this Court." Id. This is because "BOP's role as custodian in receipt of ... records intended for an inmate ... only comes into play after the FOIA request has been completed." Id. (emphasis added).[1] Finally, because the BOP has yet to honor Sample's FOIA request, Sample has standing. Brandon v. Eckard, 569 F.2d 683, 685-86 (D.C. Cir. 1977). Accordingly, the Court should order the BOP to produce a paper copy of his PSI as unambiguously required by the statute.

(g)    Count Seven

Count Seven of the Plaintiff's Second Amended Complaint alleges that BOP failed to respond to Sample's request for a copy of inmate Painter's PSI. Docket Entry 26-2 ¶ 34-36. In response, BOP contends that (1) Sample's request was never properly received because it was not accompanied by an authorization from Painter allowing BOP to release records about him to Sample, (2) even if Sample's request were properly received, Painter's PSI is not subject to disclosure because it is under seal, and (3) Sample lacks standing to bring this claim.

First of all, the BOP has adduced no evidence indicating

_____

[1]    Further, Sample rejects the BOP's attempts to force him to use other mechanisms to review his PSI. See Docket Entry 39 at 20 n.9. These procedures are not a substitute for the BOP's compliance with Sample's request for information under FOIA.

that Sample's request was not accompanied by proper authorization from Painter. Instead, BOP assumes that Sample's request was returned because it did not include the proper authorization. See Docket Entry 39 at 22 ("BOP is unable to determine with specificity which requirement the Plaintiff failed to satisfy"). This assumption, however, is countered by real evidence -- the declaration of Brandon Sample -- which states that, "On March 8, 2004, I submitted a FOIA request to the BOP for a copy of inmate Richard Painter's PSI ... Accompanied with the request was a "Certification of Identity" form executed by Painter authorizing me to obtain any records about him from the Department of Justice." Decl. of Sample ¶ 20. Moreover, Sample's declaration is corroborated by the declaration of Richard Painter, which indicates that Painter executed proper authorization for Sample to obtain records about him from the Department of Justice. See Decl. of Painter. Accordingly, the Court should reject the BOP's argument that Sample's request was never properly received.

Next, BOP relies on an order entered by Painter's sentencing judge to preclude production of Painter's PSI to Sample. Under certain circumstances, documents which a court has enjoined from disclosure are properly withheld under FOIA. GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 386 (1980). However, the order prohibiting disclosure entered in Painter's criminal case is not of the type entitled to respect under GTE Sylvania. In Lykins v. United States Dept. of Justice, the D.C. Circuit had the occasion to consider whether

an "order," prohibiting the release of PSIs by the Parole
Commission in response to FOIA requests was the equivalent to
the kind of injunction entered in GTE Sylvania. Lykins, 725
F.2d 1455, 1460-62 (D.C. Cir. 1984). The D.C. Circuit answered
this question in the negative, holding that both the "policy"
and "order" of the Virginia District Court did not have the
same legal effect as the injunctions entered in GTE Sylvania
because they were never entered as part of a concrete case or
controversy. Id. at 1461 & n.7 ("Whatever may be the power of
the Virginia District Court to order its own business on the
basis of 'policies' of this character, that court cannot by
articulating its desires on its own motion determine the rights
of third parties not before it and over who it has no
jurisdiction"). Likewise, in the instant case, the order by
Painter's sentencing court prohibiting disclosure of his PSI,
is not of the same legal effect as the injunction entered in
GTE Sylvania. Lykins, at 1461. Thus, the "order" by Painter's
sentencing court does not "override [Sample's] right under FOIA
to see the report." Id. (alteration added).

Finally, BOP's contention that Sample lacks standing to
bring this claim is utterly without merit. Brandon, 569 F.2d
at 687-88.[2]

---

[2]    As with Count Six, the issue of access or possession of
Painter's PSI is not before the Court. Instead, these matters
only come into play after BOP, as FOIA respondent, satisfies
Sample's request for records.

(h)    Count Eight

Count Eight of the Plaintiff's Second Amended Complaint alleges that the BOP is noncompliance with the Paperwork Reduction Act, 44 U.S.C. §§ 3501 et seq. Docket Entry 26-2 ¶ 37-38. In particular, Plaintiff Sample alleges that the BOP impermissibly engages in "collections of information" without regard to the prior approval procedures outlined in section 3507 of the Act. In response, BOP contends that Sample "has failed to allege with specificity how the BOP has failed to comply with the PRA." Docket Entry 39 at 35.

Under the PRA, "an agency shall not conduct or sponsor the collection of information unless in advance of the adoption or revision of the collection of information" --

(1) the agency has --

(A) conducted the review established under section 3506(c)(1);

(B) evaluated the public comments received under section 3506(c)(2);

(C) submitted to the Director the certification required under section 3506(c)(3), the proposed collection of information, copies of pertinent statutory authority, regulations, and other related materials as the Director may specify; and

(D) published a notice in the Federal Register --

(i) stating that the agency has made such submission; and

(ii) setting forth --

(I) a title for the collection of information;

(II) a summary of the collection of information;

(III) a brief description of the need for the information and the proposed use of the information;

(IV) a description of the likely respondents and proposed frequency of response to the collection of information;

(V) an estimate of the burden that shall result from the collection of information; and

(VI) notice that comments may be submitted to the agency and Director;

(2) the Director has approved the collection of information or approval has been inferred, under the provisions of this section; and

(3) the agency has obtained from the Director a control number to be displayed upon the collection of information.

44 U.S.C. § 3507(a). The term "collection of information" under the PRA means:

(A) the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for either --

(i) answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons, other than agencies, instrumentalities, or employees of the the United States; or

(ii) answers to questions imposed to agencies, instrumentalities, or employees of the United States which are to be used for general statistical purposes.

44 U.S.C. § 3502(3).

Despite its detailed pre-approval procedures, BOP conducts various collections of information without regard to the PRA. For instance, BOP during "Institution Character Profile," a general investigation into the running of the prison, obtains information from ten or more inmates using a survey form.

Decl. of Sample ¶ 22. This form has not been approved in accordance with the procedures outlined in § 3507. Other impermissible collections of information include, but are not limited to, (1) inmate visiting forms (2) intake screenings; (3) initial classification and program reviews; (4) religious diet questionnaires; (5) inmate commissary receipts; and (6) forms contract visitors are required to complete. Accordingly, Plaintiff Sample respectfully requests the Court issue a declaratory judgment stating that the BOP is subject to the PRA, and that it is noncompliance with its collection of information approval procedures.[3]

    (i)  <u>Count Nine & Ten</u>

Count Nine of the Plaintiff's Second Amended complaint has been settled by the parties. Plaintiff Sample does not oppose defendant Department of State's motion for summary judgment on Count Ten.

    (j)  <u>Count Eleven</u>

Count Eleven of the Plaintiff's Second Amended Complaint challenges the BOP's failure to disclose various records under

---

[3] BOP's argument that Sample failed to allege with specificity BOP's noncompliance with the PRA is inconsistent with Fed.R.Civ.P.8(a)(2). Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, _____ U.S. _____ (2007). Count Eight of the Plaintiff's Second Amended Complaint meets that standard. Docket Entry 26-2 at ¶¶ 37-38 (alleging that "BOP on a daily basis engages in various 'collections of information'" without regard to the pre-approval procedures of the PRA).

FOIA. Docket Entry 26-2 at ¶¶ 44-46. In response, BOP contends that all requested records have since been disclosed, and therefore this count is moot. Docket Entry 39 at 27-28.

The BOP has disclosed most, but not all, of the requested records listed in Count Eleven. Specifically, BOP has failed to disclose records related to the provisions for the Passover ceremonial meal at FCI Beaumont (Low) during 2004. These records should reflect the purchase of food items from a Kosher Cajun Deli in Louisiana. If BOP locates and discloses these records, this count will be moot. However, until such time BOP either produces these records, or provides evidence that they have searched for same, Sample cannot agree to dismissal of Count Eleven based on mootness.

    (k) Count Twelve & Thirteen

Counts 12 and 13 of the Plaintiff's Second Amended Complaint addresses the BOP's failure to disclose various records in electronic format. Docket Entry 26-2 at ¶¶ 47-50. In response, BOP indicates that it "is in the process of processing, on an expedited basis, Plaintiff's aggregated requests, in electronic format, and is waiving all associated fees." Docket Entry 39 at 32. While Sample has yet to receive these records, Sample agrees that upon their release, Counts 12 and 13 will be moot.

    (l) Count Fourteen

Count 14 of the Plaintiff's Second Amended Complaint alleges that the BOP is noncompliance with two aspects of FOIA: (1) BOP has failed to make available through computer telecommunications means certain records created on or after

November 1, 1996 and (2) BOP fails to undertake "reasonable efforts" to maintain its records in electronic form. In response, BOP argues that Sample has no cause of action under FOIA because he does not request the release of any records. Docket Entry 39 at 34-35.

As part of the 1996 Electronic Freedom of Information Act amendments ("e-amendments"), Congress directed that "each agency shall make" the following records available by computer telecommunications:

> (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
>
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and
>
> (C) administrative staff manuals and instructions to staff that affect a member of the public.

5 U.S.C. § 552(a)(2)(A)-(C). Additionally, Congress directed that:

> [i]n making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

5 U.S.C. § 552(a)(3)(B). BOP, however, does not comply with either of these provisions. Before addressing why this is so, we must first dispense with BOP's threshold argument that Sample has no cause of action to enforce these provisions of FOIA.

According to the BOP, Sample cannot challenge its failure to post documents on its website or to maintain records in a

particular form because Sample does not seek the production of records. Docket Entry 39 at 34-35. At first blush, there appears to be some support for the BOP's position. For instance, in Kennecott Utah Copper v. U.S. Dept. of Interior, the D.C. Circuit held that FOIA's relief provisions do not permit a court to order the publication of records. Kennecott, 88 F.3d 1191, 1203 (D.C. Cir. 1996). In so holding, though, the court reserved judgment on whether other sources of law, such as the APA, 5 U.S.C. § 706(1), and the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361, authorize additional remedial orders in FOIA cases. Kennecott, at 1203; Tax Analysts v. I.R.S., 117 F.3d 607, 610 n.4 (D.C. Cir. 1997)(noting open question on the issue). The time has come, however, to finally resolve the question. As set forth below, the APA permits additional remedial orders for violations of FOIA that FOIA itself does not permit.[4]

The advent of the use of the APA for enforcing provisions of FOIA that its remedial provisions do not cover is nothing new. For example, courts have long permitted reverse-FOIA actions predicated on the APA, while others have used the APA to rectify an agency's failure to index its major information systems. McDonnell Douglas Corp. v. NASA, 180 F.3d 303, 307 (D.C. Cir. 1999)(analyzing reverse-FOIA action under APA);

---

[4]    Because the APA provides an adequate remedy for Sample's FOIA claims, it is unnecessary to address whether the mandamus provision of 28 U.S.C. § 1361 does so as well.

Reliance Electronic Co. v. Consumer Prod. Safety Comm'n, 924 F.2d 274, 277 (D.C. Cir. 1991)(same); Public Citizen, Inc. v. Lew, 127 F.Supp.2d 1, 9 (D.D.C. 2000)(permitting challenge to agency's failure to index major information systems holding that, "[o]ther FOIA actions outside the scope of [FOIA's remedial provisions] ... are reviewed under the standards set forth in § 706 of the APA")(alteration added). There is simply no principled distinction for taking a different course here. Accordingly, the Court should hold that the APA is available to enforce provisions of FOIA that FOIA's remedial provisions do not cover.

Under the APA, courts are empowered to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Here, the BOP has both "unlawfully withheld" and "unreasonably delayed" in complying with 5 U.S.C. §§ 552(a)(2)(A)-(C) & (a)(3)(B).

For over 10 years the BOP has failed to make available through computer telecommunication means[5] the following records as required by FOIA: (1) administrative remedy responses from the BOP's various institutions, Regional Offices, and Central Office; (2) Disciplinary Hearing Officer reports; (3) Unit Discipline Committe Reports; (4) "program review" reports; (5) Segregation Review Official reports; (6) written decisions made by the Hearing Administrator regarding an inmate's placement in

_____

[5]    "Computer telecommuncations" according to Department of Justice regulations means the posting of records "at the Department's World Wide Web Site ... through the use of the Department's 'Freedom of Information Act Home Page.'" 28 C.F.R. § 16.2(c).

a control unit as described in 28 C.F.R. § 541.44; (7) written decisions by the Executive Panel to either accept or reject a recommendation made by the Hearing Administrator concerning an inmate's placement in a control unit; (8) decisions to accept, reject, compromise, or settle a claim under the Federal Tort Claims Act; (9) decisions made by the Utilization Review Committee, whether at the institution, Regional, or Central Office level regarding an inmate's request for compassionate release under the regulations set forth at 28 C.F.R. §§ 571.60 - 571.64; (11) decisions to grant or deny a request for information under Freedom of Information Act; (12) decisions to grant or deny an inmate's request for compensation under the Inmate Accident Compensation Program; and (13) all memorandums and other internal documents that either interpret or implement Bureau policy including, but not limited to, Admission and Orientation handbooks. Docket Entry 26-2 ¶ 52.

The records described in categories one through twelve fall under the heading of either "final opinions" or "orders" made in the adjudication of cases, 5 U.S.C. § 552(a)(2)(A), "interpretations that have adopted by the agency," 5 U.S.C. § 552(a)(2)(B), or "instructions to staff that affect a member of the public," 5 U.S.C. § 552(a)(2)(C). NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 158 (1975) ("[t]he decision to dismiss a charge is a decision in a 'case' and constitutes an 'adjudication': and 'adjudication' is defined under the Administrative Procedures Act ... as 'agency process for the formulation of an order,' 5 U.S.C. § 551(7); an 'order' is defined as 'the whole or a part of a final disposition, whether

affirmative or negative ... of an agency in a matter,' 5 U.S.C. § 551(6)' and the dismissal of a charge ... is a 'final disposition'"); <u>Rockwell Intern. Corp. v. U.S. Dept. of Justice</u>, 235 F.3d 598, 602 (D.C. Cir. 2001)("action taken by the responsible decisionmaker in an agency's decision-making process which has the practical effect of disposing of a matter before the agency is 'final' for purposes of FOIA. If such action is accompanied by a written explanation of the decisionmaker's reasoning, that explanation constitutes a 'final opinion' and must be disclosed"); <u>Watts v. S.E.C.</u>, 482 F.3d 501, 506 (D.C. Cir. 2007)(APA broadly includes both "formal and informal adjudications").[6] The last category of records are either "interpretations which have been adopted by the agency and are not published in the Federal Register," 5 U.S.C. § 552(a)(2)(B), or "instructions to staff that affect a member of the public," 5 U.S.C. § 552(a)(2)(C). Accordingly, the Court should order the BOP to make available the foregoing records from November 1, 1996, until present via computer telecommuncation means.

---

[6]    Some of the records listed can be appealed by the inmate. For instance, grievance responses can be appealed to the Regional Director, and responses from the Regional Director can be appealed to the Central Office. <u>See</u> 28 C.F.R. §§ 542.14-15. However, the fact that the inmate may appeal certain decisions does not affect the finality of the decisionmaker's response for the purpose of FOIA. <u>Sears</u>, 421 U.S. at 158 n.25 ("[W]e note that the possibility that the decision reached in an Advice Memorandum may be overturned in an Appeals Memorandum, as happened in the case involving Sears ... does not affect the finality for our purposes. The decision reached in the Advice Memorandum, in the absence of an appeal filed by the charging party, has real operative effect, as much as does every order issued by a United States district court which might, if appealed, be overturned by a United States court of appeals").

Finally, we have BOP's failure to maintain its records in electronic forms or formats as required by 5 U.S.C. § 552(a)(3)(B). Approximately 99 percent of all documents generated by the Bureau are created on a computer. Decl. of Sample ¶ 25. Instead of maintaining an electronic copy of these records, though, the BOP destroys the electronic copy after its reduced to paper form. Decl. of Sample ¶ 25. This practice does not constitute "reasonable efforts" to maintain its records in electronic form. All of the BOP's records that are created on a computer could be easily stored on a hard drive or disk, and destroyed in accordance with existing retention schedules. Decl. of Sample ¶ 26. Accordingly, Sample respectfully requests the Court order the BOP to maintain, in accordance with existing retention schedules, an electronic copy of each record created by the BOP on a computer. Further, Sample respectfully requests the Court order the BOP to undertake "reasonable efforts" to maintain other records that are not created on a computer in electronic form.

**Conclusion**

Wherefore, Plaintiffs respectfully request that their motion for summary judgment be granted.

Respectfully submitted,


Brandon Sample #33949-037
Federal Prison Camp
2680 Highway 301 South
Jesup, Georgia 31599


Bernard Shaw #59469-004
Federal Satellite Low
2680 Highway 301 South
Jesup, Georgia 31599

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, et al.,          )

v.                               )        No. 06-715 (PLF)

FEDERAL BUREAU OF PRISONS, et al.    )

### DECLARATION OF BRANDON SAMPLE

I the undersigned, Brandon Sample, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

**Request For Admissions**

1.    Attached as Exhibit 1 is a true and correct copy of the Plaintiff's Rule 36 Request for Admissions served August 10, 2006, on the Bureau of Prisons ("BOP") via certified mail, return receipt, number 7005-2570-0001-7392-9346.  The Request for Admissions were signed for by a "J. Dixon" on August 15, 2007.  See Exhibit 2.

**Count One**

2.    The  BOP  allows  inmates  to  make  domestic  and international telephone calls to approved numbers over its Inmate Telephone System II ("ITS II"), now renamed TRUFONE. All calls over the ITS II are subject to monitoring and are recorded.  With the exception of 1-900 and 1-800 numbers, there are, ordinarily, no restrictions on what numbers may be placed on an inmate's approved telephone list.  Calls over the ITS II are limited to 15 minutes in duration and may be prepaid by the inmate.

3.    When  a  prepaid  domestic  U.S.  call  is  placed  by  an
inmate,  the  following  voice  prompt  is  announced  once  the
called party answers:

This call is from a federal prison.  This is a prepaid call.
You will not be charged for this call.  This call is from
(insert name of inmate calling).  Hang up to decline the call
or to accept the call dial "5" now.  To block future prepaid
calls from this person, dial "77."

The inmate and the called party will not be connected unless
the called party pushes "5."  Once a call is accepted, an
announcement stating "this call is from a federal prison" is
intermittently played during the call.

4.    International  calls  over  the  ITS  II  are  treated
differently than prepaid domestic U.S. calls.  For instance,
all international calls are direct dial.  "Direct dial" means
the call rings straight through to the called party without
any voice prompt requiring the called party to push "5"
before  the  call  is  connected.   With  the  exception  of
different calling rates, all other aspects of international
calling are identical to domestic U.S. prepaid calls over the
ITS II.

5.    I have attempted to make domestic U.S. prepaid calls
over the ITS II to clerks of court, businesses, friends,
family members, and other called parties who utilize an
automated telephone answering system ("ATAS").  ATAS' are,
however, incapable of pushing "5" to accept my calls.  As a
result,  I  have  been  deprived  of  the  opportunity  to
communicate telephonically with domestic U.S. prepaid called
parties who use an ATAS.

6.   The push "5" requirement for domestic prepaid calls is not supported by a legitimate penological interest.   In making this assessment, there must first be "a valid, rational connection between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it."   Shaw v. Murphy, 532 U.S. 223, 229-30 (2001). If the regulation does not satisfy this threshold determination, the "regulation fails, irrespective of whether the other [Turner] factors [may] tilt in its favor."   Id. at 229-30 (alterations added).

7.   The push "5" requirement is arbitrary and irrational because there is no comparable requirement for international calls.   To better understand why this is so, a little history behind the push "5" requirement is necessary.

8.   Prior to the installation of the ITS II, there was no push "5" requirement for domestic or international calls over the ITS system.   Instead, all prepaid calls placed by inmates rung straight through.   Upon implementation of the ITS II, the push "5" requirement was applied to both domestic and international prepaid calls.   However, after it was determined that the push "5" requirement was causing problems with the connection of international calls, the BOP, in either 2000 or 2001,  eliminated the push "5" requirement for international calls.

9.   I recently placed calls over the ITS II to numbers in Iraq, North Korea, and the United Arab Emirates.   There is no push "5" requirement for such calls.   It does not make sense that I am permitted to make direct dial calls to countries

3

that are centers of terrorist activity and/or are apart of the "Axis of Evil," but I cannot make similar calls domestically.

10. The imposition of the push "5" requirement for domestic prepaid calls over the ITS II is a significant departure from well established agency interpretation and practice. As discussed above, there no push "5" requirement for calls over the ITS I. ITS I was in place over five years before it was replaced with ITS II. During this time, no problems were caused by the absence of the push "5" requirement. The imposition of the push "5" requirement with ITS II was unexpected and continues, to this day, to impose hardship on the undersigned in communicating with domestic called parties.

**Count Two**

11. Over the past few years, the BOP has increased the cost per minute for long distance domestic prepaid calls over the ITS II from .15¢ a minute, to .17¢ a minute, to .20¢ a minute, and to .23¢ a minute, the now current rate. The .15¢ rate, along with the subsequent changes to that rate, have significantly affected the undersigned' pocket book. For instance, the .8¢ increase in the long distance calling rate from .15¢ a minute has cost me at least $288 more during certain years. While $288 may not seem like much money, for a prisoner who makes anywhere from .12¢ to .40¢ an hour, $288 is a substantial sum.

4

**Count Three**

12.  Upon installation of ITS I & II, inmates were allowed to make unlimited prepaid calls. Recently, though, the BOP restricted inmates to 300 calling minutes per month. The only exception to this rule is during the months of November and December when inmates are given 400 minutes instead of 300.

13.  The 300 and 400 minute per month calling restrictions represent a significant departure from prior BOP interpretation and practice. As indicated above, there was no minute restriction upon installation of ITS I & II (which covers about a seven year period). Rather, it was not until 2002 did the BOP implement its minute restriction.

14.  The 300 and 400 minute restriction substantially affects me in that it inhibits my ability to communicate with numerous friends and family members. For instance, almost all of my phone time is dedicated to speaking with my parents. The remaining few minutes I have each month are used to call my attorney or a friend. I have a lot of other friends that I used to keep in contact with when there was no minute restriction, but I have since lost contact with them due to the minute restriction. I realize that I have the option of writing these individuals; however, my friends will not write back. Thus, if I cannot call them, there is no way to keep in contact.

## Count Four

15. For over 20 years the selling price for items at BOP commissaries was determined by taking the cost price of an item, dividing it by .08, then rounding up to the next nickel (e.g., 5 / .08 = 6.25 -- rounded to the next nickel, the selling price if $6.30). However, in either 2001 or 2002, the BOP changed its markup formula. Now, the selling price for items is determined by multiplying the cost price of an item by 1.3 (e.g., 5 x 1.3 = $6.50). The requirement to round up to the next nickel continues under the new markup formula.

16. The BOP's new markup formula represents a significant departure from past agency interpretation and practice. Moreover, this change has substantially affected my pocket book in that it has cost me hundreds, if not thousands, of additional dollars.

## Count Five

17. For over 20 years the BOP permitted inmates to apply for and receive educational transfers to other BOP institutions. Such transfers were permitted in order to give inmates an opportunity to participate in educational programs that are not available at their current place of incarceration.

18. The BOP's prohibition on educational transfers represents a significant departure from the BOP's established and longstanding practice of permitting such transfers. Said change substantially affects me because I am unable to take a culinary class that would provide me with additional job skills upon release from prison.

## Count Six

19.  At the end of 2002, I submitted a Freedom of Information Act ("FOIA") request to the BOP for a copy of my Pre-Sentence Investigation Report ("PSI").  The request was denied, however, on the basis that inmates are no longer permitted to possess copies of their PSIs.

## Count Seven

20.  On March 8, 2004, I submitted a FOIA request to the BOP for a copy of inmate Richard Painter's PSI.  See Exhibit 3. Accompanied with the request was a "Certification of Identity" form executed by Painter authorizing me to obtain any records about him from the Department of Justice.  See Exhibit 4.  I never received a response from the BOP FOIA office regarding this request.

21.  On August 24, 2004, I submitted a Request for Administrative Remedy to the Warden at FCI Beaumont regarding the lack of a response to my FOIA request for a copy of Painter's PSI.  See Exhibit 5.  In response, the Warden indicated that the BOP FOIA office never received such request. I appealed the Warden's response to the Regional Director and the National Inmate Appeals Administrator, each of which denied my request on the same basis.  See Exhibits 6-7.

## Count Eight

22.  The Paperwork Reducation Act ("PRA"), requires federal agencies to follow certain procedures before conducting or sponsoring the "collection of information."  44 U.S.C. §

3507(a)(1)-(3).  Unfortunately, the BOP does not follow any of these procedures.  Instead, the BOP conducts various "collections of information" without regard to the PRA.  For instance, the BOP during "Institution Character Profile," a general investigation into the running of a prison, obtains information from inmates using a survey form.  This form, however, has not been approved in accordance with procedures outlined in § 3507.  Other impermissible "collections of information" include, but are not limited to, (1) inmate visiting forms; (2) intake screenings; (3) initial classification and program reviews; (4) religious diet questionnaires; and (5) inmate commissary receipts (given they are a recordkeeping requirement per Program Statement 5580.07, Personal Property, Inmate).

**Count Eleven**

23.  On March 20, 2006, I submitted a FOIA request to the BOP for copies of all records pertaining to the provisions for the Passover ceremonial meal at FCI Beaumont (Low) in 2004.  The provisions for this meal were provided by Kosher Cajun Deli in Metarie, Louisiana.  To date, I have yet to receive any responsive records to this request.

**Count Fourteen**

24.  FOIA requires federal agencies to "make reasonable efforts to maintain its records in forms or formats that are reproducible for the purposes of this section."  5 U.S.C. § 552(a)(3)(B).  Unsuprisingly, the BOP does not comply with this provision of FOIA.

25.  Approximately 99 percent of all documents generated by the Bureau are created on a computer.  Instead of maintaining an electronic copy of these records, though, the BOP destroys the electronic copy after the record is reduced to paper form.  This occurs with a variety of documents including, but not limited to, inmate grievances; Disciplinary Hearing Officer reports; Unit Discipline Committee decisions; incident reports; FOIA response/ackowledgment letters; program review/initial classification reports; decisions to accept, reject, or compromise a claim under the Federal Tort Claims Act; decisions by the Utilization Review Committee at the institution, Regional, or Central Office level; decisions to grant or deny an inmate's request for compensation under the Inmate Accident Compensation Program; minutes from meetings; responses to Inmate Request to Staff Member; Admission & Orientation Handbooks; and memorandums and other internal documents that interpret or implement BOP policy.

26.  The BOP's failure to maintain its records created on a computer in electronic form is unreasonable.  All of these records could be easily stored on a hard drive or disk, and destroyed in accordance with retention schedules.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  28 U.S.C. § 1746.

Signed this 23rd day of July, 2007.


BRANDON SAMPLE

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

BRANDON C. SAMPLE, et al.,          §

v.                                  §          Civil No. 06-715(PLF)

FEDERAL BUREAU OF PRISONS.          §

## RULE 36 REQUEST FOR ADMISSIONS

Plaintiffs Brandon Sample and Bernard Shaw ("the plaintiffs") request defendant Federal Bureau of Prisons ("BOP"), within 30 days after service of this request, make the following admissions for the purpose of this action only and subject to all pertinent objections to admissibility which may be interposed at the trial:

1.    That each of the following statements is true.

(a)    The plainitffs have exhausted their available administrative remedies for each allegation presented in the Original Complaint. This was accomplished the plaintiffs by filing BP-9s, BP-10s, and BP-11s through the BOP's Administrative Remedy Program.

(b)    The actions complained about in Counts One through Four of the plaintiff's original complaint occurred on or after May 1, 2002.

(c)    The BOP allows inmates to make domestic and international telephone calls to approved numbers over its Inmate Telephone System ("ITS," which refers to ITS I, II, or III as appropriate).

Exhibit 1

(d)    When a prepaid domestic U.S. call is placed by an inmate, the called party will not be connected with the inmate unless they push "5."

(e)    Prepaid international calls over the ITS system are treated differently than prepaid domestic U.S. calls. Specifically, all international calls are direct dial. "Direct dial" means the call rings straight through to the called party without any voice prompt announcing that the call is from a federal prison, or requirement that that the called party push "5" before the call is connected.

(f)    International calls over the ITS system pose a greater risk to the security of BOP institutions than do domestic U.S. prepaid calls.

(g)    The plaintiffs have attempted to make domestic U.S. prepaid calls over the ITS system to called parties who utilize an Automated Telephone Answering System ("ATAS"), but been unsuccesful because such systems are incapable of pushing "5."

(h)    The push "5" requirement, or any other similar restriction on domestic U.S. prepaid calls, violates the plaintiffs First Amendment rights because there is no legitimate penological reason in requiring prepaid domestic U.S. called parties to push "5" before their calls are connected.

(i)    Moreover, upon implementation of the ITS system, there was no push "5" requirement for domestic U.S. prepaid calls.  Thus, the subsequent creation and implementation of

the push "5" requirement is not only arbitrary and capricious, but, also, is a significant departure from established and consistent BOP practice such that it was required to be promulgated with notice-and-comment rulemaking before its adoption.

(j)    The cost per minute increases described in Count Two of the plaintiff's Original Complaint were substantive rules first requiring notice-and-comment rulemaking before their adoption.

(k)    The plaintiff's are entitled to $10,000 from the BOP as a result of overcharges from the unlawful cost per minute increases described in Count Two of the plaintiff's Original Complaint.

(l)    For the reasons set forth in Count Three of the plaintiff's Original Complaint, the BOP's 300 and 400 minute per month calling restrictions are invalid because they were not submitted for notice-and-comment rulemaking before their adoption.

(m)    For the reasons set forth in Count Four of the plaintiff's Original Complaint, the BOP's new commissary markup formula is invalid because it was not submitted for notice-and-comment rulemaking before its adoption.

(n)    As a result of the unlawful markup formula described in Court Four of the plaintiff's Original Complaint, the BOP is obligated to return $10,000 to the plaintiffs.

(o)     On March 8, 2004, the BOP received a FOIA request from plaintiff Sample requesting a copy of inmate Richard Painter's PSI.   Included with the request was an authorization executed by Painter permitting plaintiff Sample to obtain records about him from any component of the Department of Justice.   The BOP did not respond to this request.

(p)     There is no FOIA exemption or other lawful reason for denying plaintiff Sample access to inspect a copy of inmate Painter's PSI.

Signed: _____
        BRANDON SAMPLE

_____
BERNARD SHAW

## CERTIFICATE OF SERVICE

I declare under penalty of perjury that a true and correct copy of the foregoing was provided to prison officials this 10th day of August, 2006, first-class postage affixed, for delivery, via certified mail return receipt requested # 7005-2570-0001-7392-9346, to the following:

Federal Bureau of Prisons
320 First St. N.W.
Washington, DC 20534

_____
BRANDON SAMPLE

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X J. Dixon ☐ Agent ☐ Addressee<br>B. Received by (*Printed Name*)   C. Date of Delivery 8/15/06 |
| 1. Article Addressed to:<br><br>Federal Bureau of Prisons<br>320 First St, NW<br>Washington, DC 20534<br><br>Re: 06-715 (PLF)<br>Request For Admissions | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☐ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)   ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7005 2570 0001 7392 9346 |

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

Exhibit 2

March 8, 2004

Federal Bureau of Prisons
FOIA/PA Section
320 First St. N.W.
Washington, D.C. 20534

Re: Inspection of inmate Richard Painter's PSR

To whom it may concern:

In accordance with the provisions of the Freedom of Information Act (FOIA),
I request that the BOP make available for inspection a copy of the following
record.

1.   The Presentence Investigation Report of inmate Richard Painter #02473-079.
     This record should be located within his Inmate Central File.

I do not want a copy of inmate Painter's PSR, I only want to inspect it.  Enclosed
is a signed authorization by Mr. Painter authorizing the Department of Justice
to release any and all records about him to me.  I agree to pay all reasonable
fees up to and including $25.00 in the processing of this request.


Yours truly,

Brandon Sample #33949-037
P.O. BOX 26020
Beaumont, TX 77720-6020

Exhibit 3

U.S. Department of Justice

# Certification of Identity



Privacy Act Statement. In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]  Richard Stuart Painter

Current Address  P.O. BOX 26020 Beaumont, TX 77720-6020

Date of Birth  8/29/60

Place of Birth  Corpus Christi, Texas

Social Security Number [2]  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

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [3]  Richard S. Painter          Date  3-8-04

---

## Optional: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. § 552b(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Brandon Creighton Sample

(Print or Type Name)

---

[1] Name of individual who is the subject of the record sought.
[2] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[3] Signature of individual who is the subject of the record sought.

Exhibit 4

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Sample, Brandon**    **33949-037**    **VA**    **BML**

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST** Attached are copies of two FOIA requests submitted to the BOP's FOIA office. (one dated 3/8/04 and the other 3/17/04) Attachments A+B. I have never received a response from the BOP FOIA office concerning either request. I have written to the BOP FOIA office twice since initial submission of the requests and received no response. The provisions of the FOIA require the BOP to acknowledge my requests within 20 days of receipt of the request. Because the BOP is way outside the 20 day (working days) time limit to respond, I request that the BOP FOIA office acknowledge receipt of the requests in Attachments A+B. Further, I request that I be provided with FOIA request numbers for both requests. Thank you.

8-24-04 _____    _Brandon Sample_____
DATE    SIGNATURE OF REQUESTER

**Part B- RESPONSE**



```
RECEIVED
AUG 31 2004
WARDEN'S OFFICE
FCC BEAUMONT (LOW)
```

_____    _____
DATE    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**    CASE NUMBER: **349 794-F1**

CASE NUMBER: _____

**Part C- RECEIPT**    Exhibit 5

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)    BP-229(13)

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**LOW SECURITY INSTITUTION**
**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY # 349794-F1**

This responds to your Request for Administration Remedy in which you request to be provided with two Freedom of Information Act (FOIA) request numbers. You allege two FOIA requests were submitted to the FOIA office in Washington, D.C. during the month of March 2004. The first request, dated March 8, 2004, was to review another inmate's Presentence Investigation Report (PSI). The other request was dated March 17, 2004. It is unclear what the subject matter of the request was in reference to, as a copy was not provided with your Request for Administrative Remedy.

An investigation of this matter reveals there is no record of a request dated March 8, 2004, or a request dated March 17, 2004, being received by staff at the FOIA Branch in Washington, D.C. The FOIA Branch Staff reviewed their records in Washington D.C. and did not find any record of the two alleged requests dated within the time frame indicated. Furthermore, requests from inmates to review another inmate's PSI are not considered under FOIA. Pursuant to 5 U.S.C. §552 (b)(7)(F), records or information compiled for law enforcement purposes which could endanger the lives or physical safety of individuals are exempt from disclosure. Inmates do not have the right to review or receive a copy of another inmate's PSI.

There is no record your requests were ever received by the FOIA Branch. If you wish to resubmit your requests to the appropriate office, the complete address is:

Director, Federal Bureau of Prisons
HOLC Room 738
320 First Street, N.W.
Washington, D.C. 20534

"FOIA/PA Request" must be clearly marked on the envelope and the requested information must be clearly identified. Refer to Program Statement 1351.05, Release of Information, for more detailed instructions on submitting your request.

Based on the information noted above, your Request for Administrative Remedy denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, 4211 Cedar Springs Road, Dallas, Texas 75219. Your appeal must be received in the South Central Regional Office within 20 calendar days of the date of this response.

R. Childress, Warden                                    9/21/04
                                                          Date

March 8, 2004

Federal Bureau of Prisons
FOIA/PA Section
320 First St. N.W.
Washington, D.C. 20534

Re: Inspection of inmate Richard Painter's PSR

To whom it may concern:

In accordance with the provisions of the Freedom of Information Act (FOIA),
I request that the BOP make available for inspection a copy of the following
record.

1.    The Presentence Investigation Report of inmate Richard Painter #02473-079.
      This record should be located within his Inmate Central File.

I do not want a copy of inmate Painter's PSR, I only want to inspect it.  Enclosed
is a signed authorization by Mr. Painter authorizing the Department of Justice
to release any and all records about him to me.  I agree to pay all reasonable
fees up to and including $25.00 in the processing of this request.

Yours truly,

Brandon Sample #33949-037
P.O. BOX 26020
Beaumont, TX 77720-6020

Attachment A

U.S. Department of Justice

## Certification of Identity



Privacy Act Statement. In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]    Richard Stuart Painter

Current Address    P.O. Box 26020 Beaumont, TX 77720-6020

Date of Birth    8/29/60

Place of Birth:    Corpus Christi, Texas

Social Security Number [2]    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

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [3]    Richard S. Painter    Date  3-8-04

## Optional: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. § 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Brandon Creighton Sample

(Print or Type Name)

[1] Name of individual who is the subject of the record sought.
[2] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[3] Signature of individual who is the subject of the record sought.

March 17, 2004

Federal Bureau of Prisons
FOIA/PA Section
320 First St. N.W.
Washington, D.C. 20534

Re: Request for records pursuant to FOIA

To whom it may concern:

In accordance with the provisions of the Freedom of Information
Act (FOIA), I request that the BOP provide me with the following
records:

1.   A copy of the December 2003 inventory that was submitted
to the South Central Regional Office for the inmate law library
at FCI Beaumont (Low).

2.   A copy of the 2004 memorandum sent by Associate Director
Cooksey concerning institution practices for Passover.

3.   Copies of all invoices and purchase orders since January
1, 2003, until present at FCI Otisville, FCI Fort Dix, and
FCI Fort Devens concerning wine for use during Jewish services.
If responsive records are found concerning the purchase of
wine, then I request that I be provided with copies of all
institution supplements or other written practices at the
foregoing institutions which describe the practices concerning
the amount of wine provided to inmates, on what occasions it
is provided, details of supervision, etc...

4.   A copy of the chaplaincy budget at FCI Beaumont (Low)
for fiscal year 2003 and 2004.


I agree to pay all reasonable fees up to and including $25.00
in the processing of this request.


Yours truly,

Brandon Sample #33949-037
P.O. BOX 26020
Beaumont, TX 77720-6020


Attachment B

U.S. Department of Justice
Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Sample, Brandon C    33949-037    VA    BML
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A—REASON FOR APPEAL**

Please don't reject this Remedy for failing to include more than one copy of Attachments A + B. Both of these attachments were considered at the lower level.

Continued ⟶

9-24-04    _Brandon Sample_
DATE    SIGNATURE OF REQUESTER

**Part B—RESPONSE**

　　　DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: **349794-R1**

**Part C—RECEIPT**    SEP 2 9 2004    Exhibit 6    CASE NUMBER: _____

Return to: _____
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

BP-230(13)

On March 8, 2004, and March 17, 2004, I submitted Freedom of
Information Act requests to the Bureau of Prisons (BOP). See
Attachments A & B. Unfortunately, I never received an
acknowledgment of either request. The Warden in response to
my Request For Administrative Remedy indicates that the BOP's
FOIA office never received the requests. The Warden suggests
that I resubmit the requests.

It's likely that I cannot prove that the BOP FOIA office received
the requests in Attachments A & B because I did not send them
by certified mail. However, I decline to resubmit either request
because once it was determined that the BOP FOIA office was
not in receipt of the requests, the Warden and this office have
a responsibility to forward the requests to the BOP's FOIA office
for processing. See 28 C.F.R. § 16.4(c)(2) ("[I]f the receiving
component determines that it is not best able to process the
record ... then it shall refer the responsibility for responding
to the request regarding that record to the component best able
to determine whether to disclose it"). Accordingly, I reject
the Warden's suggestion that I resubmit the requests.

Relief Requested

1)    If the Regional Office is unable to respond to the requests
at attachments A & B, then I request that both requests be
referred to the BOP's FOIA office for processing as required
by 28 C.F.R. § 16.4(c)(2).

2)    I request that I receive the FOIA request numbers assigned
to the requests at attachments A & B.

SAMPLE, Brandon                REG. NO. 33949-037       RECEIPTED: 09/29/04

CASE NO. 349794-R1             PART B - RESPONSE

You are appealing the Warden's response to your request that staff
in Central Office failed to acknowledge Freedom of Information Act
(FOIA) requests you submitted on March 8, 2004, and March 17, 2004.
You request Regional staff refer the attachments you provided to
your appeal to Central Office for processing in accordance with
Title 28, Code of Federal Regulations, Section 16.4(c)(2), and
subsequently provide you with FOIA request numbers.

As stated in the Wardens response, no requests were received which
meet the descriptions you have provided.  The proper procedures
for submitting FOIA requests are noted in Title 28, Code of Federal
Regulations, Sections 16.3. and Part 513, Subpart D.  Additional
information is provided in Bureau of Prisons Program Statement
1351.05, <u>Release of Information</u>.  To ensure proper processing of
your FOIA request, please address your request to:

        Director, Federal Bureau of Prisons
        HOLC Building
        Room 738
        320 First Street, N.W.
        Washington, D.C.  20534

You are entitled to no further relief and your appeal is denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section, 320
First Street, NW, Washington, D.C. 20534.  Your appeal must be
received in that office within 30 days from the date of this
response.


_____10/08/04_____                    _____
Date                                  Ronald G. Thompson
                                      Regional Director

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Sample, Brandon C.    33947-037    VA    BML
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A—REASON FOR APPEAL

This appeal should be considered timely filed upon receipt. As documented by the attached Inmate Request to Staff Member form, I was not provided with a copy of the Regional Director's response until November 17, 2004.

Also, please don't reject this Remedy for failing to include 4 copies of the attachments. They have already been considered at the lower levels. Thank you.

Continued ———→

11-23-04
DATE

Brandon Sample
SIGNATURE OF REQUESTER

Part B—RESPONSE

RECEIVED
MAR 2 8 2005
ADMINISTRATIVE REMEDY BRANCH

DECEIVED
NOV

RECEIVED
FEB 11 2005

RECEIVED
NOV 30 2004

GENERAL COUNSEL
CASE NUMBER  348 194 A3

CASE NUMBER

Return to:
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT:

Exhibit 7

DATE    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL    BP-231(13)
APRIL 1982

The Regional Director failed to adequately respond to my appeal. Although I properly submitted my FOIA request to the Central Office, I never received an acknowledgment of its receipt. BOP denies receipt of the requests.

In the alternative to acknowledging receipt of the original requests, I requested the Regional Director to refer the requests under 28 C.F.R. § 16.4(c)(2) to the component best able to respond to my requests. The Regional Director declined. Although other regulations require that FOIA requests be submitted to a certain address, DOJ regulations require that should a requester submit the request to the wrong location, that component must refer the request to the proper component for processing. Here, the Regional Director's refusal to refer the requests at attachments A & B of my appeal violated § 16.4(c)(2) and accordingly, was in error.

Because the Central Office has my requests by virtue of receipt of this appeal and because 28 C.F.R. § 16.4(c)(2) requires the BOP to refer the requests at attachments A & B, I request that my FOIA request be receipted and that I be provided with FOIA request numbers for each request.

**Administrative Remedy No. 349794-A3**
**Part B - Response**

You contend you have not received either an acknowledgment of or
response to two requests submitted to the Freedom of Information
Act/Privacy Act (FOIA/PA) office of the Bureau of Prisons.  You
also contend the Regional Director was obligated to forward
copies of your requests provided with your Regional
Administrative Remedy Appeal to the FOIA/PA office on your
behalf.

Our review of this matter reveals that both the Warden and the
Regional Director have adequately addressed your concerns.  There
is no evidence the two requests to which you refer were received
by the FOIA/PA office.

Title 28 C.F.R. § 542.10(a) provides that "There are statutorily-
mandated procedures in place for Tort claims (28 CFR 543, subpart
C), Inmate Accident Compensation claims (28 CFR 301), and Freedom
of Information Act or Privacy Act requests (28 CFR 513, subpart
D).  If an inmate raises an issue in a request or appeal that
cannot be resolved through the Administrative Remedy Program, the
Bureau will refer the inmate to the appropriate statutorily-
mandated procedures."  The issue you raise cannot be resolved
through the Administrative Remedy Program.  Accordingly, we refer
you to the FOIA/PA office, who is empowered to resolve this
matter.  You may address your request to:

Freedom of Information/Privacy Act Office
Federal Bureau of Prisons
320 First Street, NW
Washington, D.C.  20534

This response is for informational purposes only.


June 15, 2005
Date

Harrell Watts, Administrator
National Inmate Appeals