UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Brandon Sample, *et. al.*,            )
                                      )
            Plaintiff,                )
                                      )
        v.                            )   Civil Action No. 06-cv-715
                                      )
Bureau of Prisons, *et al.*,          )
                                      )
            Defendants.               )
_____)

## DECLARATION OF MICHAEL ATWOOD

I, Michael Atwood, hereby declare and state the following:

1. I am currently employed by the Federal Bureau of Prisons of the United States Department of Justice as Chief of the Trust Fund Branch. My business office is located at the Central Office in Washington, D.C. I have held this position since June 1991. Prior to that time, I served as Supervisor of Computer Specialists from May 1989.

2. As the Chief of the Trust Fund Branch, I have primary responsibility for management and oversight of the Inmate Commissary Fund and the programs operated from the Commissary Fund, including the Inmate Telephone System (ITS).

3. The statements in this declaration are based upon my personal knowledge, belief and experience, and upon information made available to me in the course of my official duties.

4. Pursuant to 28 C.F.R. § 540.100(a), the BOP is authorized to implement and manage a telephone system for inmates in federal prisons and impose limitations consistent with the Bureau's correctional management responsibilities. One aspect of the Inmate Telephone System ("ITS") is the "Push 5" requirement. When an inmate makes a call, the call recipient, through a series of voice prompts, may deny and/or block further telephone calls from the inmate

1

through their telephone. The only means of accepting a call from an inmate is for the call recipient to push the number "5" on their telephone. The inmate will then be connected and the call may commence. The purpose of the "Push 5" requirement is to prevent unwanted calls from inmates and to expedite the process by which a call recipient may prevent an inmate from making further calls to that number. Requiring called party acceptance of a call is the industry standard for parties receiving inmate calls and has been approved by the FCC and 47 C.F.R. § 64.710(3).

5.     The "Push 5" requirement is only for domestic telephone calls made in the United States and its territories. Although call recipients in foreign countries were previously required to push "5" on their telephones to receive an inmate call, that procedure is no longer applicable to international calls. The reasons behind this change included language barriers and a lack of compatibility with foreign telephone systems. Inmates are subject to the same national calling restrictions as the general public.

6.     Inmates wishing to discuss legal matters with an attorney may make legal calls without using the ITS. These calls would not require the "Push 5" acceptance, therefore, not limiting access to offices utilizing a switchboard.

7.     Removing the "Push 5" procedure would be a drain on BOP resources and impose a substantial cost burden. Moreover, the requirement allows the BOP to continue protecting the public from unwanted and potentially intrusive phone calls from federal inmates. Previously, the BOP provided written notification to civilians placed on an inmate telephone list. These civilians could, in response, accept or decline phone contact with an inmate. However, the BOP now has over two million phone numbers on record agency-wide. Providing written notification to every person placed on these lists would impose a considerable financial burden and affect the allocation of staff resources.

8.     Another responsibility of managing the ITS is to ensure that the system operates within the boundaries of budgetary allocations. Therefore, telephone calling rates must be periodically evaluated and revised on an as-needed basis to keep the ITS self-sustaining. The

BOP previously used a banded system that set a per minute charge based on the distance between the facility where the inmate was housed to the location of the telephone number called. The BOP moved away from this system in 1998 to implement a standard calling rate. With the institution of the standard price, the rates must be periodically revised to ensure that the ITS is not exceeding its budgetary limitations.

9. Pursuant to 28 C.F.R. § 540.100(a), the BOP has promulgated an internal policy that is consistent with its statutory authority to implement restrictions on the use of telephones by inmates in federal prisons. Pursuant to Program Statement 5264.007(10)(d)(1), the BOP may limit the length of time inmates spend in making telephone calls so as to reduce staff and financial resources involved in monitoring inmate telephone calls. Inmates were permitted to make unlimited prepaid calls until April, 2001. At that time, the BOP implemented 300 minute monthly calling time limits, with 400 minute limits instituted in November and December.

10. Pursuant to 31 U.S.C. § 1321, the BOP operates and manages prison commissaries. Program Statement 4500.04, Trust Fund/Deposit Fund Manual outlines how prices are set in the commissary. First, cost price is computed. Cost price includes transportation charges except for Special Purpose Order items. The cost is divided per case by the number of sellable units in the case, extended to two decimal places. Sellable unit is defined as the smallest individual unit sold in the commissary. Certain items are exempt from mark-up, as reflected in the Program Statement. Second, cost price is computed into the selling price using a set mark-up formula.

11. BOP executive staff decided to increase the commissary mark-ups effective March 1, 2002, to ensure the commissary operated within the boundaries of budgetary restraints. The increase was achieved by changing the mark-up formula for general items. The change implemented a roughly 5% increase in commissary prices.

12. Prior to March 1, 2002, the BOP mark-up formula to determine the selling price for items other than those containing tobacco was to divide the cost price by .8 (or 4/5) and round

3

the result to the next highest nickel. This created a roughly 25% mark-up from the cost price.

13. Since March 1, 2002, the current mark-up formula for determining the selling price of commissary items is to multiply the cost price by 1.3 and round to the next highest nickel. The new mark-up formula results roughly in a 30% mark-up from the cost price.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 14th day of November 2007 in Washington, D.C.

*(signature)*
Michael Atwood
Bureau of Prisons Trust Fund Branch