UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON C. SAMPLE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action 06-0715 (PLF) |
| ) | |
| FEDERAL BUREAU OF PRISONS, et al., ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

On November 29, 2007, Plaintiffs moved this Court for a protective order requiring the Bureau of Prisons (the "BOP") to suspend its document "retention schedules" and retain all of the documents identified in Count 14 of Plaintiffs' Second Amended Complaint "that are still in existence" (the "Documents") for the duration of this litigation. (See Docket 62 at 1-2.) That motion should be denied because Plaintiffs cannot obtain the relief they are seeking in Count 14—an order from this Court pursuant to the APA or a writ of mandamus requiring the BOP to rectify its alleged deficiencies under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(2)(A)-(C), and publish all of the Documents on its public website. (See Second Am. Compl. ¶53.) Nevertheless, in an effort to avoid protracted litigation over the instant motion and conserve the resources of the parties and this Court, the BOP will agree to retain for the duration of this litigation all of the Documents that Plaintiffs identified in Count 14 and "that are still in existence."[1]

---

[1] Defendants note that Plaintiffs' motion is largely moot because the vast majority of the Documents (in fact, all of the Documents except for certain administrative remedy responses and

Although Defendants have decided not to oppose Plaintiffs' motion for a protective order, their decision is by no means a concession that Plaintiffs are entitled to the relief they are seeking in Count 14. To the contrary, Defendants firmly believe that Plaintiffs cannot obtain that relief. Indeed, there are at least three reasons why Plaintiffs cannot obtain an order from this Court pursuant to the APA or a writ of mandamus requiring the BOP to rectify its alleged deficiencies under § 552(a)(2)(A)-(C) and publish all of the Documents on its public website.[2]

First, as Defendants explained in their reply memorandum in support of their motion to dismiss or, in the alternative, for summary judgment (see Docket 59 at 22-25), Plaintiffs lack standing to assert a claim based on the BOP's alleged failure to publish the Documents on its public website. This is because, as prisoners, Plaintiffs do not have access to the Internet (Eternick Decl. at ¶ 3)[3] and, thus, cannot establish either: (1) that they have been harmed by the BOP's alleged failure to electronically publish the Documents; or (2) that they would benefit if this Court were to grant them the relief they are seeking. (See Docket 59 at 22-25.)

Second, even if the BOP is in violation of § 552(a)(2)(A)-(C) and its obligation to publish (and it is not), Plaintiffs cannot use the APA or a writ of mandamus as a means to force the BOP

---

certain responses to FOIA requests) are not scheduled to be destroyed any time soon. The BOP retains most of the Documents for upwards of 30 years.

[2] Section 552(a)(2)(A)-(C) requires that each federal agency make publicly available: "(A) final opinions . . . , as well as orders, made in the adjudication of cases; (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; [and] (C) administrative staff manuals and instructions to staff that affect a member of the public." Moreover, "[f]or records created on or after November 1, 1996, . . . each agency shall make such records available . . . by computer telecommunications or . . . other electronic means." § 552(a)(2).

[3] Defendants did not attach to their reply memorandum (Docket 59) a declaration affirming that Plaintiffs do not have access to the Internet. Thus, Defendants are attaching such a declaration to this filing.

to comply with that statutory provision and publish the Documents.[4]  To remedy violations of FOIA, Congress included in the statute a remedial provision pursuant to which courts may "enjoin [an] agency from withholding agency records and [] order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B) (emphasis added).  However, Congress did not provide courts with the power to order the publication of documents.  See Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996); see also Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 610 (D.C. Cir. 1997).  In fact, the D.C. Circuit has observed that Congress intentionally withheld that power from the courts:  "While it might seem strange for Congress to command agencies to 'currently publish' or 'promptly publish' documents, without in the same statute providing courts with power to order publication, we think that is exactly what Congress intended."  Kennecott, 88 F.3d at 1202-03.

Although Congress withheld from courts the power to order the publication of documents, it did include within FOIA an alternative means for encouraging agencies to fulfill their obligation to publish.  Section 552(a)(2) provides that the materials that fall within its scope "may be relied on, used, or cited as precedent by an agency against a party . . . only if—(i) [the materials have] been indexed and either made available or published as provided by [§ 552(a)(2)]; or (ii) the party has actual and timely notice of the terms thereof."  Congress thus

---

[4] The D.C. Circuit has twice declined to opine on whether sources of law other than FOIA "might authorize additional remedial orders in FOIA cases."  Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 610 & n.4 (D.C. Cir. 1997); see Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996); but see Commonwealth of Pa. Dep't of Public Welfare v. U.S. Dep't of Health & Human Servs., No. 99-175, 2001 U.S. Dist. LEXIS 3492, at *28 (W.D. Pa. Feb. 7, 2001) (finding that the APA gave the court the authority to order the publication of an index pursuant to § 552(a)(2)).

gave agencies a powerful incentive to fulfill their obligation to publish, and it also gave parties against whom agencies seek to use unpublished materials a "failure-to-publish" defense.

Given Congress's decision to intentionally withhold from courts the power to order the publication of documents under FOIA, and the fact that it provided a remedy to those adversely affected by an agency's failure to publish (i.e., a "failure-to-publish" defense), Plaintiffs should not be permitted to use the APA or a writ of mandamus to force the BOP to rectify its alleged deficiencies under FOIA and publish the Documents on its public website.  See Karahalios v. Nat'l Federation of Fed. Employees, Local 1263, 489 U.S. 527, 533 (1989) ("It is . . . an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies."); Assassination Archives & Research Ctr. v. Dep't of Justice, 43 F.3d 1542, 1544 (D.C. Cir. 1995) (same).  Had Congress intended for courts to issue orders requiring agencies to comply with their obligation to publish, it could easily have given them the power to do so.  The fact that it chose not to give courts that power and that it provided an alternative means to encourage agencies to comply with their obligation to publish is strong evidence that it did not intend for courts to issue such orders, whether pursuant to FOIA, the APA or otherwise.

Third, Plaintiffs cannot force the BOP to publish all of the Documents on its public website because most, if not all, of the Documents fall outside the scope of § 552(a)(2)(A)-(C)— they are not "final opinions . . . made in the adjudication of cases," "statements of policy" or "instructions to staff that affect a member of the public."  For example:

- Program Review Reports.[5]  When inmates are initially incarcerated, they undergo an "initial classification" and are assigned "program plans." (Ex. A at 4.)  These plans

---

[5] Plaintiffs have grouped the Documents at issue into thirteen categories.  One of those categories is "program review reports."  (See Second Am. Compl. ¶51.)  Another category is written "decisions made by the Utilization Review Committee . . . concerning the provision of

- outline the various activities in which the inmates will participate during their incarceration. (See id.)  At "program reviews," prison officials evaluate the inmates' "program plans."  (See id. at 5.)  Following the "initial classification" and the "program reviews," prison officials create "program review reports" to document their findings and recommendations.  (See id. at 4-5, Attachments A & B.)  Those "program review reports" clearly fall outside the scope of § 552(a)(2)(A)-(C).  They are not "opinions" issued following the "adjudication" of a "case", and do not contain "statements of policy" or "instructions to staff."

- <u>Written Decisions Made By the Utilization Review Committee (the "URC") Concerning the Provision of Medical Care to Inmates.</u>  The URC, which is chaired by a Clinical Director, reviews matters relating to inmates raised by health-care providers, including the need for medical, surgical or dental procedures. (Allen Decl. at ¶¶4-6; Ex. B at 6-8.)[6]  The members of the URC make recommendations as to whether specific medical care should be provided. (Ex. B. at 7.)  The Clinical Director then makes the final decision regarding the provision of medical care, and notifies the relevant inmate in writing of his decision.  (Id.)  Those written decisions also clearly fall outside the scope of § 552(a)(2)(A)-(C).

In Defendants' memoranda in support of their motion to dismiss or, in the alternative, for summary judgment (see Dockets 39, 59), Defendants made only the first of the three arguments outlined above, i.e., the standing argument.  If the Court were to find that Plaintiffs have standing to bring the claim they have asserted in Count 14 (and Defendants do not believe they do), then Defendants would file a motion for summary judgment as to Count 14 in which they would make, among other arguments, the second and third arguments outlined above.

---

medical care to inmates."  (See id.)  Although Defendants discuss only these two categories in this filing, most, if not all, of the remaining categories also fall outside the scope of § 552(a)(2)(A)-(C).

[6] Exhibit B contains excerpts from the BOP's Program Statement for "Patient Care."  The entire Program Statement is available at http://www.bop.gov/DataSource/execute/dsPolicyLoc.

5

## **CONCLUSION**

To avoid protracted litigation over Plaintiffs' motion for a protective order and conserve the resources of the parties and this Court, the BOP will agree to retain for the duration of this litigation all of the Documents that Plaintiffs identified in Count 14 and "that are still in existence." Defendants do not, however, believe that Plaintiffs can obtain the relief they seek in Count 14.

Dated: December 20, 2007                    Respectfully submitted,

                                                                  /s/
                                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                                        United States Attorney

                                                                  /s/
                                        RUDOLPH CONTRERAS, D.C. BAR #434122
                                        Assistant United States Attorney

                                                                  /s/
                                        CHRISTOPHER B. HARWOOD
                                        Assistant United States Attorney
                                        555 Fourth St., N.W.
                                        Washington, D.C.  20530
                                        Phone: (202) 307-0372
                                        Fax: (202) 514-8780
                                        Christopher.Harwood@usdoj.gov

**Of Counsel:**

Oliver M. Lewis, Esq.
U.S. Department of State
Washington, D.C.

Wanda Hunt, Esq.
Delaine Martin Hill, Esq.
Bureau of Prisons
Washington, D.C.

## CERTIFICATE OF SERVICE

      I hereby certify that on December 20, 2007, I caused a copy of the foregoing to be served via first class prepaid postage as follows:

**BRANDON C. SAMPLE**
#33949-037
P.O. Box 9300
Texarkana, Texas 75505

**BERNARD SHAW**
#59469-004
FSL Jesup
2680 Highway 301 South
Jesup, Georgia 31599

                                        /s/
                                Christopher B. Harwood