

**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

OPI: HSD/HPB
NUMBER: P6031.01
DATE: 1/15/2005
SUBJECT: Patient Care

1. **PURPOSE AND SCOPE.** To effectively deliver medically necessary health care to inmates.

2. **PROGRAM OBJECTIVES.** The expected result of this program is:

Health care will be delivered to inmates in accordance with proven standards of care without compromising public safety concerns inherent to the agency's overall mission.

3. **DIRECTIVES REFERENCED**

```
P1070.07   Research (5/12/99)
P1351.05   Release of Information (9/19/02)
P3735.04   Drug Free Workplace (6/30/97)
P4500.04   Trust Fund Warehouse/Laundry Manual (12/15/95)
P4700.04   Food Service Manual (10/7/96)
P5050.46   Compassionate Release; Procedures for
           Implementation of 18 U.S.C. §§ 3582(c)(1)(A) &
           4205(g) (5/19/98)
P5280.08   Furlough (2/4/98)
P5324.04   Sexual Abuse/Assault Prevention and Intervention
           Program (12/31/97)
P5324.05   Suicide Prevention Program (3/1/04)
P5521.05   Searches of Housing Units, Inmates, and Inmate
           Work Areas (6/30/97)
P5553.06   Escape/Death Notifications (8/23/99)
P6010.01   Administrative Safeguards for Psychiatric
           Treatment and Medication (9/21/95)
P6010.02   Health Services Administration (1/15/05)
P6013.01   Health Services Quality Improvement (1/15/05)
P6027.01   Health Care Provider Credential Verification,
           Privileges, and Practice Agreement Program
           (1/15/05)
```

Exhibit B (excerpts from larger document)

These therapeutic interventions always require review by the Institution Utilization Review Committee. Relevant factors to consider in approving the proposed treatment in this category include, but are not limited to:

- the risks and benefits of the treatment;
- available resources;
- natural history of the condition; and
- the effect of the intervention on inmate functioning in his/her activities of daily living.

　　d. **Limited Medical Value**. Medical conditions in which treatment provides little or no medical value, are not likely to provide substantial long-term gain, or are expressly for the inmate's convenience. Procedures in this category are usually excluded from the scope of services provided to Bureau inmates. Examples in this category include, but are not limited to:

- minor conditions that are self-limiting;
- cosmetic procedures (e.g. blepharoplasty); or
- removal of non-cancerous skin lesions.

　　Any treatment in this category which a health care provider recommends and the Clinical Director feels is appropriate will require the Institution Utilization Review Committee's review.

　　e. **Extraordinary**. Medical interventions are deemed extraordinary if they affect the life of another individual, such as organ transplantation, or are considered investigational in nature.

　　Any treatment provided in this category requires the Medical Director's review and approval with notification to the Regional Director.

8. **UTILIZATION REVIEW**. Every institution will have an established Utilization Review Committee (URC), chaired by the Clinical Director. Other members should include, but not be limited to the:

- HSA or Assistant HSA;
- Medical Trip Coordinator;
- Health care provider(s) directly involved in the reviewed cases;
- Director of Nursing (if applicable); and
- A chaplain or social worker.

Exhibit B (excerpts from larger document)

```
                                                     P6031.01
                                                     1/15/2005
                                                     Page 7
```

The URC will review the following areas:

- Outside medical, surgical, and dental procedures;
- Requests for specialist evaluations, in-house or escorted trips to the specialist's office (approved by the Clinical Director);
- Requests for "Limited Medical Value" treatments/procedures (approved by the CD);
- Retrospective review of all cases sent to the community hospital during hours when no health care provider was on duty at the institution;
- Case considerations for extraordinary care;
- Concurrent review of inpatients at community hospital (monitoring length of stay and interventions); and
- Other services the primary care provider or the Clinical Director have recommended.

**Note:** Care considered "Medically Necessary – Acute or Emergent" does not require URC review prior to the treatment being provided.

a. **Recommendations.** The URC must select one or more of the following, to address each case presented to it:

- Approve the request without modification;
- Refer the inmate for further evaluation to a staff physician;
- Refer the inmate for further evaluation to a specialty consultant;
- Put the inmate on a waiting list, with recommended parameters as to the length of time the procedure may be delayed without increasing the risk of additional morbidity;
- Determine that the procedure is contraindicated, due to unacceptable risk to the inmate if it is performed; or
- Deny the request for the procedure.

b. **Decisions.** As chair of the committee, the Clinical Director is the final authority for all URC decisions.

- The CD will notify inmates in writing when URC decisions are made with a copy of the notification placed in the inmate's health record. The reason for the decision should be indicated where applicable.

Exhibit B (excerpts from larger document)

P6031.01
1/15/2005
Page 8

- The CD is under no obligation to follow consultant recommendations. If the recommendations are not followed, the CD will document his/her justification in the inmate health record.

- If a specific intervention is not pursued, the inmate will be advised that his/her condition will continue to be monitored and ongoing treatment provided as necessary, and that re-submission of the request will be considered if medically indicated.

   c. **Secondary Reviews.** The Clinical Director may request a secondary review for treatments or procedures in the categories of **"Medically Acceptable - Not Always Necessary"** and **"Limited Medical Value"** on a case-by-case basis through the regional Clinical Specialty Consultants or a Central Office physician. The CD will document such discussions in the inmate health record.

   d. **Pre-certification.** The Medical Director may periodically require pre-certification (prior approval) for certain types of cases (e.g. high risk, high cost, or questionable efficacy). Institutions will be notified by memorandum when pre-certification requirements are in effect.

   e. **Retrospective Review.** Institutions should consider a retrospective review of emergency cases based on URC findings as part of the institution Quality Improvement Program.

9. **URGENT CARE.** Each institution will have an Institution Supplement for providing urgent medical and dental services. Each urgent care plan will include procedures for notifying the HSU for initial assistance, screening and, if appropriate, subsequent transfer of the inmate(s) to the HSU or to external emergency facilities. The procedures will address:

   a. Arrangements for on-site first aid;
   b. Use of one or more HSU urgent treatment rooms or other facilities;
   c. Use of the HSU emergency medical vehicle for transporting inmates across the compound;
   d. Transfer of the inmate from the institution to a community medical facility; and
   e. Provision of emergency treatment in the absence of 24 hour on-site medical coverage.

   ACA standards require a four minute response to life or limb threatening medical emergencies.

Exhibit B (excerpts from larger document)