UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON C. SAMPLE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action 06-0715 (PLF) |
| FEDERAL BUREAU OF PRISONS, et al., | ) |
| Defendants. | ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 56(f) MOTION

In this lawsuit, Plaintiffs have challenged the constitutionality of the "push 5" requirement of the Bureau of Prison's (the "BOP") inmate telephone system. (See Docket No. 22 ¶¶8-14; Docket No. 30 ¶1.) Plaintiffs now request, in their recently-filed motion pursuant to Federal Rule of Civil Procedure 56(f), that the Court postpone ruling on their "push 5" challenge and permit them to take written and oral discovery of the BOP so that they may establish that the "push 5" requirement is unconstitutional. Specifically, Plaintiffs seek discovery to show that: (1) there is no rational connection between the "push 5" requirement and any legitimate governmental interest; (2) the alternative to the "push 5" requirement that they have proposed is suitable; and (3) the elimination of the "push 5" requirement would not have a negative impact on prison resources.

However, as demonstrated both below and in the sworn declaration of Michael Atwood (which is attached hereto), the "push 5" requirement is plainly constitutional. Indeed: (1) there is a clear and rational connection between the "push 5" requirement and a legitimate governmental interest—that of protecting the public from unwanted and potentially harassing and/or threatening contact with inmates; (2) the alternative to the "push 5" requirement that

Plaintiffs have proposed is unworkable; and (3) the elimination of the "push 5" requirement would have a detrimental impact on prison resources. Thus, Plaintiffs' Rule 56(f) motion should be denied as unnecessary, and their underlying challenge to the constitutionality of the "push 5" requirement should be dismissed with prejudice.

## BACKGROUND

Pursuant to 28 C.F.R. § 540.100(a), the BOP is authorized to impose "limitations and conditions" on inmates' telephone privileges "to protect the public." And, as shown below, the "push 5" requirement was implemented to, and in fact does, "protect the public."

When an inmate makes a telephone call, the recipient of the call, upon picking up the receiver, is immediately informed that the call is from a prison, that the call is prepaid and that the recipient will not be charged for the call. (Am. Atwood Decl. ¶5.)[1] The recipient is also told the name of the inmate making the call. (Id.) Finally, the recipient is told that he or she should hang up the phone to decline the call, dial "5" to accept the call and/or dial "7" to block future calls from the particular inmate making the call. (Id.)

The purpose of the "push 5" requirement is "to protect the public from unwanted and potentially harassing and intrusive contact with inmates." (Id. at ¶4.) If the "push 5" requirement were eliminated and—as Plaintiffs suggest (see Pls. Rule 56(f) Mot. at 3; Docket No. 69, Ex. 1, at 7)—replaced with a system whereby a call from an inmate is automatically connected in five seconds if the recipient does not hang up the phone, then (after five seconds) inmates would have unfettered access to, and be able to "leave harassing and threatening messages" on, voice mail systems. (See Am. Atwood Decl. ¶7.) Inmates would also be able to call any number that uses an automated switchboard, wait five seconds, enter a party's extension

---

[1] Citations in the form "(Am. Atwood Decl. ¶__)" refer to the Amended Declaration of Michael Atwood, which is attached hereto.

2

and then speak directly with (and potentially harass and/or threaten) that party without his or her prior knowledge or consent. (Id.)

In addition, if the "push 5" requirement were eliminated and replaced with Plaintiffs' proposed alternative, then inmates would be able to use telephones to commit, among other telephone-based schemes, "remote toll fraud." (Id.) Remote toll fraud is the fraudulent use of a company's telecommunications system by a third party from a remote location. (Id.)[2] Without the "push 5" requirement, an inmate could commit remote toll fraud by calling a company's automated switchboard, entering an employee's extension and then, after being connected to that employee, convincing the employee—who would have no way of knowing that he or she is talking to an inmate—to transfer the inmate to an outside line. (See id.)[3] The inmate could then use that outside line to call any person for any purpose, and the call would be billed to the company, rather than to the inmate. (See id.) Importantly, "[t]he BOP houses inmates who were convicted of . . . telephone fraud for committing . . . scams" similar to that described above. (Id.)

## ARGUMENT

Plaintiffs' Rule 56(f) motion should be denied (and their underlying challenge to the "push 5" requirement rejected) because, as demonstrated below, the "push 5" requirement is clearly constitutional. Defendants should not be forced to bear the burden of discovery on this matter given that there can be no reasonable dispute as to the constitutionality of the "push 5" requirement.

---

[2] (See http://www.corp.att.com/business_billing/fd_home.html (defining remote toll fraud).)

[3] (See http://www.corp.att.com/business_billing/fd_fraud2.html (On its online website, AT&T implores companies to warn their employees "about one of the fastest growing toll fraud tactics—the seeming innocent incoming caller who asks to be transferred within your system. This person may, in fact, be a thief using deceit to enter your network and gain access to an outside line.").)

Under settled law, the "push 5" requirement is constitutional "so long as it 'is reasonably related to [a] legitimate penological interest[].'" Kimberlin v. U.S. Dep't of Justice, 318 F.3d 228, 233 (D.C. Cir. 2003) (quoting Amatel v. Reno, 156 F.3d 192, 196 (D.C. Cir. 1998)). There are four factors relevant to whether the "push 5" requirement meets that standard: (1) whether it has a rational connection to a legitimate penological interest; (2) whether there are ready alternatives to it; (3) whether the accommodation Plaintiffs' seek would have a negative impact on, inter alia, prison resources; and (4) whether there are alternative means (i.e., means other than the telephone) open to inmates to communicate with non-incarcerated persons and entities. See, e.g., Overton v. Bazzetta, 539 U.S. 126, 132-36 (2003); Turner v. Safley, 482 U.S. 78, 89-91 (1987); Kimberlin, 318 F.3d at 233. The first of the four factors is the "most important."[4] Kimberlin, 318 F.3d at 233.

Here, each of the four relevant factors favors a finding that the "push 5" requirement is constitutional: (1) it is rationally related to a legitimate penological interest—that of protecting the public from unwanted and potentially harassing and/or threatening contact with inmates; (2) there are no ready alternatives to it; (3) its elimination would have a negative impact on prison resources; and (4) inmates can communicate with non-incarcerated persons and entities through means other than the telephone. Accordingly, this Court should find that the "push 5" requirement is constitutional, deny Plaintiffs' Rule 56(f) motion and dismiss with prejudice their underlying challenge to the "push 5" requirement.

---

[4] A regulation may be constitutional even where each of the four factors does not favor the government's position. See Kimberlin, 318 F.3d at 233-34 (upholding a prison regulation where only three of the four factors favored the government's position).

     1.    <u>There is a rational connection between the "push 5" requirement and a legitimate penological interest.</u>

The "push 5" requirement is meant "to protect the public from unwanted and potentially harassing and intrusive contact with inmates." (Am. Atwood Decl. ¶4.) Protecting the public from unwanted and potentially unpleasant contact with inmates is plainly a legitimate penological interest, and there is a logical connection between that interest and the "push 5" requirement. Without the "push 5" requirement, an inmate could, <u>inter alia</u>, (1) leave harassing and/or threatening messages on voice mail systems; (2) call any phone number that uses an automated switchboard, enter an individual's extension and speak with—and harass and/or threaten—that individual; and (3) commit remote toll fraud and, thereby, gain access to an unmonitored telephone line and use that line to make harassing and/or threatening calls.[5] (<u>See</u> <u>supra</u> 2-3; Am. Atwood Decl. ¶7.)

     2.    <u>There are no ready alternatives to the "push 5" requirement.</u>

For there to be a ready alternative to the "push 5" requirement sufficient to tip the balance with respect to this factor in Plaintiffs' favor, Plaintiffs would have to have "pointed to some obvious regulatory alternative that fully accommodates the[ir] asserted right while not imposing more than a <u>de minimus</u> cost to the [BOP's] valid penological goal." <u>Overton</u>, 539 U.S. at 136; <u>see</u> <u>Turner</u>, 482 U.S. at 90-91. This is a "high standard," <u>Overton</u>, 539 U.S. at 136, which Plaintiffs here have failed to meet.

The alternative to the "push 5" requirement that Plaintiffs have suggested would frustrate the BOP's valid goal of "protect[ing] the public from unwanted and potentially harassing and

---

[5] In light of the above, Plaintiffs' assertion that "the push '5' requirement has no relation to [the] BOP's interest in protecting the general public from unwanted calls from inmates" (Sample Decl. ¶2) is clearly false. Citations in the form of "(Sample Decl. ¶__)" refer to the Declaration of Brandon Sample, which is attached to Plaintiffs' Rule 56(f) Motion.

5

intrusive contact with inmates." (See Am. Atwood Decl. ¶¶4, 6, 7.) Plaintiffs would have the BOP eliminate the "push 5" requirement and replace it with a system whereby an inmate's call would connect automatically "in five seconds" if the recipient fails to hang up the telephone or dial "7." (See Docket No. 69, Ex. 1, at 7; see also Pls. Rule 56(f) Mot. at 3.) Under Plaintiffs' proposal, inmates would (after five seconds) have unfettered access to voice mail systems and automated switchboards and could, inter alia, (1) leave members of the public harassing and/or threatening voice mail messages; and (2) directly contact—and harass and/or threaten—members of the public through the use of automated switchboards.[6] (See supra 2-3; Am. Atwood Decl. ¶7.)

       3.      <u>Eliminating the "push 5" requirement would have a negative impact on prison resources.</u>

If the "push 5" requirement were eliminated, the BOP would be forced to allocate additional resources to monitoring inmate telephone calls to ensure that inmates do not leave harassing and/or threatening voice mail messages or make improper use of automated switchboards. It is axiomatic that this would have a negative impact on prison resources. See Overton, 539 U.S. at 135 (courts are "'particularly deferential' to prison administrators' regulatory judgments" when "[a]ccommodating [prisoner] demands would cause a significant reallocation of the prison system's financial resources").

---

[6] Thus, Plaintiffs' suggestion that their proposal would allow the BOP to retain its "ability to . . . prevent unwanted calls from inmates to the general public" (Sample Decl. ¶9) is incorrect.

  4. <u>Inmates have alternative means of communicating with non-incarcerated persons and entities.</u>

Plaintiffs have (rightly) conceded that they (and, by extension, other inmates) have alternative means of communicating with non-incarcerated persons and entities.[7] (<u>See</u> Sample Decl. ¶4; <u>see also</u> Docket No. 69, Ex. 1, at 3 n.2.)  Thus, Defendants need not (and do not) discuss this factor further.

## CONCLUSION

For the reasons set forth above, as well as those discussed in the memoranda of law Defendants have previously submitted in support of their motion to dismiss or for summary judgment, Defendants respectfully request that this Court DENY Plaintiffs' Rule 56(f) motion and DISMISS with prejudice Plaintiffs' constitutional challenge to the "push 5" requirement (Count 1 of their Second Amended Complaint).

Dated: January 7, 2008        Respectfully submitted,

                /s/
                JEFFREY A. TAYLOR, D.C. BAR # 498610
                United States Attorney

                /s/
                RUDOLPH CONTRERAS, D.C. BAR #434122
                Assistant United States Attorney

---

[7] Because there is no dispute that inmates have alternative means of communicating with non-incarcerated persons and entities (such as by writing letters), Plaintiffs' statement that they are "unable to communicate telephonically with courts and U.S. government agencies due to the push '5' requirement" (Sample Decl. ¶3; Docket No. 69, Ex. 1, at 4) is immaterial.  <u>See</u> <u>Overton</u>, 539 U.S. at 135 ("Alternatives . . . need not be ideal . . . ; they need only be available.").

/s/
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

**Of Counsel:**

Oliver M. Lewis, Esq.
U.S. Department of State
Washington, D.C.

Wanda Hunt, Esq.
Delaine Martin Hill, Esq.
Bureau of Prisons
Washington, D.C.

## CERTIFICATE OF SERVICE

      I hereby certify that on January 7, 2008, I caused a copy of the foregoing to be served via first class prepaid postage as follows:

**BRANDON C. SAMPLE**
#33949-037
P.O. Box 9300
Texarkana, Texas 75505

**BERNARD SHAW**
#59469-004
FSL Jesup
2680 Highway 301 South
Jesup, Georgia 31599

                                                /s/
                                       Christopher B. Harwood