UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON C. SAMPLE, et al., | ) )  ) |
| Plaintiffs, | ) ) |
| v. | )  Civil Action 06-0715 (PLF) |
| FEDERAL BUREAU OF PRISONS, et al., | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' REPLY
ON THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants respectfully submit this brief in response to Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (Plaintiffs' "Reply Brief") (Docket No. 69). Defendants do so to clarify matters relevant to the disposition of Counts 8, 11 and 14 of Plaintiffs' Second Amended Complaint.

**BACKGROUND**

In their Second Amended Complaint, in Counts 8, 11 and 14, respectively, Plaintiffs assert that: (1) the Bureau of Prisons (the "BOP") is in violation of, and should be forced to comply with, the Paperwork Reduction Act (the "PRA"); (2) the BOP has failed to respond adequately to Plaintiff Sample's request under the Freedom of Information Act ("FOIA") for records concerning the purchase of food items in 2004 from the "Kosher Cajun Deli" for the FCI Beaumont Low facility for the Passover ceremonial meal;[1] and (3) this Court should issue an order pursuant to the Administrative Procedure Act (the "APA"), or a writ of mandamus,

---

[1] Plaintiffs have conceded that this is the only aspect of Count 11 that is not moot. (See Pls. Mem. & Points of Authorities in Support of Their Mot. for Summ. J. & Response to Defs. Mot. to Dismiss or for Summ. J. at 20; Pls. Reply Br. at 13.)

requiring the BOP to rectify its alleged deficiencies under FOIA, 5 U.S.C. § 552(a)(2)(A)-(C) and (a)(3)(B), and publish 13 categories of documents on its public website and maintain electronic copies of its records. (See Docket No. 22 ¶¶37-39, 44-46; Docket No. 30 ¶¶51-57.)

Defendants have argued that those three Counts should be dismissed, or at the very least, that Plaintiffs should not be awarded summary judgment on them, because: (1) there is no private right of action under the PRA; (2) the BOP's records show that FCI Beaumont's Religious Services Department did not purchase any items from the Kosher Cajun Deli in 2004 for the FCI Beaumont Low facility; and (3) Plaintiffs lack standing to assert that the BOP should be forced to publish the 13 categories of documents referenced in Count 14 on its public website and maintain electronic copies of its records. (See Docket No. 60 at 21-25; Docket No. 65 at 3-4; Docket No. 67 at 2.)

In their Reply Brief, as to Count 8, Plaintiffs concede that they do not have a private right of action under the PRA, but argue that (1) they can bring a claim to force the BOP to comply with the PRA under the APA; and (2) the Court should construe the claim they have asserted in Count 8 as arising under the APA (even though Plaintiffs clearly asserted in Count 8 a claim arising under the PRA). (Pls. Reply Br. at 12.) Plaintiffs also argue that they should prevail as to Count 11 because the BOP has not addressed whether FCI Beaumont's Food Services Department purchased items from the Kosher Cajun Deli in 2004 for the FCI Beaumont Low facility for the Passover ceremonial meal. (Id. at 13-14.) And, as to the claims that appear in Count 14, Plaintiffs assert that if this Court finds that they have standing to assert those claims, then the Court should immediately order the BOP to publish the 13 categories of documents on its public website and maintain electronic copies of its records. (Id. at 15-16.)

## ARGUMENT

For the reasons discussed below, Defendants strongly disagree with the arguments Plaintiffs made in their Reply Brief with respect to Counts 8 and 14.[2] Moreover, after receiving Plaintiffs' Reply Brief, the BOP asked FCI Beaumont's Food Services Department to conduct a search of its records for any documents reflecting purchases from the Kosher Cajun Deli in 2004 for the FCI Beaumont Low facility for the Passover ceremonial meal. The Food Services Department located two responsive documents, which Defendants are attaching hereto as exhibits A and B. Thus, Count 11 should now be moot.

## COUNT 8

Defendants have argued in their prior briefing before this Court that Plaintiffs' claim arising under the PRA should be dismissed because the BOP is an agency involved in "the disposition of . . . criminal matter[s]" and is, therefore, exempt from the requirements of the PRA. See 44 U.S.C. § 3518(c)(1)(A); see also Docket No. 65 at 3-4. Defendants are currently seeking to obtain a statement from the Office of Management and Budget (the "OMB")—which is assigned oversight responsibilities with respect to the PRA, see 44 U.S.C. §§ 3502(4), 3504—regarding whether it views the BOP as exempt from the PRA. Once Defendants obtain such a statement from the OMB, they will file with the Court a report addressing further whether the BOP is exempt from the PRA.[3]

---

[2] Defendants disagree with nearly all of the positions Plaintiffs have taken in their Reply Brief with respect to the Counts they have asserted, but seek to clarify here matters related only to Counts 8, 11 and 14.

[3] By Minute Order of the Court dated December 18, 2007, Defendants are to file the abovementioned report by January 14, 2008. The undersigned counsel learned today that Defendants may not receive a response from the OMB by January 14, 2008. Thus, Defendants may need to file a motion to extend the date by which they are to file that report. In the meantime, Defendants do not object to Plaintiffs' request that "the Court defer ruling on their PRA claim[] until [Defendants'] compliance review is finished." (Pls. Reply Br. at 12-13.)

3

However, even if the BOP is subject to and in violation of the PRA, and even if—at this late date—the Court were to permit Plaintiffs to recast the claim they have asserted in Count 8 as arising under the APA (and it should not),[4] Count 8 should nevertheless be dismissed because Plaintiffs cannot use the APA as a means to force the BOP to remedy its alleged deficiencies under the PRA. Congress chose to include in the PRA a single remedial provision, see 44 U.S.C. § 3512, and that provision provides that the statute's "protection[s] . . . may be raised [as a] . . . defense" in any administrative or judicial proceeding. Id. (emphasis added); see Tozzi v. EPA, 148 F. Supp. 2d 35, 43 (D.D.C. 2001) (Section 3512 is the PRA's sole remedial provision, and it provides "only a defense to enforcement actions. Otherwise, the Act has no provision for a private right of action for alleged violation of the Act."); see also Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 844 (9th Cir. 1999). In drafting the PRA, Congress chose not to give individuals the right to bring an action under the PRA to force an agency to comply with the PRA. See id. Accordingly, this Court should not allow Plaintiffs to use the APA to do that which Congress declined to give them the right to do under the PRA—i.e., bring an affirmative action to force the BOP to comply with the PRA. See Karahalios v. Nat'l Federation of Fed. Employees, Local 1263, 489 U.S. 527, 522 (1989) ("It is . . . an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant

---

[4] See Cunningham v. H.A.S., Inc., 74 F. Supp. 2d 1157, 1166 n.14 (M.D. Ala. 1999) (refusing to allow plaintiff to recast her claim in a brief); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Arbitraje Casa De Cambio, S.A. De C.V. v. U.S. Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("'It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'").

to provide additional remedies."); Assassination Archives & Research Ctr. v. Dep't of Justice, 43 F.3d 1542, 1544 (D.C. Cir. 1995) (same).[5]

## COUNT 11

Plaintiffs argue that they should prevail as to Count 11 because the BOP has not addressed whether FCI Beaumont's Food Services Department purchased items from the Kosher Cajun Deli in 2004 for the FCI Beaumont Low facility for the Passover ceremonial meal. (Pls. Reply Br. at 13-14.) FCI Beaumont's Food Services Department has recently conducted a search for any documents in its possession reflecting purchases from the Kosher Cajun Deli in 2004 for the FCI Beaumont Low facility for the Passover ceremonial meal. (See supra 3.) It has located two responsive documents, which are attached hereto. (See id.; Exs. A, B.) Thus, Count 11 should now be dismissed as moot.

## COUNT 14

As stated above, in Count 14, Plaintiffs seek an order from this Court pursuant to the APA or a writ of mandamus requiring the BOP to rectify its alleged deficiencies under FOIA and: (1) publish each of the documents that falls within the 13 categories of documents referenced in Count 14 (the "Documents") on its public website, in accordance with § 552(a)(2)(A)-(C); and (2) maintain electronic copies of its records, in accordance with § 552(a)(3)(B). Defendants have previously argued that Plaintiffs lack standing to bring these claims. In their Reply Brief, Plaintiffs incorrectly assert that if this Court were to find that they have standing to bring these claims, then it should immediately grant them all of the relief they have requested in Count 14. Defendants respectfully submit that this Court should do no such

---

[5] The one case Plaintiffs cite to support their assertion that "the APA . . . provide[s] a cause of action to address an agency's failure to comply with the PRA" (Pls. Reply Br. at 12), Public Citizen, Inc. v. Lew, 127 F. Supp. 2d 1 (D.D.C. 2000), does not address the argument Defendants have raised above.

5

thing. Even if this Court were to find that Plaintiffs have standing to bring the claims they have asserted in Count 14, it should nevertheless deny their motion for summary judgment as to Count 14 and afford Defendants an opportunity to show why they still cannot obtain the relief they are seeking. Alternatively, Defendants have now provided the Court with sufficient grounds to dismiss Count 14 outright.

    1.    <u>Plaintiffs Cannot Compel the BOP to Publish the Documents on Its Website.</u>

There are at least two reasons why Plaintiffs cannot obtain an order from this Court pursuant to the APA or a writ of mandamus requiring the BOP to rectify its alleged deficiencies under § 552(a)(2)(A)-(C) and publish the Documents on its public website. Defendants articulated those reasons in their Response to Plaintiffs' Motion for a Protective Order (Docket No. 67), but for the Court's convenience, will repeat them here.

<u>First</u>, most, if not all, of the Documents fall outside the scope of § 552(a)(2)(A)-(C)— they are not "final opinions . . . made in the adjudication of cases," "statements of policy" or "instructions to [BOP] staff that affect a member of the public"[6]—and thus, the BOP is under no obligation to publish them on its public website. For example:

- **Program Review Reports.**[7] When inmates are initially incarcerated, they undergo an "initial classification" and are assigned "program plans." (Docket 67, Ex. A, at 4.) These plans outline the various activities in which the inmates will participate during

---

[6] Section 552(a)(2)(A)-(C) requires that each federal agency make publicly available: "(A) final opinions . . . , as well as orders, made in the adjudication of cases; (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; [and] (C) administrative staff manuals and instructions to staff that affect a member of the public."

[7] As discussed above, Plaintiffs have grouped the Documents at issue into 13 categories. One of those categories is "program review reports." (<u>See</u> Second Am. Compl. ¶51.) The 13 categories also include written "decisions made by the Utilization Review Committee . . . concerning the provision of medical care to inmates" and "written decisions made by [a] Hearing Administrator regarding an inmate's placement in a control unit." (<u>See id.</u>) Although Defendants discuss only these three categories in this filing, most, if not all, of the remaining categories also fall outside the scope of § 552(a)(2)(A)-(C).

their incarceration.  (See id.)  At "program reviews," prison officials evaluate the inmates' "program plans."  (See id. at 5.)  Following the "initial classification" and the "program reviews," prison officials create "program review reports" to document their findings and recommendations.  (See id. at 4-5, Attachments A & B.)  Those "program review reports" clearly fall outside the scope of § 552(a)(2)(A)-(C).  They are not "opinions" issued following the "adjudication" of a "case," and do not contain "statements of policy" or "instructions to staff."

- **Written Decisions Made By the Utilization Review Committee (the "URC") Concerning the Provision of Medical Care to Inmates.**  The URC, which is chaired by a Clinical Director, reviews matters relating to inmates raised by health-care providers, including the need for medical, surgical or dental procedures.  (Docket 67, Allen Decl., at ¶¶4-6; Docket 67, Ex. B, at 6-8.)[8]  The members of the URC make recommendations as to whether specific medical care should be provided.  (Docket 67, Ex. B, at 7.)  The Clinical Director then makes the final decision regarding the provision of medical care, and notifies the relevant inmate in writing of his decision.  (Id.)  Those written decisions also clearly fall outside the scope of § 552(a)(2)(A)-(C).

- **Written Decisions Made By a Hearing Administrator Regarding Placement in a Control Unit.**  Once a hearing administrator makes a decision as to whether an inmate should be placed in a control unit, the hearing administrator's decision is immediately forwarded to an Executive Panel, and that Panel makes a final decision as to whether placement in a control unit is warranted.  See 28 C.F.R. §§ 541.44, 541.45.  Thus, any decision by a hearing administrator is plainly not a "final opinion[]."  See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184-88 (1975) (holding that Regional Board Reports were not "final opinions" because the Regional Boards lacked final decision-making authority).  Nor is such a decision "made in the adjudication of [a] case[]," a "statement[] of policy" or an "instruction[] to staff."

Second, even if the BOP is in violation of § 552(a)(2)(A)-(C) and its obligation to publish (and, as stated above, it is not), Plaintiffs cannot use the APA or a writ of mandamus as a means to force the BOP to comply with that statutory provision and publish the Documents.[9]  This argument is similar to the argument set forth above with respect to the PRA.

---

[8] Exhibit B to Docket 67 contains excerpts from the BOP's Program Statement for "Patient Care."  The entire Program Statement is available at http://www.bop.gov/DataSource/execute/dsPolicyLoc.

[9] The D.C. Circuit has twice declined to opine on whether sources of law other than FOIA "might authorize additional remedial orders in FOIA cases" arising under § 552(a).  Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 610 & n.4 (D.C. Cir. 1997); see Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996); but see

7

To remedy violations of FOIA, Congress included in the statute a remedial provision pursuant to which courts may "enjoin [an] agency from withholding agency records and [] order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (emphasis added). However, Congress did not provide courts with the power to order the publication of documents. See Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996); see also Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 610 (D.C. Cir. 1997). In fact, the D.C. Circuit has observed that Congress intentionally withheld that power from the courts: "While it might seem strange for Congress to command agencies to 'currently publish' or 'promptly publish' documents, without in the same statute providing courts with power to order publication, we think that is exactly what Congress intended." Kennecott, 88 F.3d at 1202-03.

Although Congress withheld from courts the power to order the publication of documents, it did include within FOIA an alternative means of encouraging agencies to fulfill their obligation to publish. Section 552(a)(2) provides that the materials that fall within its scope "may be relied on, used, or cited as precedent by an agency against a party . . . only if—(i) [the materials have] been indexed and either made available or published as provided by [§ 552(a)(2)]; or (ii) the party has actual and timely notice of the terms thereof." Congress thus gave agencies a powerful incentive to fulfill their obligation to publish, and it also gave parties against whom agencies seek to use unpublished materials a "failure-to-publish" defense.

Given Congress's decision to intentionally withhold from courts the power to order the publication of documents under FOIA, and the fact that it provided a remedy to those adversely

---

Commonwealth of Pa. Dep't of Public Welfare v. U.S. Dep't of Health & Human Servs., No. 99-175, 2001 U.S. Dist. LEXIS 3492, at *28 (W.D. Pa. Feb. 7, 2001) (finding that the APA gave the court the authority to order the publication of an index pursuant to § 552(a)(2)).

8

affected by an agency's failure to publish (i.e., a "failure-to-publish" defense), Plaintiffs should not be permitted to use the APA or a writ of mandamus to force the BOP to rectify its alleged deficiencies under FOIA and publish the Documents on its public website.  See Karahalios, 489 U.S. at 533 ("It is . . . an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies."); Assassination Archives, 43 F.3d at 1544 (same).  Had Congress intended for courts to issue orders requiring agencies to comply with their obligation to publish, it could easily have given them the power to do so.  The fact that it chose not to give courts that power and that it provided an alternative means to encourage agencies to comply with their obligation to publish is strong evidence that it did not intend for courts to issue such orders, whether pursuant to FOIA, the APA or otherwise.

      2.      Plaintiffs Cannot Compel the BOP to Maintain Electronic Versions of Its Records.

Plaintiffs also cannot obtain an order from the Court pursuant to the APA or a writ of mandamus requiring the BOP to rectify its alleged deficiencies under § 552(a)(3)(B) and maintain electronic copies of its records.  For the reasons stated above (see supra at 7-9), Plaintiffs cannot use the APA or a writ of mandamus as a means to force the BOP to comply with its obligations under § 552(a)(3)(B).  Moreover, § 552(a)(3)(B) does not obligate the BOP to maintain its records in electronic form.  Rather, § 552(a)(3)(B) requires only that the BOP "make reasonable efforts to maintain its records in forms or formats that are reproducible."  There can be no question that the records the BOP maintains in paper (rather than electronic) form are "maintain[ed] . . . in forms or formats that are reproducible."  Id.; see Landmark Legal Foundation v. Envtl. Prot. Agency, 272 F. Supp. 2d 59, 63 (D.D.C. 2003) (finding that "paper

copies of . . . emails" were "'readily reproducible'" since they "could . . . be easily duplicated on a copy machine").

## **CONCLUSION**

For the reasons set forth above, as well as for the reasons set forth in the memoranda of law Defendants have previously submitted in support of their motion to dismiss or for summary judgment and in opposition to Plaintiffs' motion for summary judgment, Defendants respectfully request that the Court DENY Plaintiffs' motion for summary judgment as to Counts 8, 11 and 14. Defendants further respectfully request that the Court DISMISS the claims asserted in Counts 11 and 14.

Dated: January 9, 2008               Respectfully submitted,


                                     _____/s/_____
                                     JEFFREY A. TAYLOR, D.C. BAR # 498610
                                     United States Attorney

                                     _____/s/_____
                                     RUDOLPH CONTRERAS, D.C. BAR #434122
                                     Assistant United States Attorney

                                     _____/s/_____
                                     CHRISTOPHER B. HARWOOD
                                     Assistant United States Attorney
                                     555 Fourth St., N.W.
                                     Washington, D.C. 20530
                                     Phone: (202) 307-0372
                                     Fax: (202) 514-8780
                                     Christopher.Harwood@usdoj.gov

**Of Counsel:**

Oliver M. Lewis, Esq.
U.S. Department of State
Washington, D.C.

Wanda Hunt, Esq.
Delaine Martin Hill, Esq.
Bureau of Prisons
Washington, D.C.

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2008, I caused a copy of the foregoing to be served via first class prepaid postage as follows:

**BRANDON C. SAMPLE**
#33949-037
P.O. Box 9300
Texarkana, Texas 75505

**BERNARD SHAW**
#59469-004
FSL Jesup
2680 Highway 301 South
Jesup, Georgia 31599

                                                      /s/
                                      Christopher B. Harwood