RECEIVED

FEB 2 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, ET AL.,        )

v.                             )        06-715 (PLF)

FEDERAL BUREAU OF PRISONS, ET AL.    )

## PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT ON COUNT ONE

In accordance with Fed.R.Civ.P. 56, the undersigned Plaintiffs, Brandon Sample and Bernard Shaw, respectfully request summary judgment on Count One of their Second Amended Complaint. This amended motion is being submitted in addition to, not in lieu of, Plaintiffs' original Motion for Summary Judgment.

Respectfully submitted,

Brandon Sample #33949-037
Federal Prison Camp
P.O. BOX 9300
Texarkana, Texas 75505


Bernard Shaw #59469-004
Federal Satellite Low
2680 Highway 301 South
Jesup, Georgia 31599

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, ET AL.,            )

v.                                 )        06-715 (PLF)

FEDERAL BUREAU OF PRISONS, ET AL.  )

## AMENDED STATEMENT OF MATERIAL FACTS TO WHICH
## THERE EXISTS NO GENUINE ISSUE AS TO COUNT ONE

In accordance with Local Civil Rule 7(h), the undersigned Plaintiffs, Brandon Sample and Bernard Shaw, respectfully submit the following Amended Statement of Material Facts to Which There Exist No Genuine Issue as to Count One.

1.    The Plaintiffs are federal prisoners currently incarcerated in Texarkana, Texas and Jesup, Georgia. Count One of their Second Amended Complaint alleges that the Federal Bureau of Prisons' ("BOP") push "5" requirement for domestic prepaid calls over its Inmate Telephone System II ("ITS-II") violates the Administrative Procedures Act ("APA") and the First Amendment.

2.    The push "5" requirement governs the acceptance of incoming calls from inmates. Amended Decl. of Michael Atwood ¶ 4. When an inmate makes a call, the call recipient is informed that the call is coming from a federal prison and the name of the inmate is provided. Id. at ¶ 5. Call recipients are informed that the call is prepaid and they will not be charged for the call. Id. If the call recipient does not wish to accept the call he/she may hang up and the call will be disconnected. Id. The only means of accepting a call from an inmate is for the call recipient to push the number "5" on his or her telephone. Id.

The inmate will then be connected and the call may commence. Id. To block future calls, the call recipient has the option of pushing the number "7" on their telephone. Id. All future calls from the inmate will then be blocked.

3.   The push "5" requirement only applies to domestic calls made in the United States and its territories. Decl. of Atwood ¶ 5. Call recipients in foreign countries were previously required to push "5" on their telephone to receive calls from an inmate, but this restriction was removed due to language barriers and lack of compatability with foreign telephone systems. Id.

4.   Prior to the implementation of the push "5" requirement, intended call recipients, other than a member of an inmate's immediate family or those persons already approved for the inmate's visiting list, were notified via mail that their number had been placed on an inmate's telephone list. Washington v. Reno, 35 F.3d 1093, 1098 (6th Cir. 1994); 28 C.F.R § 540.101(a)(2). If a potential call recipient desired to be deleted from an inmate's approved telephone list, "a simple written request to the Bureau ... accomplished that result." Washington, at 1098 (alterations added).

5.   The Plaintiffs in this case have attempted to make domestic prepaid calls over the ITS-II to clerks of court, businesses, friends, family members, government agencies, and other called parties who utilize an Automated Telephone Answering System ("ATAS"). ATAS' are, however, incapable of pushing "5" to accept calls from the Plaintiffs. Decl. of Sample ¶ 3; Decl. of

2

Shaw ¶ 1.  As a result, Plaintiffs have been deprived of the opportunity to communicate telephonically with domestic prepaid called parties who use an ATAS.  Id.

Respectfully submitted,

Brandon Sample #33949-037
Federal Prison Camp
P.O. BOX 9300
Texarkana, Texas 75505


Bernard Shaw #59469-004
Federal Satellite Low
2680 Highway 301 South
Jesup, Georgia 31599

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, ET AL.,           )

v.                                )        06-715 (PLF)

FEDERAL BUREAU OF PRISONS, ET AL.  )

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT ON COUNT ONE

In accordance with Fed.R.Civ.P. 56, the undersigned Plaintiffs, Brandon Sample and Bernard Shaw, respectfully request summary judgment on Count One of their Second Amended Complaint.

**Background**

The Plaintiffs are federal prisoners currently incarcerated in Texarkana, Texas and Jesup, Georgia. Count One of their Second Amended Complaint alleges that the Federal Bureau of Prisons' ("BOP") push "5" requirement for domestic prepaid calls over its Inmate Telephone System II ("ITS-II") violates the Administrative Procedures Act ("APA") and the First Amendment.

The push "5" requirement governs the acceptance of incoming calls from inmates. Amended Decl. of Michael Atwood ¶ 4. When an inmate makes a call, the call recipient is informed that the call is coming from a federal prison and the name of the inmate is provided. Id. at ¶ 5. Call recipients are informed that the call is prepaid and they will not be charged for the call. Id. If the call recipient does not wish to accept the call he/she may hang up and the call will be disconnected. Id. The only means of accepting a call from an inmate is for the call

recipient to push the number "5" on his or her telephone. <u>Id.</u>
The inmate will then be connected and the call may commence.
<u>Id.</u> To block future calls, the call recipient has the option of
pushing the number "7" on their telephone. <u>Id.</u> All future
calls from the inmate will then be blocked.

The push "5" requirement only applies to domestic calls
made in the United States and its territories. Decl. of Atwood
¶ 5. Call recipients in foreign countries were previously
required to push "5" on their telephone to receive calls from an
inmate, but this restriction was removed due to language
barriers and lack of compatability with foreign telephone
systems. <u>Id.</u>

Prior to the implementation of the push "5" requirement,
intended call recipients, other than a member of an inmate's
immediate family or those persons already approved for the
inmate's visiting list, were notified via mail that their number
had been placed on an inmate's telephone list. <u>Washington v.</u>
<u>Reno</u>, 35 F.3d 1093, 1098 (6th Cir. 1994); 28 C.F.R
§ 540.101(a)(2). If a potential call recipient desired to be
deleted from an inmate's approved telephone list, "a simple
written request to the Bureau ... accomplished that result."
<u>Washington</u>, at 1098 (alterations added).

The Plaintiffs in this case have attempted to make domestic
prepaid calls over the ITS-II to clerks of court, businesses,
friends, family members, government agencies, and other called
parties who utilize an Automated Telephone Answering System
("ATAS"). ATAS' are, however, incapable of pushing "5" to

accept calls from the Plaintiffs.  Decl. of Sample ¶ 3; Decl. of Shaw ¶ 1.  As a result, Plaintiffs have been deprived of the opportunity to communicate telephonically with domestic prepaid called parties who use an ATAS.  Id.

**Standard of Review**

Summary judgment is appropriate for the moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or other declarations, if any, show that there is no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law.  Sample v. Lappin, 424 F.Supp.2d 187, 191 (D.D.C. 2006).  The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Id.  A material fact is one "that might affect the outcome of the suit under the governing law."  Id.  When evaluating a summary judgment motion, the court does not make credibility determinations, weigh the evidence, or draw inferences from the facts found; those are jury determinations, not those of a judge.  Id.  Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or documentary evidence to the contrary.  Id. at 191.  The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  Id.

3

**Argument**

    (i)   The Push "5" Requirement Violates The APA

    Plaintiffs contend that the push "5" requirement violates the APA's notice-and-comment rulemaking requirements for two reasons (1) the push "5" requirement repudiates 28 C.F.R. § 540.101(a)(2)'s written notice requirements in favor of a vocal equivalent; and (2) the push "5" requirement is a significant departure from past agency interpretation and practice.

    Plaintiffs first theory of relief is premised on the principle that "if a second rule repudiates or is irreconcilable with [a prior legislative rule], the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." American Min. Congress v. MSHA, 995 F.2d 1106, 1109 (D.C. Cir. 1993) (alterations in original, internal quotations omitted). Here, the push "5" requirement repudiates 28 C.F.R. § 540.101(a)(2). Under § 540.101(a)(2):

> Except as provided in paragraph (a)(3) of this section, telephone numbers requested by an inmate ordinarily will be placed on the inmate's telephone list. When an inmate requests placement of numbers for persons other than for immediate family or those persons already approved for the inmate's visiting list, staff ordinarily will notify those persons in writing that their numbers have been placed on the inmate's telephone list. The notice advises the recipient that the recipient's number will be removed from the list if the recipient makes a written request to the institution, or upon written request of the inmate, or as provided in paragraph (a)(3) of this section.

28 C.F.R. § 540.101(a)(2). With the implementation of the push "5" requirement, though, the written notice requirement has been abandoned. See Docket Entry 39-3 at 9, 12 ("Current procedures for institutions where ITS-II has been implemented no longer require the notice letter, as the called party has the capability to deny and/or block further telephone calls from the inmate ... The ITS-II system capability eliminates the need for notifying a recipient in writing of the recipient's option of having his or her name on an inmate's telephone list"). However, BOP cannot repudiate the written notice requirements of § 540.101(a)(2) in favor of a vocal equivalent--the push "5" requirement--without first conducting notice-and-comment rulemaking. American Min., at 1109. Accordingly, the push "5" requirement should be struck down as violating the APA.

Nevertheless, if the Court were to reject Plaintiffs' first theory of relief, there still remains whether the push "5" requirement constitutes a significant departure from past agency interpretation and practice. Paralyzed Veterans of America v. D.C. Arena L.P., 117 F.3d 579, 586 (D.C. Cir. 1997) ("[o]nce an agency has given its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking"); Shell Offshore Inc. v. Babbitt, 238 F.3d 622, 630 (5th Cir. 2001) ("If a new agency policy represents a significant departure from long established and consistent practice that substantially affects the regulated industry, the new policy is a new substantive rule and the agency is obliged, under the APA, to submit the change for notice and comment").

5

Here, is undisputed that the prior to the implementation of the ITS-II, there was no push "5" requirement. During this time, inmates were able to communicate telephonically with prepaid domestic called parties regardless of whether their calls were answered by an ATAS. Since implementation of the push "5" requirement, though, Plaintiffs have been deprived of the opportunity to communicate telephonically with deomestic prepaid called parties who use an ATAS. Decl. of Sample ¶ 3; Decl. of Shaw ¶ 1.

This restriction significantly hampers the Plaintiffs ability to communicate with friends, family, the news media, government officials, and other called parties who use an ATAS. Decl. of Sample ¶ 3; Decl. of Shaw ¶ 1, 3; Decl. of Perry Orlando ¶ 2. For example, as a result of the push "5" requirement, Plaintiff Sample has been unable to speak with officials from (1) the Dept. of Justice Inspector General's Office regarding misconduct by prison officials; (2) the Office of Management and Budget concerning the BOP's failure to implement provisions of the E-Government Act of 2002; and (3) the BOP's FOIA section in Washington, DC regarding Sample's FOIA requests. Decl. of Sample ¶ 3.

Plantiffs inability to communicate telephonically with certain persons, businesses, and government agencies, combined with BOP's about face from permitting direct dial calls to instituting the push "5" requirement is a significant departure from past BOP interpretation and practice such that it should have been submitted for notice-and-comment before its adoption.

6

Accordingly, the Court should set-aside the push "5" requirement as its promulgation violated the APA.

    (ii) <u>The Push "5" Requirement Violates The First Amendment</u>

In the alternative to their APA claims, Plaintiffs contend that the push "5" requirement violates the First Amendment. According to Plaintiffs, the push "5" requirement is an impermissible restriction on their means of communicating with persons outside prison walls.

In their original Motion for Summary Judgment, Plaintiffs argued that <u>Turner v. Safley</u>, 482 U.S. 78 (1987) controlled the relevant constitutional inquiry. Plaintiffs, however, no longer believe this to be the case. Rather, because the telephone regulation at issue affects communication <u>outside</u> of prison, <u>Procunier v. Martinez</u>, 416 U.S. 396 (1974) controls. Under <u>Martinez</u>, the challenged regulation must further (1) "an important or substantial governmental interest unrelated to the suppression of expression" and (2) the limitation on First Amendment freedoms must be "no greater than is necessary or essential to the protection of the particular governmental interest involved." <u>Martinez</u>, 416 U.S. at 413; <u>Washington</u>, 35 F.3d at 1100 n.8 (reserving judgment on whether <u>Turner</u> or <u>Martinez</u> applied in a similar challenge to the BOP's telephone regulations).

    (a) <u>Calls To The General Public</u>

Concerning <u>Martinez</u>' first prong, Plaintiffs submit that the push "5" requirement does not further "an important or substantial interest unrelated to the suppression of expression." <u>Martinez</u>, at 413. Rather, for the reasons

7

described in the attached declaration of Brandon Sample, the push "5" requirement has nothing to do with protecting the public from unwanted calls from inmates. See Decl. of Sample at ¶¶ 7-11. And, even if the push "5" requirement did further an important or substantial interest unrelated to the suppression of expression, the restriction is greater than is necessary or essential to the protection of the public.

For years, BOP was able to protect the public from unwanted calls from inmates by using its written notification procedures. Indeed, BOP remains able to protect the public from unwanted international calls without either the push "5" requirement or its prior written notice procedures. BOP could simply discontinue the push "5" requirement for domestic calls as well, or revert back to its written notice procedures. Decl. of Sample ¶ 14. Alternatively, BOP could establish a do-not-call registry similar to that used by the Federal Trade Commission for preventing unwanted calls from telemarketers, or allow calls to to connect automatically after the initial "this call is from a federal prison" announcement. Decl. of Sample ¶ 14.

      (b)   Calls To The Government

As for calls to the government, the push "5" requirement is directly related to the suppression of expression. BOP knows that almost all government agencies use an ATAS. Nevertheless, BOP refuses to eliminate the push "5" requirement for calls to such numbers in order to inhibit prisoner communication with government officials. Decl. of Sample ¶ 13. BOP is aware that government agencies would be more responsive to inmate needs,

8

concerns, and allegations of misconduct if these sort of things could be communicated telephonically. Id. However, BOP does not want prying eyes into its business--it wants to suppress this kind of expression. Id. And, even assuming the restriction was important and unrelated to the suppression of expression, it is still greater than necessary to achieve whatever purported interest BOP may have. As described above, ready alternatives exist.

## Conclusion

Based on the foregoing, Plaintiffs respectfully request the Court enter summary judgment in their favor on Count One of their Second Amended Complaint.

Respectfully submitted,

Brandon Sample #33949-037
Federal Prison Camp
P.O. BOX 9300
Texarkana, Texas 75505

Bernard Shaw #59469-004
Federal Satellite Low
2680 Highway 301 South
Jesup, Georgia 31599

9