RECEIVED
FEB 2 5 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, ET AL.,           )
                                  )
v.                                )    06-715 (PLF)
                                  )
FEDERAL BUREAU OF PRISONS, ET AL. )

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
PLAINTIFF'S REPLY ON THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Brandon Sample ("Sample") and Bernard Shaw ("Shaw") offer the following reply to Defendant Federal Bureau of Prisons' ("BOP") Response to Plaintiff's Reply on Their Motion for Summary Judgment. Docket Entry 73-3.

<u>Count Eight</u>

With respect to Count Eight, BOP argues that (1) it is exempt from the requirements of the Paperwork Reduction Act ("PRA"); (2) Plaintiffs have no private cause of action under the PRA; and (3) Plaintiffs cannot challenge BOP's failure to comply with the PRA under the Administrative Procedures Act ("APA"). Docket Entry 73-3 at 3-5.

First of all, the Court should decline to reach the merits of the BOP's arguments regarding Count Eight until the Office of Management and Budget ("OMB") decides whether BOP is exempt from the PRA. The OMB, as BOP acknowledges, is assigned primary oversight responsibility for the PRA. It would be a waste of judicial resources to resolve this matter now given OMB's pending determination, and the likelihood that Plaintiffs will respect OMB's determination (barring it is not plainly unreasonable). Accordingly, the Court should defer ruling on

the merits of Count Eight until BOP's PRA compliance review is completed. However, in the event the Court decided not to wait, BOP's arguments regarding Count Eight should nonetheless be rejected.

BOP argues that it is exempt from the PRA. In support of this, BOP cites to the legislative history of the PRA and 44 U.S.C. § 3518(c)(1)(A) which exempts collections of information "during the conduct of a Federal criminal investigation or prosecution, or during the disposition of a particular criminal matter." 44 U.S.C. § 3518(c)(1)(A). According to BOP, collections of information by correctional authorities fall within the PRA's "disposition of a ... criminal matter" exception.

In general, Plaintiffs admit that the PRA provides a limited exemption for collections of information by the BOP. However, the exemption is not to be applied wholecloth. Rather, 44 U.S.C. § 3518(c)(1)(A) exempts collections of information only during the "disposition of a <u>particular</u> criminal matter." 44 U.S.C. § 3518(c)(1)(A) (emphasis added). BOP conveniently omits the word "particular" in discussing the exemption. Moreover, § 3518(c)(2) provides that "[t]his subchapter applies to collection of information during the conduct of general investigations ... undertaken with reference to a category of individuals or entities such as a class of licensees or an entire industry." 44 U.S.C. § 3518(c)(2). Plaintiffs contend that the documents subject to Count Eight do not involve the disposition of a "particular" criminal matter,

2

or fall within the exception to the exemption for collections of information during the conduct of general investigations. The Court should therefore reject BOP's argument that it is not subject to the PRA at all.

Finally, BOP contends that Plaintiffs do not have a cause of action under the APA to enforce the PRA because the PRA already provides a remedy. BOP is incorrect. In Bennett v. Spear the Supreme Court held that the "APA provides an independent cause of action absent an express intent for an exclusive statutory remedy." Bennett v. Spear, 520 U.S. 154, 162 (1997). The PRA does not contain an express congressional intent to preclude a cause of action under the APA. Accordingly, the APA remains available to enforce the PRA. The only restriction on the use of the APA to enforce the PRA, or another is statute, is whether the statute sought to be enforced via the APA provides an "adequate remedy." Id. Plaintiffs contend that the PRA does not. Indeed, BOP has yet to explain, what, if any, "adequate remedy" exists in the PRA to ensure its enforcement. Accordingly, based on this and the foregoing, the Court should deny BOP's motion to dismiss Count Eight.

Count Eleven

In light of the BOP's recent disclosure of the remaining requested records related to Count 11, this count should be dismissed as moot.

Count Fourteen

BOP contends that even if Plaintiffs have standing to

bring their claims in Count 14, they still cannot obtain the relief they seek because (1) "most, if not all, of the [d]ocuments fall outside the scope of 5 U.S.C. § 552(a)(2)(A)-(C);" and (2) the APA cannot be used to force the BOP to comply with FOIA. Docket Entry 73-3 at 6.

First, BOP provides three examples of documents from Count 14 that it contends do not fall within § 552(a)(2)(A)-(C): Program Review Reports, Written Decisions Made By the Utilization Review Committee ("URC") Concerning the Provision of Medical Care to Inmates, and Written Decisions Made By a Hearing Administrator Regarding Placement in a Control Unit. Id. at 6-7.

(a) Program Review Reports

Plaintiffs dispute BOP's assertion that Program Review Reports do not fall within § 552(a)(2)(A)-(C). A Program Review is a formal meeting between an inmate and their "unit team." Decl. of Sample ¶ 1. The unit team is comprised of an inmate's Unit Manager, Case Manager, and Correctional Counselor. Id. Inmates are often considered for job changes, custody level reductions, transfers, and furloughs during these meetings. Id. In considering whether to grant an inmate a custody level reduction, etc ... inmates are allowed to "plead their case," staff review the inmate's Central File, consult with each other, and then make a determination. The grant or denial of an inmate's request for a job change, custody level reduction, furlough, etc ... is recorded in the Program Review Report. Id. Such a denial constitutes an "order" made in the

4

"adjudication" of a "case." 5 U.S.C. § 552(a)(2)(A). The term "order" is defined as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6). Clearly then, the denial of an inmate's request for a reduction in custody level, for instance, is an "order." Further, such a denial constitutes an "adjudication" as it entails "agency process for the formulation of an order." 5 U.S.C. § 551(7). Finally, the Program Review meeting and resultant Program Review Report stem from a review of the inmate's "case." Accordingly, Program Review Reports are required to be made available via computer telecommunication means under § 552(a)(2)(A).

    (b) <u>Written Decisions By The URC</u>

The URC reviews an inmate's case to determine whether to provide certain medical treatment. Decl. of Sample ¶ 2. The institution Clinical Director is the head of the URC and is the final determining authority. See Docket Entry 73-3 at 7. The grant or denial of medical care by the URC is an "order" made in the "adjudication" of a "case." When the URC approves a medical procedure, medical staff are instructed to take necessary steps in order to effectuate the approved treatment. Decl. of Sample ¶ 2. Such instructions are "instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(C).

5

(c) <u>Decisions By The Hearing Administrator</u>

Plaintiffs concede that decisions by the Hearing Administrator are not within the ambit of § 552(a)(2)(A)-(C).

Second, BOP argues that even if BOP is in violation of § 552(a)(2)(A)-(C), Plaintiffs have no cause of action under the APA to enforce these provisions. BOP is wrong. As with Plaintiff's PRA claims, the APA provides an independent cause of action to enforce § 552(a)(2)(A)-(C). <u>Bennett</u>, 520 U.S. at 162. Plaintiffs recognize that FOIA contains a so-called "failure-to-publish" defense, but this is not an "adequate remedy" for BOP's failure to make records available via computer telecommunication means. All the "failure-to-publish" defense does is prevent an agency from using records described in § 552(a)(2)(A)-(C) against a person. And then, the defense only applies if the person did not have "actual and timely notice of the terms thereof." 5 U.S.C. § 552(a)(2)(E)(ii). The "failure-to-publish" defense does not enhance public awareness of an agency's operations--unlike disclosure via computer telecommunication means, nor is it compatible with the dominant objective of the Act, "disclosure, not secrecy." Open Government Act of 2007 § 2(1)(C) and (3). Thus, the "failure-to-publish" defense is not an "adequate remedy" for BOP's failure to make available the requested records via computer telecommunication means.[1] Accordingly, Plaintiffs APA claim seeking enforcement of FOIA should be

---

1     BOP's reliance on <u>Assassination Archives & Research Ctr. v. Dep't of Justice</u>, 43 F.3d 1542, 1544 (D.C. Cir. 1995) for the proposition that the APA cannot provide relief for

6

permitted to proceed.

Lastly, BOP argues that Plaintiffs cannot use the APA to force the BOP to comply with § 552(a)(3)(B). Docket Entry 73-3 at 9. However, for the reasons discussed above, the APA is available to enforce this and other provisions of FOIA. Finally, BOP argues that § 552(a)(3)(B) does not obligate BOP to maintain its records in electronic format. According to BOP, § 552(a)(3)(B) "requires only that the BOP 'make reasonable efforts to maintain its records in forms or formats that are reproducible." Id.

BOP is mistaken that it is not required to maintain its records in electronic format. Under FOIA, the term 'record' includes "any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format." 5 U.S.C. § 552(f)(2)(A) (2008). Currently, BOP creates most of

---

1  (continued)

violations of FOIA is misplaced. The plaintiff in Assassination Archives argued for an implied private right of action under the JFK Act. Id. at 1544. According to the court, no private right of action existed because "[w]here, as here, the statute expressly provides a remedy, it is 'an 'elemental cannon' of statutory construction that ... courts must be especially reluctant to provide additional remedies." Id. at 1544 (quotations in original). No separate claim under the APA was presented in Assassination Archives, and even if it had been, it would not have been allowed to proceed as the JFK Act clearly provided an "adequate remedy." Id. at 1544. The Plaintiffs in the instant case, on the other hand, are not arguing for a private right action under FOIA. Instead, this case presents an independent cause of action under the APA as approved by the Court in Bennett. This cause of action is permitted because, as discussed above, FOIA does not provide an adequate remedy for BOP's failure to make available the requested records via computer telecommunication means.

7

its records on a computer, but does not maintain them in that format. Rather, the electronic copy is destroyed after the record is reduced to paper form. Later, when faced with a request for these same records in electronic form, BOP frequently claims that the records are not "readily reproducible" in electronic format. Thus, BOP's failure to maintain its records that are created, but not maintained, in electronic form violates § 552(a)(3)(B). <u>See</u> Plaintiff's Motion for Summary Judgment at 26.

**Conclusion**

Based on the foregoing, the Court should defer ruling on the merits of Count Eight until BOP's compliance review is finished, Count 11 should be dismissed as moot, and Plaintiff's Motion for Summary Judgment on Count 14 should be granted, except as to disclosure of decisions of the Hearing Administrator.

Respectfully submitted,

*/s/ Brandon Sample*
Brandon Sample #33949-037
Federal Prison Camp
P.O. BOX 9300
Texarkana, Texas 75505


*/s/ Bernard Shaw*
Bernard Shaw #59469-004
Federal Satellite Low
2680 Highway 301 South
Jesup, Georgia 31599

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, ET AL.,           )
v.                                )   06-715 (PLF)
FEDERAL BUREAU OF PRISONS, ET AL. )

### DECLARATION OF BRANDON SAMPLE

I the undersigned, Brandon Sample, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1. A Program Review is a formal meeting between an inmate and their "unit team." The unit team is comprised of an inmate's Unit Manager, Case Manager, and Correctional Counselor. Inmates are often considered for job changes, custody level reductions, transfers, and furloughs during these meetings. In considering whether to grant an inmate a custody level reduction, etc ... inmates are allowed to so to speak "plead their case," staff review the inmates Central File, consult with each other, and then make a decision. The grant or denial of an inmate's request for a job change, custody level reduction, furlough, etc ... is frequently recorded in the Program Review Report.

2. The Utilization Review Committee ("URC") reviews an inmate's case to determine whether to provide certain medical treatment. The institution Clinical Director is the head of the URC and is the final determining authority. When the URC approves a medical procedure, medical staff are instructed to effectuate the approved treatment.

Signed this 12th day of February, 2008.

_____
Brandon Sample

2