RECEIVED
FEB 2 5 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, ET AL.,           )
v.                                )   06-715 (PLF)
FEDERAL BUREAU OF PRISONS, ET AL. )

### PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT DISCOVERY

The undersigned Plaintiffs, Brandon Sample and Bernard Shaw, respectfully request leave to conduct discovery in support of their Amended Motion for Summary Judgment on Count One. Specifically, Plaintiffs seek to (1) take the deposition of Michael Atwood, Trust Fund Branch Administrator, (2) serve interrogatories on the Bureau of Prisons ("BOP"), (3) serve document requests on the BOP, (4) subpoena documents from the Federal Trade Commission ("FTC") related to the cost, management, and implementation of the do-not-call registry, and (5) take the deposition of a designated official from the FTC regarding the cost, maintenance, and implementation of its do-not-call registry. All of this discovery is needed in order to create genuine issues of material fact regarding Count One as set forth in the attached declaration of Brandon Sample. To date, Plaintiffs have been unable to obtain this discovery because all of this information is within the control of the BOP and FTC. Further, all discovery has been suspended per the Court's September 26, 2007, protective order.

Respectfully submitted,

_Brandon Sample_
Brandon Sample #33949-037
Federal Prison Camp
P.O. BOX 9300
Texarkana, Texas 75505


Bernard Shaw #59469-004
Federal Satellite Low
2680 Highway 301 South
Jesup, Georgia 31599

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON SAMPLE, ET AL.,            )
v.                                 )        06-715 (PLF)
FEDERAL BUREAU OF PRISONS, ET AL.  )

### DECLARATION OF BRANDON SAMPLE

I the undersigned, Brandon Sample, declare under penalty perjury that the following is true and correct to the best of my knowledge and belief:

1. I recognize BOP's argument that the push "5" requirement helps protect the public from unwanted calls from inmates. But this is simply not the case. The push "5" requirement does not enable a call recipient to reject or block a call from an inmate. Instead, it is a call recipient's ability to hang up or push "7" that affords these protections. Amended Atwood Decl. ¶ 5.

2. According to Mr. Atwood, inmates would leave harassing or threatening messages on voicemail without the push "5" requirement. Amended Atwood Decl. ¶ 7. While this may be a possibility, there are other protections in place to ensure that this kind of behavior does not occur. For instance, all calls over the ITS are monitored and recorded. If an inmate were to leave a harassing or threatening message, they would be subject to inmate discipline, and possibly criminal charges as well. See 18 U.S.C. § 875.

3. Next, Mr. Atwood claims that without the push "5" requirement, "when going through an automated switchboard,

inmates would have the ability to input an extension ... and then contact persons in the general public without their consent to communicate." Amended Atwood Decl. ¶ 7. Once again, the potential for something like this occur is there, but it already exists with the push "5" requirement. For instance, I have made several calls to numbers that are answered by a switchboard. After the operator pushes "5," I give the extension or name of the person I'm trying to reach and am transferred. In such instances, what extension or name I provide to the operator is entirely up to me. If I wanted, I could ask to be transferred to someone other than the person I listed on my telephone list. The push "5" requirement does not protect against this kind of behavior. Rather, it is the possibility that an inmate might lose their phone privileges or receive other inmate discipline that keeps this from occurring.

4.  Mr. Atwood also claims that the push "5" requirement helps prevent "remote toll fraud." But the push "5" requirement does no such thing. As explained above, existing procedures already permit an inmate to communicate to a switchboard operator the party or extension they are trying to reach. If the extension or party's line is answered by voicemail, an inmate can hit "0" and be transferred back to the operator. When the call comes back to the operator, the operator does not know that the call originated from a federal prison. An inmate could then attempt to con the operator into giving them access to an outside line. None of this is likely to occur, though, for several reasons. One, an announcement stating "this call is from a federal

2

prison" is intermittently played during each call. Two, each call is recorded and monitored. Three, doing something like this is almost like three-way calling. BOP has software that detects unauthorized three-way calling. Frequently, an inmate's call will be disconnected, mid-call, if a three-way is attempted. The same would occur with an inmate trying to commit remote toll fraud. Four, each call is limited to 15 minutes in duration. Five, there is no benefit to an inmate trying to commit remote toll fraud as they would still be paying .23¢ a minute as long as his or her call is connected.

5. In fact, the best illustration why Mr. Atwood's concerns are irrational, arbitrary, and exaggerated is the total lack of a push "5" requirement for international calls. Despite the absence of a push "5" requirement for international calls, there has not been a problem with inmates leaving harassing voicemail messages, inmates trying to be transferred to unauthorized individuals, or inmates committing remote toll fraud. Furthermore, none of these things were a problem before the implementation of ITS II when both domestic and international calls were direct dial. With the deposition of Michael Atwood, interrogatories, and document requests, I will be able to prove each of the things described in ¶¶ 7-11 herein.

6. It is even more difficult to apply Mr. Atwood's "concerns" to calls to courts and government agencies. Entities of the federal government have a duty to be responsive to the citizenry, which includes federal prisoners. With the deposition of Atwood and service of interrogatories, I will be

3

able to prove that the push "5" requirement as applied to calls to government agencies is not supported by (i) an important or substantial government interest unrelated to the suppression of expression; (ii) a legitimate penological interest; (iii) the restriction is greater than is necessary or essential to the protection of any particular governmental interest that may be involved; and (iv) accommodation of my request to place direct dial calls to government agencies would not unduly burden correctional staff, resources, or inmates, and can be accommodated at de minimis cost to the BOP.

7. In particular, the deposition of Atwood will reveal, among other things, that BOP is using the push "5" requirement to inhibit prisoner communication with government agencies. BOP is aware that in this day and age, government agencies are more responsive to individual needs, concerns, and allegations of misconduct if communicated telephonically. However, BOP does not want prying eyes into its business. Further, the deposition of Atwood will reveal that BOP could accommodate my request to make direct dial calls to government agencies by merely eliminating the push "5" requirement for such calls. Since all such calls would be placed to government entities, there would be no need for BOP to revert to its prior written notice procedures as BOP has no legitimate governmental interest in restricting calls by prisoners to government agencies. Lastly, there would be little, if any, expense associated with permitting direct dial calls by prisoners to government agencies.

Case 1:06-cv-00715-PLF   Document 92   Filed 02/25/2008   Page 7 of 9

7. As for calls to the general public, the deposition of Atwood will reveal that the push "5" requirement is greater than necessary or essential to the protection of the general public from unwanted calls from inmates. For instance, the Atwood deposition will reveal that BOP could accommodate my desire to make direct dial calls domestically by either (i) reverting to its prior written notification procedures, or (ii) implementing an inmate do-not-call registry similar to the do-not-call registry used by the FTC to curtail unwanted calls from telemarketers to the general public.

8. As for the first method of accommodation, the deposition of Atwood and service of interrogatories will show that there would be no need to submit some 2,000,000 written notices to all approved numbers in BOP's ITS system as numbers belonging to members of an inmate's immediately family and those persons on the inmate's visiting list are exempt from the written notice requirements. See 28 C.F.R. § 540.101(a)(2). This would leave only a handful of numbers that would require written notice. And then, the written notice requirements could be waived in many of these cases if the call recipient has already been accepting calls from the inmate.

9. With respect to the costs associated with reverting to BOP's prior written notice procedures, I submit that the deposition of Atwood, service of interrogatories, and document requests will reveal that the written notice procedure is less expensive than BOP's push "5" requirement. This is because the costs associated with the written notice procedure entail only a

5

one-time postage cost of sending the notice and staff time to process letters from call recipients that do not wish to receive calls from inmates (which are very few). However, with the push "5" requirement, BOP is charged each time a call is answered, whether by voicemail, an answering machine, or the call recipient. The requested discovery will show that the cost of playing the push "5" announcement over and over greatly exceeds the negligible costs associated with the written notification procedures.

10. The other suggested alternative, the creation of an inmate do-not-call registry, would equally ensure the protection of the general public from unwanted calls from inmates. In fact, this alternative would allow international call recipients to also block their number from inmate calling, a feature currently unavailable with the push "5" requirement. Additionally, discovery in the form of depositions, interrogatories, and document requests to the BOP and the FTC will show that this alternative could be implemented at equal or less cost than the push "5" requirement.

I declare under penalty of perjury that the foregoing is true and correct to best of my information and belief. 28 U.S.C. § 1746.

Signed this 18th day of February, 2008.

_____
Brandon Sample

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served this 19th day of February, 2008, via first-class mail, postage prepaid, on the following:

Chistopher B. Harwood
Assistant U.S. Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530

Brandon Sample