UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
BRANDON C. SAMPLE, et al.,                          )
                                                    )
            Plaintiffs,                             )
                                                    )
            v.                                      )        Civil Action 06-0715 (PLF)
                                                    )
FEDERAL BUREAU OF PRISONS, et al.,                  )
                                                    )
            Defendants.                             )
_____)

## NOTICE OF CLARIFICATION

In this lawsuit, in Counts 2, 3 and 4, respectively, Plaintiffs are challenging:

- the Bureau of Prison's (the "BOP") initial enactment of a 15 cents per minute rate for long distance telephone calls over the inmate telephone system, and its subsequent increase of that rate to 17 cents per minute, 20 cents per minute and, most recently, 23 cents per minute (Count 2);

- the BOP's decision to limit the amount of time inmates may spend making telephone calls each month to 400 minutes in the months of November and December and 300 minutes in all other months (Count 3)[1]; and

- the BOP's decision to change the formula by which it determines the price of items sold within its commissaries (Count 4).[2]

(See Am. Compl. ¶¶17-29.)  Plaintiffs argue that each of the above actions was unlawful and

should be invalidated because each was undertaken without notice-and-comment rulemaking in

_____

[1] Prior to April 2001, the BOP did not place any monthly time limits on inmate telephone use.  (Atwood Decl. ¶9.)  In April 2001, the BOP adopted the policy described above.  (See id.) Citations in the form "(Atwood Decl. ¶__)" refer to the November 14, 2007 declaration of Michael Atwood, which is attached hereto as Exhibit 1.

[2] Prior to March 1, 2002, the BOP determined the price of items sold in its commissaries (other than items containing tobacco) by "divid[ing] the cost price by [0].8 (or 4/5) and round[ing] the result to the next highest nickel.  This created a roughly 25% mark-up from the cost price."  (Atwood Decl. ¶12.)  Since March 1, 2002, the BOP has determined the price of items sold in its commissaries (other than items containing tobacco) by "multiplying the cost price by 1.3 and round[ing the result] to the next highest nickel.  [This creates] . . . roughly . . . a 30% mark-up from the cost price."  (Id. at ¶13.)

violation of the Administrative Procedure Act (the "APA").  (See id.)  Plaintiffs are wrong.

None of the above actions required the BOP to engage in notice-and-comment rulemaking

because each produced a rule that is (or was) "interpretive" in nature.

In addition, in this lawsuit, in Counts 6 and 7, respectively, Plaintiffs also challenge:

- the BOP's decision to permit Plaintiff Brandon Sample to review—but to not otherwise "provide him with a copy of"—his pre-sentence report ("PSR") (Count 6); and

- the BOP's refusal to permit Plaintiff Sample to review a copy of another inmate's PSR (Count 7).

(See id. at ¶¶32-36.)  For the reasons set forth below, the BOP was entirely justified in refusing

to allow Plaintiff Sample to (1) obtain or otherwise possess his PSR, or (2) review another

inmate's PSR.

## COUNTS 2 AND 3

Counts 2 and 3 should be dismissed because the rules that resulted from the BOP's

decision to implement (and later revise) its long distance telephone calling rates and to limit the

amount of time inmates may use the telephone in a given month are (or were) not subject to the

APA's notice-and-comment rulemaking requirements.  That is because each of those rules—the

present incarnations of which are set forth in BOP Program Statements 4500.04 and 5264.08[3]—

is (or was) "interpretative" in nature.[4]  See 5 U.S.C. § 553(b)(A) (the APA's notice-and-

comment rulemaking requirements do not apply to, inter alia, "interpretive rules").

---

[3] All BOP Program Statements, including each of those referenced in this filing, can be found at http://www.bop.gov/DataSource/execute/dsPolicyLoc.  For the Court's convenience, the relevant portions of Program Statements 4500.04 and 5264.08 are attached hereto as exhibits 2 and 3, respectively.

[4] Although some of the challenged rules regarding long distance telephone calling rates have been superseded, for ease of reference, this brief will from now on refer to all of the challenged telephone-related rules in the present tense.

To determine whether the challenged telephone-related rules are "interpretive" within the meaning of 5 U.S.C. § 553(b)(A), this Court must analyze:

> (1) whether in the absence of the [challenged] rule[s] there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule[s] in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule[s] effectively amend[] a prior legislative rule.

Am. Mining Congress v. Mine Safety & Health Admin., 995 F.2d 1106, 1112 (D.C. Cir. 1993); see Kotz v. Lappin, 515 F. Supp. 2d 143, 151 (D.D.C. 2007). If the answer to each of the above questions is "no," then the rules are interpretative and are not subject to the APA's notice-and-comment rulemaking requirements. See id. Here, there can be no question that as to the challenged telephone-related rules, the answer to each of the above questions is "no."

- First, the legislative basis for the BOP to set long distance telephone calling rates and to enact monthly telephone use restrictions is found in 18 U.S.C. § 4042(a) and 28 C.F.R. § 540.100(a).[5] In the absence of the challenged telephone-related rules, the governing statute and applicable regulation, 18 U.S.C. § 4042(a) and 28 C.F.R. § 540.100(a), would provide the BOP with an adequate legislative basis to manage the inmate telephone system and to "impose" "limitations and conditions . . . upon an inmate's telephone privileges." 28 C.F.R. § 540.100(a). There can be no dispute that such "limitations and conditions" could include specified long distance telephone calling rates and a monthly limit on the amount of time each inmate may use the telephone.[6] See id.; see generally Health Ins. Ass'n of Am., Inc. v. Shalala, 23 F.3d 412, 423 (D.C. Cir. 1994) ("an interpretation of a statute does not become a

---

[5] In enacting 18 U.S.C. § 4042, Congress granted the BOP the broad authority to oversee the "management and regulation of all Federal penal and correctional institutions" and to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses." 18 U.S.C. § 4042(a)(1)-(2). Pursuant to that broad grant of authority, the BOP enacted 28 C.F.R. § 540.100(a), a regulation that both "extend[ed] telephone privileges to inmates" and provided the BOP with sweeping discretion to place limitations upon inmate telephone use: the BOP may "impose[]" "limitations and conditions . . . upon an inmate's telephone privileges to ensure that [those privileges] are consistent with other aspects of the Bureau's correctional management responsibilities." It is 18 U.S.C. § 4042(a) and 28 C.F.R. § 540.100(a) that the challenged telephone-related rules "interpret."

[6] Neither the governing statute, 18 U.S.C. § 4042, nor the applicable regulation, 28 C.F.R. § 540.100, nor (for that matter) any other regulation places any constraints upon the BOP's ability to set long distance telephone calling rates or to impose a monthly time limit on inmate telephone use.

legislative rule merely because 'it supplies crisper and more detailed lines than the authority being interpreted'"; "[a] rule may be interpretive even though it 'interprets' a vague statutory duty or right into a sharply delineated duty or right"); Nat'l Pharm. Alliance v. Henney, 47 F. Supp. 2d 37, 41 (D.D.C. 1999) (finding that a rule was not legislative where the governing provision "provides all the 'legislative basis' that is necessary for the agency's action").

- Second, the BOP did not publish the challenged telephone-related rules in the Code of Federal Regulations. It memorialized the rule setting a 300 or 400 minute limit on monthly telephone use in Program Statement 5264.08. (See Ex. 3 at 9.) And, it established its various long distance telephone calling rates informally pursuant to the procedures outlined in Program Statement 4500.04. (See Ex. 2 at Ch. 4554 ("The Chief, Trust Fund Branch[,] with the Executive Staff's concurrence, is to establish telephone costs.").) See generally Phillips v. Hawk, No. 98-5513, 1999 WL 325487, at *1 (D.C. Cir. Apr. 14, 1999) (observing that BOP "Program Statements . . . are 'internal agency guidelines' that are not 'subject to the rigors of the [APA], including public notice and comment'").

- Third, the BOP did not explicitly invoke its general legislative authority in issuing the relevant Program Statements or the challenged rules. (See, e.g., Ex. 2 at Ch. 4554; Ex. 3 at 9.)

- Finally, nothing found in the relevant Program Statements (or, for that matter, anywhere else, including the allegations of Plaintiffs' operative pleading) suggests that the challenged telephone-related rules amended prior legislative rules. See id. Prior to the implementation of the challenged rules, there was no legislative rule addressing either long distance telephone calling rates or the amount of time an inmate can spend on the telephone in a given month. In fact, prior to the implementation of the challenged rule regarding the amount of time an inmate can spend on the telephone in a given month, there was no rule at all regarding that issue, legislative or otherwise. (See Atwood Decl. ¶9.) See also Phillips & Green, M.D., P.A. v. Clark-Amaker, 992 F. Supp. 450, 454 (D.D.C. 1998) ("considering that the rule is a new rule, it may not, by definition, amend any previous legislative rule"). And, prior to the implementation of the current rule regarding long distance telephone calling rates, there were only prior interpretive rules on that issue.

In light of the above, the BOP's rules regarding long distance telephone calling rates and

monthly telephone use are clearly "interpretive."[7] As such, they are not subject to the APA's

notice-and-comment rulemaking requirements.

---

[7] The conclusion that the rules at issue are "interpretive" is strongly reinforced by the fact that they can be traced to BOP Program Statements. See Reno v. Koray, 515 U.S. 50, 61 (1995) (describing a BOP Program Statement as "akin to an 'interpretive rule' that 'do[es] not require

As a final matter, and notwithstanding Plaintiffs' belief to the contrary (see Am. Compl. ¶¶18, 23, 27), judicial decisions holding that an agency may not substantially change its interpretations of its own regulations without engaging in notice-and-comment rulemaking, see Shell Offshore Inc. v. Babbitt, 238 F.3d 622, 629 (5th Cir. 2001); Alaska Professional Hunters Ass'n, Inc. v. Federal Aviation Admin., 177 F.3d 1030, 1034 (D.C. Cir. 1999), are not implicated in this case. That is because the BOP has always interpreted the relevant regulation, 28 C.F.R. § 540.100(a), in precisely the same way—that is, as permitting it to impose "limitations" upon inmate telephone privileges to ensure that such privileges "are consistent with [its] other . . . correctional management responsibilities." 28 C.F.R. § 540.100(a). (See Atwood Decl. ¶¶8, 9.) Neither the BOP's incremental increases of its long distance telephone calling rate from 15 cents per minute to 23 cents per minute nor its implementation of a monthly time limit on inmate telephone use represents a new interpretation of 28 C.F.R. § 540.100(a). Rather, each action represents the application of the BOP's consistent interpretation of 28 C.F.R. § 540.100(a) to changed factual circumstances.[8] (See Atwood Decl. ¶8 (long distance telephone calling "rates must be periodically revised to ensure that the [inmate telephone system] is not exceeding its budgetary limitations"); id. at ¶9 (the BOP implemented limitations on the amount of time inmates may spend making telephone calls in a given month "to reduce staff and financial resources involved in monitoring inmate telephone calls").)

Moreover, a finding that the challenged rules are new interpretations of 28 C.F.R. § 540.100(a) would mean that the BOP would have to engage in the costly and time-consuming

---

notice and comment'"); see also Phillips, 1999 WL 325487, at *1; Jacks v. Crabtree, 114 F.3d 983, 985 n.1 (9th Cir. 1997).

[8] Furthermore, the above agency actions certainly do not represent "substantial[]" or "significant[]" changes to past agency practice. See Shell, 238 F.3d at 629; Alaska Professional Hunters Ass'n, Inc., 177 F.3d at 1034.

process of notice-and-comment rulemaking every time budgetary and other administrative

considerations lead it to: (1) increase (or, for that matter, decrease) its long distance telephone

calling rates, or (2) alter the amount of time inmates may use the telephone in a given month.

That simply cannot be the case.

## COUNT 4

Count 4 should be dismissed for precisely the same reasons as Counts 2 and 3: because

the BOP's modified rule regarding how it determines the price of goods sold within its

commissaries—which is set forth in BOP Program Statement 4500.04 (see Ex. 2 at Ch. 4523)—

is "interpretive" in nature and is therefore exempt from the APA's notice-and-comment

rulemaking requirements. The "interpretive" nature of the commissary rule is made clear when

that rule is analyzed under the four-part test (from American Mining Congress, 995 F.2d at 1112)

described above (see supra at 3):

- First, in the absence of the commissary rule, the governing statute and applicable regulation—31 U.S.C. § 1321(a)(22) and 28 C.F.R. § 0.95(a)—would provide the BOP with an adequate legislative basis to "[m]anage[] and regulat[e] . . . prison commissaries." 28 C.F.R. § 0.95(a). Such "[m]anagement and regulation" would unquestionably include the authority to modify the method of pricing goods sold within the commissaries. See id. Indeed, the governing statute, 31 U.S.C. § 1321, provides the BOP with unlimited discretion with respect to the pricing of goods in its commissaries. See Prows v. Dep't of Justice, No. 89-2929, 1991 WL 111459, at *3 (D.D.C. June 13, 1991) ("Congress did not . . . place any limitation upon the manner in which the Bureau of Prisons priced goods in the commissaries . . . ."). And the applicable regulation, 28 C.F.R. § 0.95(a), does not curtail that discretion in any way. See 28 C.F.R. § 0.95(a) ("The Director of the Bureau of Prisons shall direct all activities of the Bureau of Prisons including . . . (a) [m]anagement and regulation of all . . . prison commissaries.").[9]

- Second, the BOP did not publish the commissary rule in the Code of Federal Regulations. Rather it memorialized the rule in a Program Statement. (See Ex. 2 at Ch. 4523.)

---

[9] It is the above statute and regulation that the commissary rule "interprets."

- Third, the BOP did not explicitly invoke its general legislative authority in issuing the relevant Program Statement.  (See id.)

- Finally, nothing found in the relevant Program Statement (or anywhere else) suggests that the commissary rule amended a prior legislative rule.  Before the implementation of the commissary rule, there was no prior legislative rule describing the method by which goods were to be priced in BOP commissaries.  There was only a prior interpretive rule on that issue (which itself was contained in a BOP Program Statement).  (See Atwood Decl. ¶¶12-13; Ex. 2 at Change Notice ¶2.a.)

In light of the foregoing, the BOP's commissary rule is "interpretive" in nature,[10] and is thus

exempt from the APA's notice-and-comment rulemaking requirements.[11]

As with the regulation governing the inmate telephone system (see supra), the BOP has

always interpreted its regulation addressing prison commissaries, 28 C.F.R. § 0.95, in precisely

the same way—that is, as permitting it to "[m]anage[] and regulat[e]" the commissaries in a

manner consistent with its correctional management responsibilities and budgetary constraints.

28 C.F.R. § 0.95.  (See Atwood Decl. ¶11.)  Plaintiffs have adduced no evidence to the contrary.

Thus, the modification of the BOP's pricing methodology for goods sold within its

commissaries—which resulted in "a roughly 5% increase in commissary prices" as a means to

"ensure [that] the commissary operated within the boundaries of budgetary restraints" (id.)—

---

[10] This conclusion is supported by the fact that the commissary rule is set forth in a BOP Program Statement.  (See cases cited supra n.7.)

[11] In its prior briefing on Counts 2, 3 and 4, the BOP argued that none of the challenged rules is (or was) arbitrary or capricious.  (See Docket No. 59 at 16-19.)  Although true, the arbitrary or capricious inquiry is not necessary here, because Plaintiffs are challenging only the fact that the BOP implemented the challenged rules without engaging in notice-and-comment rulemaking.  In any event, any substantive challenge to the telephone-related rules or the commissary rule would fail because (in addition to the fact that the rules are not arbitrary or capricious) the rules were enacted as a result of the BOP's exercise of discretion committed to it by law.  As such, the rules are beyond the scope of this Court's review.  See 5 U.S.C. § 701(a) (judicial review is unavailable where agency action is "committed to agency discretion by law"); Prows, 1991 WL 111459, at *3 (observing that there is no statutory limitation on how the BOP prices goods in its commissaries); Harrison v. Federal Bureau of Prisons, 464 F. Supp. 2d 552, 558 (E.D. Va. 2006) (finding that the APA precluded judicial review of the BOP's decision to increase its long distance telephone rate from 20 cents per minute to 23 cents per minute).

does not reflect a change in how the BOP interprets 28 C.F.R. § 0.95 such that it required notice-and-comment rulemaking.[12]  A contrary conclusion would result in the plainly unacceptable situation where the BOP would have to engage in the costly and time-consuming process of notice-and-comment rulemaking every time budgetary considerations cause it to increase the price of goods in its commissaries.

## COUNT 6

In Count 6, Plaintiff Sample seeks an order from this Court requiring the BOP to fulfill one of his Freedom of Information Act ("FOIA") requests and "provide him with a copy of his PS[R]." (Am. Compl. ¶33.)  Plaintiff Sample is not entitled to such an order.  Indeed, the issuance of such an order would be wholly unnecessary.

Under FOIA, a prisoner is entitled to "a meaningful opportunity to review his PSRs." Martinez v. Bureau of Prisons, 444 F.3d 620, 625 (D.C. Cir. 2006).  However, "FOIA does not entitle [a prisoner] to have copies of his PSRs." Id. (emphasis added).  Here, Plaintiff Sample does not allege that he has been denied a meaningful opportunity to review his PSR.  Nor could he have made such an allegation—the BOP is and always has been willing to permit Plaintiff Sample to review his PSR.  (See Baumgartel Decl. ¶¶5, 8.)[13]  Thus, the BOP has satisfied its FOIA obligations with respect to Plaintiff Sample's request for his PSR.[14]  See Martinez, 444

---

[12] The commissary rule certainly does not represent a "substantial[]" or "significant[]" change with respect to past agency practice.  (See supra n.8.)

[13] Citations in the form "(Baumgartel Decl. ¶__)" refer to the November 16, 2006 declaration of William E. Baumgartel, which is attached hereto as Exhibit 4.

[14] The D.C. Circuit's decision in Sample v. Bureau of Prisons, 466 F.3d 1086 (D.C. Cir. 2006), does not require the BOP to do anything more than provide a FOIA requester with a meaningful opportunity to review his PSR.  In Sample, the plaintiff requested electronic copies of certain BOP records.  Id. at 1087.  In response, the BOP provided the plaintiff with paper copies of the requested records.  Id.  The D.C. Circuit held that the BOP's response was inadequate; it ruled that the BOP had to provide the plaintiff with the requested records in electronic format because that was the format that he had specified in his FOIA request.  Id. at

F.3d at 625; see also Watts v. Federal Bureau of Prisons, No. 06-0755, 2007 WL 60901, at *3

(D.D.C. Jan. 8, 2007) ("An inmate who is afforded [a reasonable opportunity to review] his PSR

is not entitled under FOIA to obtain or possess a copy of his PSR."); Harrison v. Lappin, No. 04-

0061, 2006 WL 3246400, at *1 (D.D.C. Nov. 7, 2006) (same).

**COUNT 7**

In Count 7, Plaintiff Sample seeks an order from this Court requiring the BOP to fulfill

another of his FOIA requests and "allow him to inspect a copy of [the] PS[R]" of another inmate,

Richard Painter.  (Am. Compl. ¶36.)  Plaintiff Sample's request for such an order should be

denied.  The BOP has made a policy judgment that inmates should be denied access to other

inmates' PSRs based on concerns over inmate safety.  (See Baumgartel Decl. ¶¶4, 6; see also

Program Statement 1351.05 at 15-16 ("The Bureau has documented an emerging problem where

inmates pressure other inmates for a copy of their PSRs . . . to learn if they are informants, gang

members, have financial resources, etc. . . . Inmates who refuse to provide the documents are

threatened, assaulted, and/or seek protective custody.  Likewise, inmates providing PSRs . . .

containing harmful information are faced with the same risks of harm.").)[15]  This is precisely the

type of policy judgment—one concerning "inmate safety" and internal "prison administration"—

that the D.C. Circuit has stated that courts should be "loath to second-guess."[16]  Martinez, 444

F.3d at 625; see Watts, 2007 WL 60901, at *3; Harrison, 2006 WL 3246400, at *1.

---

310.  In the instant case, Plaintiff Sample did not request an electronic copy of his PSR.  He
merely requested that the BOP provide him with a copy of his PSR.  By affording Plaintiff
Sample an opportunity to review a paper copy of his PSR, the BOP fulfilled its obligations with
respect to that request.  The holding in Sample is not to the contrary.

[15] A copy of the relevant pages from Program Statement 1351.05 is attached hereto as
Exhibit 5.

[16] Plaintiff Sample has asserted that, in responding to his FOIA request, the BOP
performs two roles: "FOIA respondent and custodian of inmates."  (Docket No. 79 at 12.)  See
also Sample, 466 F.3d at 1089.  Seizing on those dual roles, Plaintiff Sample argues that the

**CONCLUSION**

For the reasons set forth above, the BOP respectfully requests that this Court dismiss

Counts 2, 3, 4, 6 and 7 of Plaintiffs' Amended Complaint.

Dated: April 30, 2008                           Respectfully submitted,


       /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


       /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


       /s/
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

**Of Counsel:**

Wanda Hunt, Esq.
Delaine Martin Hill, Esq.
Bureau of Prisons
Washington, D.C.

---

BOP—"[a]s FOIA respondent"—should be "requir[ed] . . . to produce a copy of [Mr.] Painter's PS[R] to [him]."  (Docket No. 79 at 12.)  At best, Plaintiff Sample's argument is purely academic.  Even if the BOP as FOIA respondent is obligated to provide Plaintiff Sample with a copy of Mr. Painter's PSR, the BOP as custodian of inmates is not required to permit Plaintiff Sample to access that document.  See Sample, 466 F.3d at 1089 (indicating that the BOP may deny an inmate the right to access documents that it has an obligation to provide to the inmate under FOIA).